**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>PERKINS & MARIE CALLENDER'S INC.,[1]<br>et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 11-11795 (___)<br><br>Joint Administration Pending |

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 366
FOR INTERIM AND FINAL ORDERS (I) PROHIBITING UTILITIES FROM
ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES, (II) FINDING
UTILITIES ADEQUATELY ASSURED OF PAYMENT, AND (III) ESTABLISHING
PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT**

Perkins & Marie Callender's Inc. (f/k/a The Restaurant Company) ("PMCI") and its above-captioned affiliated debtor entities (collectively, with PMCI, the "Debtors"), by and through their undersigned proposed counsel, respectfully submit this motion (the "Motion") pursuant to sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), for entry of an interim order (the "Interim Order") and a final order (the "Final Order") (a) prohibiting the Utility Providers (as defined below) from altering, refusing or discontinuing the Utility Services (as defined below) on account of prepetition invoices, (b) finding the Utility Providers adequately assured of payment within the meaning of section 366 of the Bankruptcy Code, and (c) establishing procedures for determining adequate assurance of payment and authorizing the Debtors to provide adequate assurance of payment to the Utility Providers. In support of this Motion, the Debtors submit and incorporate by reference herein the "Declaration of Joseph F. Trungale in Support of Debtors' Chapter 11 Petitions and

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Perkins & Marie Callender's Inc. (4388); Perkins & Marie Callender's Holding Inc. (3999); Perkins & Marie Callender's Realty LLC (N/A); Perkins Finance Corp. (0081); Wilshire Restaurant Group LLC (0938); PMCI Promotions LLC (7308); Marie Callender Pie Shops, Inc. (7414); Marie Callender Wholesalers, Inc. (1978); MACAL Investors, Inc. (4225); MCID, Inc. (2015); Wilshire Beverage, Inc. (5887); and FIV Corp. (3448). The mailing address for the Debtors is 6075 Poplar Avenue, Suite 800, Memphis, TN 38119.

First Day Motions", filed contemporaneously with this Motion. In further support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction And Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue of the above-captioned chapter 11 cases and this Motion are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105 and 366 of the Bankruptcy Code.

## Factual Background

4. On June 13, 2011 (the "Petition Date"), each of the Debtors filed a voluntary petition (collectively, the "Petitions") for relief under chapter 11 of the Bankruptcy Code, and each thereby commenced chapter 11 cases (collectively, the "Chapter 11 Cases") in this Bankruptcy Court (the "Court"). No request has been made for the appointment of a trustee or examiner, and the Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no Official Committee of Unsecured Creditors has been appointed in any of the Chapter 11 Cases.

**A.    The Debtors' Businesses**

5. The Debtors are one of the leading operators of family-dining and casual-dining restaurants, under their two (2) highly-recognized brands: (i) their full-service family dining restaurants located primarily in the Midwest, Florida and Pennsylvania under the name "Perkins Restaurant and Bakery" ("Perkins"), and (ii) their mid-priced, full-service casual-dining

restaurants, specializing in the sale of pies and other bakery items, located primarily in the western United States under the name "Marie Callender's Restaurant and Bakery" ("<u>Marie Callender's</u>").

6. Through the Debtors' Foxtail Foods bakery goods manufacturing operations ("<u>Foxtail</u>"), the Debtors offer pies, muffin batters, cookie doughs, pancake mixes, and other food products for sale to both company-owned and franchised Perkins and Marie Callender's restaurants, and to unaffiliated customers, such as food service distributors and supermarkets, as well as on-line to the public.

7. As of April 17, 2011, the Debtors owned and operated one hundred sixty (160) Perkins restaurants located in thirteen (13) states, and franchised three hundred fourteen (314) Perkins restaurants located in thirty-one (31) states and five (5) Canadian provinces. Similarly, the Debtors owned and operated eighty-five (85) Marie Callender's restaurants located in nine (9) states, and franchised thirty seven (37) Marie Callender's restaurants located in four (4) states and Mexico.[2] Thus, the Debtors operate or franchise approximately six hundred (600) restaurants throughout the United States, Canada and Mexico.*

8. As of April 17, 2011, the Debtors employed approximately twelve thousand three hundred fifty (12,350) employees, consisting of approximately five thousand three hundred fifty (5,350) part-time employees and approximately seven thousand (7,000) full-time employees.*

9. The Debtors' revenues for the year ended December 26, 2010 were approximately $507 million.

---

[2] Included therein, MCPSI operates two (2) "Callender's Grill" restaurants in Los Angeles, California and a single "East Side Mario's" restaurant in Lakewood, California.

\* Immediately prior to the Petition Date, the Debtors initiated a store reduction program to discontinue approximately sixty-five (65) corporate-operated restaurant locations, which will have the attendant effect of a reduction in workforce of approximately 2,500 people.

**B. Corporate Structure and Pre-Petition Capitalization**

10. Perkins & Marie Callender's Holding Inc. (f/k/a The Restaurant Holding Corporation) is a holding company that wholly owns PMCI. PMCI is the Debtors' principal operating entity and the primary obligor on the Debtors' pre-Petition Date senior secured working capital facility and their secured and unsecured bond debt. PMCI directly or indirectly owns and operates the Debtors' restaurant operations, oversees the Debtors' franchised restaurant operations, and owns and operates its Foxtail business.

11. On September 24, 2008, PMCI issued $132 million in aggregate principal amount of 14% Senior Secured Notes (the "Senior Secured Notes"), with a maturity date of May 31, 2013 and interest payable semi-annually on May 31 and November 30 of each year. Prior thereto, on September 21, 2005, PMCI issued $190 million of 10% Senior Notes (the "Senior Notes"), with a maturity date of October 1, 2013 and interest payable semi-annually on April 1 and October 1 of each year. Concurrently with the issuance of the Senior Secured Notes, PMCI and PMC Holding entered into a Credit Agreement dated as of September 24, 2008 (as amended, the "Credit Agreement") with Wells Fargo Capital Finance, LLC (f/k/a Wells Fargo Foothill, LLC) as the lender and administrative agent (the "Credit Facility Agent"), consisting of a revolving credit facility in favor of PMCI, as borrower, of up to $26,000,000, with a sub-limit of $15,000,000 for the issuance of letters of credit (collectively, the "Credit Facility"). As of the Petition Date, approximately $103,000,000 in aggregate principal amount of the Senior Secured Notes are outstanding, $190,000,000 in aggregate principal amount of the Senior Notes are outstanding, and approximately $10,060,000 in principal amount is outstanding under the Credit Facility (comprised solely of outstanding letters of credit).

12. Effective April 30, 2011, PMCI and various of the other Debtors entered into two

(2) forbearance agreements (collectively, the "Forbearance Agreements"), one (1) with the holders of in excess of eighty (80%) percent in aggregate principal amount of the Senior Notes (the "Senior Note Forbearance Agreement"), and one (1) with the lender and Credit Facility Agent under the Credit Agreement.

13. In the weeks preceding the Petition Date, the Debtors entered into a "Restructuring Support Agreement" dated as of June 6, 2011 with the holders of the Senior Notes signatory to the Senior Note Forbearance Agreement and the holders of one hundred (100%) percent of the Senior Notes (collectively, the "Restructuring Support Parties") designed to mutually and consensually develop and agree upon the parameters of a reorganization program for the Debtors that will, among other things, delever the Debtors' capital structure, and thereby establish a pre-filing blueprint for an efficient and effective chapter 11 reorganization process. In connection with entering into the Restructuring Support Agreement, the Debtors and the Restructuring Support Parties also negotiated the principal terms of the Debtors' plan of reorganization, and such plan of reorganization and the accompany disclosure statement will be filed with the Court on or before July 14, 2011 in accordance with the milestones contained in the Restructuring Support Agreement.

### The Debtors' Utility Service Providers

14. In the ordinary course of business, the Debtors regularly incur expenses for water, gas, electricity, sewer, waste services, phone and internet services, wi-fi services, satellite services and other similar services (collectively, the "Utility Services") provided by approximately five hundred fifty-five (555) service providers (collectively, the "Utility Providers") in the aggregate. A list of the Utility Providers is attached hereto as Exhibit A (the "Utility Service List"). The relief sought in this Motion is requested with respect to all Utility

Providers and is not limited to those providers listed on <u>Exhibit A</u> to this Motion.[3]

15. Prior to the Petition Date, the Debtors closed approximately sixty-five (65) Perkins and Marie Callender's corporate restaurant locations. Before these restaurants were closed, the approximate aggregate monthly charges for the Utility Services provided by the Utility Providers totaled $2,000,000. In light of the approximate twenty-five percent (25%) reduction in the aggregate number of Perkins and Marie Callender's restaurant locations, the Debtors estimate that the total monthly charges for the Utility Services provided by the Utility Providers will total $1,500,000. The provision of Utility Services by the Utility Providers to the Debtors is governed, in some instances, by applicable federal or state tariffs, and by service agreements.

16. On a weekly basis, the Debtors pay amounts on account of bills received from the Utility Providers. The Utility Providers for electric, gas, phone, water and sewer services have been instructed by the Debtors to send the Debtors' bills to AVISTA, a bill consolidator retained prior to the Petition Date (the "<u>Bill Consolidator</u>"), for the purpose of organizing and paying those Utility Providers on behalf of the Debtors. The Bill Consolidator consolidates the Debtors' utility bills and facilitates payment pursuant to a contractual relationship with the Debtors. Those bills are consolidated and, on a weekly basis, the Debtors make one payment to the Bill Consolidator as directed by the Bill Consolidator. Upon receipt of this weekly payment, disbursements are made by the Bill Consolidator to each of the covered Utility Providers who are due to receive payments during the applicable time period. With regard to charges for waste services, cable, satellite, internet and wi-fi, the Debtors pay bills submitted by those Utility

---

[3] Although the Debtors believe that the list of Utility Providers attached hereto as <u>Exhibit A</u> is a complete list, they reserve the right to supplement the Utility Service List if it is determined that any Utility Provider has been omitted. Moreover, the Debtors reserve the right to assert that any of the entities listed on <u>Exhibit A</u> are not utilities within the scope of section 366(a) of the Bankruptcy Code

Providers directly.

17. Through these arrangements, the Debtors have historically paid bills for Utility Services on a timely basis pursuant to the terms contracted for with each Utility Provider. Accordingly, as of the Petition Date, the Debtors believe that they were current on their payments to the Utility Providers. As of the Petition Date, however, the Debtors may have: (i) pre-petition accounts payable to certain Utility Providers on account of bills which are not yet due; (ii) outstanding checks issued to certain Utility Providers in payment for pre-petition charges for Utility Services that had not cleared the Debtors' bank account prior to the Petition Date; or (iii) liabilities for pre-petition Utility Services for which the Debtors have not been billed.

**Relief Requested**

18. By this Motion, the Debtors request the Court to enter the Interim Order, attached hereto as <u>Exhibit B</u>, and the Final Order, attached hereto as <u>Exhibit C</u>, (a) prohibiting the Utility Providers from altering, refusing, or discontinuing the Utility Services on account of prepetition invoices, including the making of demands for security deposits or accelerated payment terms; (b) providing that the Utility Providers have "adequate assurance of payment" within the meaning of section 366 of the Bankruptcy Code, based on, among other things, the Debtors' establishment of a segregated account containing an amount equal to approximately fifty percent (50%) of the Debtors' estimated monthly cost of the Utility Services, which may be adjusted by the Debtors if the Debtors terminate any of the Utility Services provided by a Utility Provider, make other arrangements with certain Utility Providers respect to adequate assurance of payment, determine that an entity listed on the Utility Service List is not a utility company within the scope of section 366 of the Bankruptcy Code or supplement the Utility Service List to

7

include additional Utility Providers; and (c) establishing procedures for determining additional adequate assurance of future payment and authorizing the Debtors to provide adequate assurance of future payment to the Debtors' Utility Providers

**Basis For Relief Requested**

19. If the Utility Providers are permitted to terminate the Utility Services, the Debtors could be forced, among other things, to cease their business operations. Because the Utility Providers administer essential services to the Debtors' restaurant facilities, any interruption in Utility Services could be devastating. In fact, the temporary or permanent discontinuation of Utility Services at any of the Debtors' facilities could irreparably disrupt the Debtors' business operations and, as a result, fundamentally undermine the Debtors' reorganization efforts. It is therefore critical that the Utility Services continue uninterrupted.

20. Section 366 of the Bankruptcy Code provides that in a chapter 11 case, during the initial thirty (30) days after the commencement of the case, utilities may not alter, refuse or discontinue service to, or discriminate against, a debtor solely on the basis of the commencement of its chapter 11 case or the existence of prepetition debts owed by the debtor. In a chapter 11 case, following the thirty-day period under section 366(c) of the Bankruptcy Code, a utility may discontinue service to the debtor if the debtor does not provide adequate assurance of payment in a form that is satisfactory to the utility, subject to the Court's ability to modify the amount of adequate assurance.

21. While the form of adequate assurance of payment may be limited to the types of security enumerated in subsection 366(c)(1)(A) of the Bankruptcy Code,[4] the determination of the amount of adequate assurance is within the discretion of the Court. It is well established that

---

[4] Section 366(c)(1)(A) of the Bankruptcy Code provides that "assurance of payment" may be in the form of a cash deposit, letter of credit, certificate of deposit, surety bond, prepayment of utility consumption, or another form of security that is mutually agreed on between the utility and the debtor. 11 U.S.C. § 366(c)(1)(A).

YCST01:11162231.1     070242.1001

the requirement that a utility receive adequate assurance of payment does not require a guarantee of payment. Instead, the protection granted to a utility is intended to avoid exposing the utility to an unreasonable risk of nonpayment.

22. To provide adequate assurance of payment for future services to the Utility Providers, the Debtors propose to deposit a sum equal to approximately fifty percent (50%) of the Debtors' estimated monthly cost of utility service into an interest-bearing, segregated account on or before twenty (20) days after the Petition Date (the "<u>Utility Deposit</u>"). As result of the closing of approximately sixty-five (65) of the Debtors' corporate restaurant locations, the Debtors estimate spending approximately $1,500,000 per month on the Utility Services. Accordingly, the Debtors propose that the Utility Deposit equal $750,000.

23. The Debtors submit that the Utility Deposit constitutes sufficient adequate assurance of payment to the Utility Providers, as the Debtors' available cash, together with their anticipated access to debtor-in-possession financing, will enable the Debtors to pay promptly all of their respective obligations to the Utility Providers for any post-petition Utility Service on an ongoing basis and in the ordinary course of business. In fact, the budget approved by the debtor-in-possession financing facility lenders explicitly provides for the payment of all of the Debtors' utility bills as they are rendered in the ordinary course. Furthermore, as of the Petition Date, the Debtors had submitted pre-petition deposits in the aggregate amount of approximately $880,232 with certain of the Utility Providers (such amount is inclusive of certain letters of credit posted for the benefit of some of these Utility Providers).

24. Nevertheless, if any Utility Provider believes that additional adequate assurance of payment is required, they may request such additional assurance pursuant to the procedures set forth below. The Debtors propose the establishment of certain procedures (the "<u>Utility

9

YCST01:11162231.1                                                                     070242.1001

Procedures") under which a Utility Provider may request additional adequate assurance of payment in the event that such provider can demonstrate that additional adequate assurance is warranted.

    25.    The Utility Procedures provide the following:

    (a)    If a Utility Provider is not satisfied with the adequate assurance of payment provided by the Debtors, the Utility Provider must serve a written request (a "Request") upon the proposed co-counsel to the Debtors, (i) Troutman Sanders LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York, 10174 (Attention: Mitchel H. Perkiel and Brett D. Goodman) and (ii) Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, Wilmington, Delaware 19801 (Attention: Morgan L. Seward), setting forth the location(s) for which any Utility Services are provided, the account number(s) for such location(s), the outstanding balance for each account, a summary of the Debtors' payment history on each account, and an explanation of why the Utility Deposit is not adequate assurance of payment.

    (b)    Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving a Request, if the Debtors, in their sole discretion, determine that the Request is reasonable or otherwise negotiate alternative consensual provisions for such additional adequate assurance.

    (c)    If the Debtors believe that a Request is unreasonable, then they shall, within twenty (20) days after receipt of the Request, file a motion (a "Determination Motion") pursuant to section 366(c) of the Bankruptcy Code seeking a determination from the Court that the Utility Deposit, plus any additional consideration offered by the Debtors, constitutes adequate assurance of payment. Pending a resolution by the Court of the Determination Motion, the Utility Provider that is the subject of such Determination Motion shall not alter, refuse, or discontinue Utility Services to the Debtors.

    (d)    The Utility Deposit shall be deemed adequate assurance of payment for any Utility Provider that fails to make a Request.

26. To the extent the Debtors subsequently identify additional Utility Providers not identified on the Utility Service List, the Debtors seek authority, in their sole discretion, to amend the Utility Service List to add any Utility Provider. The Debtors will serve a copy of this Motion, along with the applicable portion of the amended Utility Service List and any order entered in connection with this Motion, to those Utility Providers that are subsequently added to the Utility Service List. Any subsequently added Utility Provider will be subject to the Utility Procedures.

27. In addition to the foregoing, the Debtors request a final hearing on this Motion to be held within twenty-five (25) days of the Petition Date to ensure that, if a Utility Provider argues that it can unilaterally refuse service to the Debtors on the 31st day after the Petition Date, the Debtors will have the opportunity, to the extent necessary, to request that the Court make such modifications to the Utility Procedures as are necessary in time to avoid any potential termination of Utility Services.

**THE UTILITY COMPANIES WILL NOT BE
PREJUDICED BY THE REQUESTED RELIEF**

28. The Debtors fully intend to pay all post-petition obligations owed to the Utility Providers in a timely manner and expect that they will have sufficient funds with which to satisfy fully all their post-petition utility obligations. The Debtors' good faith in this regard is evidenced by their consistent pre-petition payment history with each of the Utility Providers. Other than utility bills not yet payable as of the Petition Date in the ordinary course of the Debtors' regular payment terms with the Utility Providers (which the Debtors are now prohibited from paying as a result of the commencement of their Chapter 11 Cases), the Debtors historically have fully paid their pre-petition utility bills on time. In fact, prior to the Petition Date, the Debtors had not experienced any suspension or termination of Utility Services by virtue of non-payment of a

utility bill.

29. The Debtors' proposed method of furnishing adequate assurance of payment for post-petition Utility Services is not prejudicial to the rights of any Utility Provider, and is in the best interest of the Debtors' estates. This Court has routinely granted relief similar to that requested herein following the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. See, e.g., In re Smurfit-Stone Container Corporation, Case No. 09-10235 (Bankr. D. Del. Jan. 27, 2009 (interim order), Feb. 23, 2009 (final order)) (BLS); In re Tribune Company, Case No. 08-13141 (Bankr. D. Del. Dec. 10, 2008 (interim order), Jan. 15, 2009 (final order)) (KJC); In re Linens Holdings Co., Case No. 08-10832 (Bankr. D. Del. May 2, 2008 (interim order), May 27, 2008 (final order)) (CSS); In re Buffets Holdings, Inc., Case No. 08-10141 (Bankr. D. Del. Jan. 23, 2008 (interim order), Feb. 28, 2008 (final order)) (MFW).

30. Because the Debtors' receipt of uninterrupted Utility Services is vital to the Debtors' continued business operations and, consequently, to the success of their Chapter 11 Cases, the relief requested herein is necessary and in the best interests of the Debtors, their estates and creditors. Such relief ensures that the Debtors' business operations will not be disrupted and provides Utility Providers and the Debtors with an orderly, fair procedure for determining "adequate assurance."

31. Based upon the foregoing, the Debtors submit that the relief requested herein should be granted.

**Request For Immediate Relief and Waiver of
Stay to Avoid Immediate and Irreparable Harm**

32. By this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), "[a]n order authorizing the use, sale, or lease of property

other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed.R.Bankr.P. 6004(h). For the reasons set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

## **Notice**

33. The Debtors will serve notice of this Motion upon: (i) the Office of the United States Trustee; (ii) the Debtors' consolidated list of creditors holding the forty (40) largest unsecured claims; (iii) counsel to the agent for the Debtors' pre-petition Credit Facility and post-petition debtor-in-possession financing facility; (iv) counsel to the indenture trustee for the Senior Secured Notes; (v) counsel to the indenture trustee for the Senior Notes; and (vi) counsel to the Restructuring Support Parties. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). Additionally, notice of (i) the Court's entry of the Interim Order and (ii) the hearing before the Court on the Final Order will be provided to the Utility Providers in the manner provided for in the Interim Order. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## **No Prior Request**

34. No prior application for the relief requested herein has been made to this or any other court.

*Remainder of page intentionally left blank*

13
YCST01:11162231.1                                                                                                    070242.1001

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order, attached hereto as <u>Exhibit B</u>, and the Final Order, attached hereto as <u>Exhibit C</u>, and grant such other and further relief as the Court deems just and proper.

Dated: June 13, 2011
      Wilmington, Delaware

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

By:  /s/ Robert S. Brady
     Robert S. Brady (No. 2847)
     Robert F. Poppiti, Jr. (No. 5052)
     The Brandywine Building
     1000 West Street, 17th Floor
     P.O. Box 391
     Wilmington, DE 19801
     Telephone: (302) 571-6600
     Facsimile: (302) 571-1253

And

TROUTMAN SANDERS LLP

     Mitchel H. Perkiel
     Brett D. Goodman
     The Chrysler Building
     405 Lexington Avenue
     New York, NY 10174
     Telephone: (212) 704-6000
     Facsimile: (212) 704-6288

Proposed Counsel for Perkins & Marie Callender's Inc., et al.
Debtors and Debtors-in-Possession

14

YCST01:11162231.1            070242.1001