# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PERKINS & MARIE CALLENDER'S INC.,[1]<br>et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 11-11795 (___)<br><br>Joint Administration Pending<br><br>Hearing Date: To Be Determined<br>Objection Deadline: To Be Determined |

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 365(a) AND 554(a) FOR AN ORDER AUTHORIZING THE DEBTORS TO (I) REJECT *NUNC PRO TUNC* TO THE PETITION DATE CERTAIN UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASES RELATED TO CLOSED RESTAURANT LOCATIONS, AND (II) ABANDON ANY PROPERTY THAT REMAINS ON THE PREMISES COVERED BY THE LEASES**

Perkins & Marie Callender's Inc. (f/k/a The Restaurant Company) ("PMCI") and its above-captioned affiliated debtor entities (collectively, with PMCI, the "Debtors"), by and through their undersigned proposed counsel, respectfully move this Court (the "Motion") pursuant to sections 105(a), 365(a) and 554(a) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), authorizing the Debtors to (i) reject *nunc pro tunc* to the Petition Date (as defined below) the unexpired non-residential real property leases for those certain closed restaurant locations (collectively, the "Closed Locations") set forth in Exhibit 1 to the Proposed Order (collectively, the "Leases"), that the Debtors have determined are no longer necessary or useful to their estates, and (ii) abandon any personal property that remains on the

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Perkins & Marie Callender's Inc. (4388); Perkins & Marie Callender's Holding Inc. (3999); Perkins & Marie Callender's Realty LLC (N/A); Perkins Finance Corp. (0081); Wilshire Restaurant Group LLC (0938); PMCI Promotions LLC (7308); Marie Callender Pie Shops, Inc. (7414); Marie Callender Wholesalers, Inc. (1978); MACAL Investors, Inc. (4225); MCID, Inc. (2015); Wilshire Beverage, Inc. (5887); and FIV Corp. (3448). The mailing address for the Debtors is 6075 Poplar Avenue, Suite 800, Memphis, TN 38119.

premises of the Closed Locations.  **ANY PARTY THAT IS RECEIVING THIS MOTION AND WHOSE LEASE IS SUBJECT TO REJECTION HEREBY CAN LOCATE THAT PARTY'S NAME, THE LEASE AND THE CORRESPONDING ADDRESS OF THE CLOSED LOCATION ON <u>EXHIBIT 1</u> TO THE PROPOSED ORDER**.  In support of this Motion, the Debtors submit and incorporate by reference herein the "Declaration of Joseph F. Trungale in Support of Debtors' Chapter 11 Petitions and First Day Motions", filed contemporaneously with this Motion.  In further support of this Motion, the Debtors respectfully state as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction to hear the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding with the meaning of 28 U.S.C. § 157(b)(2).

2. Venue of these cases and the Motion are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105(a), 365(a) and 554(a) of the Bankruptcy Code, along with Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

### Factual Background

4. On June 13, 2011 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition (collectively, the "<u>Petitions</u>") for relief under chapter 11 of the Bankruptcy Code, and each thereby commenced chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>") in this Bankruptcy Court (the "<u>Court</u>").  No request has been made for the appointment of a trustee or examiner, and the Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the

date hereof, no Official Committee of Unsecured Creditors has been appointed in any of the Chapter 11 Cases.

**A.     The Debtors' Businesses**

5.      The Debtors are one of the leading operators of family-dining and casual-dining restaurants, under their two (2) highly-recognized brands: (i) their full-service family dining restaurants located primarily in the Midwest, Florida and Pennsylvania under the name "Perkins Restaurant and Bakery" ("Perkins"), and (ii) their mid-priced, full-service casual-dining restaurants, specializing in the sale of pies and other bakery items, located primarily in the western United States under the name "Marie Callender's Restaurant and Bakery" ("Marie Callender's").

6.      Through the Debtors' Foxtail Foods bakery goods manufacturing operations ("Foxtail"), the Debtors offer pies, muffin batters, cookie doughs, pancake mixes, and other food products for sale to both company-owned and franchised Perkins and Marie Callender's restaurants, and to unaffiliated customers, such as food service distributors and supermarkets, as well as on-line to the public.

7.      As of April 17, 2011, the Debtors owned and operated one hundred sixty (160) Perkins restaurants located in thirteen (13) states, and franchised three hundred fourteen (314) Perkins restaurants located in thirty-one (31) states and five (5) Canadian provinces. Similarly, the Debtors owned and operated eighty-five (85) Marie Callender's restaurants located in nine (9) states, and franchised thirty seven (37) Marie Callender's restaurants located in four (4) states and Mexico.[2]  Thus, the Debtors operate or franchise approximately six hundred (600)

---

[2]     Included therein, MCPSI operates two (2) "Callender's Grill" restaurants in Los Angeles, California and a single "East Side Mario's" restaurant in Lakewood, California.

restaurants throughout the United States, Canada and Mexico.*

8. As of April 17, 2011, the Debtors employed approximately twelve thousand three hundred fifty (12,350) employees, consisting of approximately five thousand three hundred fifty (5,350) part-time employees and approximately seven thousand (7,000) full-time employees.*

9. The Debtors' revenues for the year ended December 26, 2010 were approximately $507 million.

**B.    Corporate Structure and Pre-Petition Capitalization**

10. Perkins & Marie Callender's Holding Inc. (f/k/a The Restaurant Holding Corporation) is a holding company that wholly owns PMCI. PMCI is the Debtors' principal operating entity and the primary obligor on the Debtors' pre-Petition Date senior secured working capital facility and their secured and unsecured bond debt. PMCI directly or indirectly owns and operates the Debtors' restaurant operations, oversees the Debtors' franchised restaurant operations, and owns and operates its Foxtail business.

11. On September 24, 2008, PMCI issued $132 million in aggregate principal amount of 14% Senior Secured Notes (the "Senior Secured Notes"), with a maturity date of May 31, 2013 and interest payable semi-annually on May 31 and November 30 of each year. Prior thereto, on September 21, 2005, PMCI issued $190 million of 10% Senior Notes (the "Senior Notes"), with a maturity date of October 1, 2013 and interest payable semi-annually on April 1 and October 1 of each year. Concurrently with the issuance of the Senior Secured Notes, PMCI and PMC Holding entered into a Credit Agreement dated as of September 24, 2008 (as amended, the "Credit Agreement") with Wells Fargo Capital Finance, LLC (f/k/a Wells Fargo Foothill,

---

\*    Immediately prior to the Petition Date, the Debtors initiated a store reduction program to discontinue approximately sixty-five (65) corporate-operated restaurant locations, which will have the attendant effect of a reduction in workforce of approximately 2,500 people.

4

YCST01:11162245.1                                                                                                                                                    070242.1001

LLC) as the lender and administrative agent (the "Credit Facility Agent"), consisting of a revolving credit facility in favor of PMCI, as borrower, of up to $26,000,000, with a sub-limit of $15,000,000 for the issuance of letters of credit (collectively, the "Credit Facility"). As of the Petition Date, approximately $103,000,000 in aggregate principal amount of the Senior Secured Notes are outstanding, $190,000,000 in aggregate principal amount of the Senior Notes are outstanding, and approximately $10,060,000 in principal amount is outstanding under the Credit Facility (comprised solely of outstanding letters of credit).

12. Effective April 30, 2011, PMCI and various of the other Debtors entered into two (2) forbearance agreements (collectively, the "Forbearance Agreements"), one (1) with the holders of in excess of eighty (80%) percent in aggregate principal amount of the Senior Notes (the "Senior Note Forbearance Agreement"), and one (1) with the lender and Credit Facility Agent under the Credit Agreement.

13. In the weeks preceding the Petition Date, the Debtors entered into a "Restructuring Support Agreement" dated as of June 6, 2011 with the holders of the Senior Notes signatory to the Senior Note Forbearance Agreement and the holders of one hundred (100%) percent of the Senior Notes (collectively, the "Restructuring Support Parties") designed to mutually and consensually develop and agree upon the parameters of a reorganization program for the Debtors that will, among other things, delever the Debtors' capital structure, and thereby establish a pre-filing blueprint for an efficient and effective chapter 11 reorganization process. In connection with entering into the Restructuring Support Agreement, the Debtors and the Restructuring Support Parties also negotiated the principal terms of the Debtors' plan of reorganization, and such plan of reorganization and the accompany disclosure statement will be filed with the Court on or before July 14, 2011 in accordance with the milestones contained in

the Restructuring Support Agreement.

## The Leases To Be Rejected

14. Prior to the Petition Date, the Debtors closed each of the Closed Locations. The restaurants previously operating at the Closed Locations were generally unprofitable locations within the Debtors' business portfolios, thus constituting a financial strain on the Debtors. For these reasons, prior to the Petition Date, the Debtors ceased operating at the locations covered by the Leases.[3]

## Relief Requested

15. By this Motion, the Debtors respectfully request the entry of the Proposed Order authorizing the rejection of the Leases listed on Exhibit 1 to the Proposed Order pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, effective as of the Petition Date. In addition, the Debtors seek the authority, pursuant to Section 554(a) of the Bankruptcy Code, to abandon any property that remains on the premises of the Closed Locations.

16. Exhibit 1 to the Proposed Order should not be construed as an admission that the Leases listed therein are unexpired leases subject to assumption or rejection under section 365 of the Bankruptcy Code. The Debtors reserve the right to argue that the Leases are not unexpired leases. The Debtors also reserve all rights to contest any and all claims that arise out of the rejection of the Agreements.

---

[3] As a consequence of the Debtors' cessation of operations at the Closed Locations covered by the Leases, the Debtors are also no longer in need of the goods and services provided to those locations under contracts for, among others things, HVAC maintenance, alarm system monitoring, landscaping, snow removal, music, linen services and restaurant equipment (collectively, the "Related Contracts"). Upon the closing of each of the Closed Locations, each of the Debtors' counterparties to the Related Contracts was notified of the termination of their goods and services under such contracts. Accordingly, the Debtors anticipate separately seeking to reject such Related Contracts upon the filing of a separate motion. Notwithstanding the foregoing, several of the Related Contracts provide for the delivery of goods or services to Closed Locations as well as other of the Debtors' locations that are still operating. The Debtors anticipate seeking to reject only those portions of the Related Contracts dealing with the Closed Locations.

**Basis for Relief Requested**

17. Prior to the Petition Date, the Debtors determined that it was detrimental to the Debtors' businesses to continue operations at the Closed Locations. Further, the Debtors determined that the Leases create unnecessary operating costs.

18. Prior to the commencement of these Chapter 11 Cases, the Debtors, in consultation with their professionals, determined that it is highly unlikely that the Debtors would ever be able to locate a third party willing to accept an assignment of the Leases. In the meantime, the Debtors would accrue administrative obligations, as well as the attendant cost of continuing to market the Leases. Thus, the Debtors determined that the Leases hold no value to the Debtors and their estates. In order to avoid any administrative expense to the Debtors' estates, the Debtors, in an exercise of their business judgment, have concluded that it makes sound business sense to reject the Leases *nunc pro tunc* to the Petition Date.

**A.     Rejection of the Leases**

19. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease." 11 U.S.C. § 365(a); see Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973 F.2d 1065, 1075 (3d Cir. 1992); see also In re Penn Traffic Co., 524 F. 3d 373 (2d Cir. 2008). The Court may approve a debtor's rejection of an executory contract or unexpired lease if such rejection is made in the exercise of such debtor's sound business judgment, and if such rejection benefits its estate. See, e.g., In re AbitibiBowater Inc., 418 BR 815 (unpaginated) (Bankr. D. Del. Oct. 27, 2009) (A debtor's decision to assume or reject an executory contract will stand so long as "a reasonable business person would make a similar decision under similar circumstances."); In re Philadelphia Newspapers, LLC, 424 BR 178, 182-83 (Bankr. E.D. Penn. January 13, 2010) ("The standard

7

applied to determine whether the rejection of an executory contract or unexpired lease should be authorized is the business judgment standard"); Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36, 39 (3d Cir. 1989); see also NLRB v. Bildisco & Bildisco (In re Bildisco), 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984); Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees, Inc.), 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996) ("[u]nder the business judgment test, . . . [a court should approve a debtor's proposed rejection] if the debtor can demonstrate that rejection will benefit the estate"). It is enough if a debtor determines in its business judgment that a benefit will be realized. Sharon Steel Corp., 872 F.2d at 39 (citing Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987)); In re Balco Equities, Inc., 323 B.R. 85, 99 (Bankr. S.D.N.Y. 2005) ("In determining whether the debtor has employed reasonable business discretion, the court for the most part must only determine that the rejection will likely benefit the estate."). The business judgment standard requires that the Court approve the debtor's business decision unless that judgment is the product of bad faith, whim or caprice. In re Philadelphia Newspapers, LLC, 424 BR 178, 182-83 (Bankr. E.D. Penn. January 13, 2010); In re Trans World Airlines, Inc., 261 B.R. 103, 121 (Bankr. D. Del. 2001); Lubrizol Enter., Inc. v. Richmond Metal Finishers, 756 F.2d 1043, 1047 (4th Cir. 1985) cert. denied 475 U.S. 1057 (1986).

20. As an integral component of the Debtors' chapter 11 efforts to optimize their business operations, by, among other things, eliminating unnecessary operating costs, the Debtors, in their business judgment, have determined that it is in their best business interest to avoid the accrual of any further obligations under the Leases. The Debtors have reviewed each of the Leases and determined that the Leases hold no material economic value to the Debtors or

8

their estates and are not essential to the conduct of the Debtors' Chapter 11 Cases. The decision to reject the Leases will eliminate the Debtors' obligation to perform under the Leases and the accrual of any further obligations thereunder, such as administrative rent.

21. To avoid paying unnecessary administrative expenses related to the Leases, the Debtors seek to reject the Leases effective as of the Petition Date. Bankruptcy courts are empowered to grant retroactive rejection of a contract or lease under sections 105(a) and 365(a) of the Bankruptcy Code. See, e.g., Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.), 67 F.3d 1021, 1028 (1st Cir. 1995) (recognizing that bankruptcy courts are courts of equity that may enter orders authorizing retroactive rejection); In re Philadelphia Newspapers, LLC, 424 BR 178, 185 (Bankr. E.D. Penn. January 13, 2010) (same); Adelphia Bus. Solutions, Inc. v. Abnos, 482 F.3d 602, 606-07 (2d Cir. 2007) (same); In re Chi-Chi's, Inc., 305 BR 39, 399 (Bankr. D. Del. Feb. 2, 2004) (same). Courts in this jurisdiction have previously considered the question of retroactive rejection. In re Namco, Case No. 98-0173 (PJW), Transcript of Proceeding, April 15, 1998, at 35. In Namco, this Court permitted retroactive rejection on the conditions that (a) the premises (and the keys thereto) subject to a lease were surrendered with an unequivocal statement of abandonment to the landlord, (b) the motion was filed and served on the landlord, (c) the official committee has consented to the relief requested in the motion, and (d) the debtor acknowledged that it would not have the right to withdraw the motion prior to the hearing. Accord In re CB Holding Corp., Case No. 10-13-683 (MFW) (Docket No. 176, Dec. 13, 2010) (authorizing retroactive rejection of certain unexpired leases for restaurants closed prior to petition date); In re Marty Shoe Holdings. Inc., Case No. 08-12129 (KIS) (Docket No. 134, Nov. 4, 2008).

9

22. The Debtors have either done or are in the process of performing all acts that may be necessary to reject the Leases *nunc pro tunc* to the Petition Date. Specifically, the filing and service of this Motion is an unequivocal expression of the Debtors' intention to reject the Leases. Furthermore, the Debtors: (i) have vacated the premises and returned the keys, or will soon vacate the premises and return the keys when appropriate, to the respective landlords of the Closed Locations; (ii) have served notice of this Motion by overnight mail on all of counterparties to the Leases on the date hereof; and (iii) will not withdraw any of the rejected Leases from this Motion absent the consent of the respective counterparty. Finally, an official committee of unsecured creditors may be appointed and retain counsel prior to the hearing on this Motion and, therefore, will have an opportunity to voice any concerns with, or opposition to, the relief required herein.

23. Accordingly, rejection of the Leases *nunc pro tunc* to the Petition Date is appropriate.

### B. Abandonment of Personal Property

24. While the Debtors believe that they have removed, or are in the process of removing, all personal property of more than *de minimis* value from the Closed Locations covered by the Leases, to the extent that the Debtors leave any property, including, but not limited to, personal property, furniture, fixtures and/or equipment (collectively, "<u>Personal Property</u>"), at the Closed Locations, the Debtors request that such Personal Property be deemed abandoned pursuant to section 554 of the Bankruptcy Code.

25. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).

26. The Debtors submit that any Personal Property remaining in the Closed Locations will be of inconsequential value or burdensome to the Debtors' estates to remove. The Debtors believe that the cost of retrieving, marketing and reselling the abandoned Personal Property far outweighs any recovery the Debtors and their estates could hope to attain for the Personal Property. As a result, the Debtors have determined, in an exercise of their business judgment, that the abandonment of any such Personal Property is in the best interests of the Debtors, their estates and creditors.

27. Based upon the foregoing facts and circumstances, the Debtors submit that the rejection of the Leases *nunc pro tunc* to the Petition Date and the abandonment of the Personal Property in the manner set forth above is supported by sound business judgment, and is necessary, prudent and in the best interests of the Debtors, their estates and creditors and other parties in interest.

## Notice

28. The Debtors will serve notice of this Motion upon: (i) the Office of the United States Trustee; (ii) the Debtors' consolidated list of creditors holding the forty (40) largest unsecured claims; (iii) counsel to the agent for the Debtors' pre-petition Credit Facility and post-petition debtor-in-possession financing facility; (iv) counsel to the indenture trustee for the Senior Secured Notes; (v) counsel to the indenture trustee for the Senior Notes; (vi) counsel to the Restructuring Support Parties; (vii) the counterparties to the Leases; and (viii) all parties that, as of the filing of this Motion, have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

11

## No Prior Request

29.  No prior application for the relief requested herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in form annexed hereto as Exhibit A, (i) authorizing the Debtors to reject the Leases *nunc pro tunc* to the Petition Date; (ii) authorizing the Debtors to abandon any Personal Property that remains on the premises of the Closed Locations; and (iii) granting to the Debtors such other and further relief as the Court may deem just and proper.

Dated: June 13, 2011
      Wilmington, Delaware

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

By: /s/ Robert S. Brady
    Robert S. Brady (No. 2847)
    Robert F. Poppiti, Jr. (No. 5052)
    The Brandywine Building
    1000 West Street, 17th Floor, P.O. Box 391
    Wilmington, DE 19801
    Telephone: (302) 571-6600
    Facsimile: (302) 571-1253

And

TROUTMAN SANDERS LLP

    Mitchel H. Perkiel
    Brett D. Goodman
    The Chrysler Building, 405 Lexington Avenue
    New York, NY 10174
    Telephone: (212) 704-6000
    Facsimile: (212) 704-6288

Proposed Counsel for Perkins & Marie Callender's Inc., et al.

Debtors and Debtors-in-Possession