## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PERKINS & MARIE CALLENDER'S INC.,[1]<br>et al.,<br><br>          Debtors. | Chapter 11<br><br>Case No. 11-11795 (KG)<br><br>(Joint Administration Pending)<br><br>**Ref. Docket No. 18** |

## DECLARATION OF JOSEPH H. SANTARLASCI, JR. IN FURTHER SUPPORT OF THE DEBTORS' POSTPETITION DEBTOR-IN-POSSESION FINANCING FACILITY

I, Joseph H. Santarlasci, Jr., do hereby submit this declaration (the "Declaration") and declare under penalty of perjury that the following information is true to the best of my knowledge, information and belief:

1.      I am President and CEO of Whitby, Santarlasci & Co. ("WS&Co."), a professional services firm located at 2210 Wyoming Avenue NW, Washington, DC 20008. WS&Co. is an independent financial advisory firm headquartered in Washington, DC. Founded in 1985, WS&Co. provides owners, chief executives and key stakeholders of public and private companies with strategic and financial advice that generally results in a financial transaction. WS&Co. has successfully completed more than 30 strategic and financial advisory assignments totaling over $2 billion. WS&Co.'s clients represent industry leaders in retail, branded and unbranded consumer products, health care, restaurants, equipment services, outdoor signs, and a number of additional product areas. WS&Co. is run by me, Joseph H. Santarlasci, Jr. I have worked in investment banking and related financial services for over 38 years. My experience is

---

[1]   The Debtors, together with the last four digits of each  Debtor's federal tax identification number, are: Perkins & Marie Callender's Inc. (4388); Perkins & Marie Callender's Holding Inc. (3999); Perkins & Marie Callender's Realty LLC (N/A); Perkins Finance Corp. (0081); Wilshire Restaurant Group LLC (0938); PMCI Promotions LLC (7308); Marie Callender Pie Shops, Inc. (7414); Marie Callender Wholesalers, Inc. (1978); MACAL Investors, Inc. (4225); MCID, Inc. (2015); Wilshire Beverage, Inc. (5887); and FIV Corp. (3448). The mailing address for the Debtors is 6075 Poplar Avenue, Suite 800, Memphis, TN 38119.

in debt restructuring and analysis, corporate valuation and restructuring and corporate management.  I graduated from Brown University, Darden School of Business and served in the United States Navy with Vietnam Service.

2.	On June 13, 2011 (the "Petition Date"), each of the above-captioned debtors (the "Debtors") filed a voluntary petition (collectively, the "Petitions") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and each thereby commenced chapter 11 cases (collectively, the "Chapter 11 Cases") in this Bankruptcy Court (the "Court").

3.	Additional information about the Debtors' businesses, the events leading up to the Petition Date, and the facts and circumstances surrounding the Debtors and the Chapter 11 Cases can be found in the "Declaration of Joseph F. Trungale in Support of Debtors' Chapter 11 Petitions and First Day Motions" [Docket No. 19] (the "Trungale Declaration"), filed contemporaneously with this Declaration and incorporated by reference herein.

4.	I am submitting this declaration in support of the "Emergency Motion for Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral Pursuant to Sections 105, 361, 362 and 363 of the Bankruptcy Code, (III) Granting Adequate Protection to the Prepetition Lenders Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code, (IV) Granting Liens and Superpriority Claims, and (V) Scheduling a Final Hearing on the Debtors' Motion to Incur Such Financing on a Permanent Basis Pursuant to Bankruptcy Rules 4001(b) and (c)" [Docket No. 18] (the "DIP Motion").

5.	Prior to the Petition Date, WS&Co. provided financial advisory services to the Debtors.  Through that retention I have become familiar with the Debtors' businesses and

financial affairs and I have been the financial advisor primarily responsible for obtaining and negotiating the Debtors' secured debtor-in-possession financing facility (the "DIP Facility"). Except as otherwise noted, the facts set forth herein are based on my personal knowledge, my review of relevant documents and information provided to me by the Debtors' management and other professionals working with me or under my supervision, and reflects my opinion based on that knowledge and information. If called upon to testify, I could and would testify competently to the facts set forth herein.

6.    As a result of the events described in the Trungale Declaration, the Debtors have an immediate need for financing in order to operate their businesses. Prior to the Petition Date, the Debtors instructed my firm, WS&Co., to explore sources for obtaining such financing. Because of the substantial amount of the Debtors' prepetition secured indebtedness, obtaining the financing needed by the Debtors as unsecured debt or debt secured by liens junior to the liens of the prepetition lenders was not a realistic option, other than possibly existing secured creditors who already had a financial interest in the Debtors to protect, such as the holders of the Senior Notes.[2]

7.    In the days and weeks prior to the commencement of these Chapter 11 Cases, I was instructed to pursue alternative post-petition financing from a number of potential lenders. In accordance with those instructions I engaged in discussions with the Debtors' prepetition first and second lien lenders about providing post-petition financing. I also spoke to many other institutional lenders and various other parties in an effort to obtain other potential post-petition financing proposals. Notwithstanding the foregoing, I was unable to obtain alternative financing

---

[2]    Capitalized terms not otherwise defined herein shall have the meaning attributed to them in the DIP Motion.

that was both (a) adequate to meet the Debtors' financing and liquidity requirements and (b) on more favorable terms than the DIP Facility.

8.     Most of the parties contacted were not interested in providing financing to the Debtors at the level required to fund the Debtors' operations on an ongoing basis. None of parties offered move favorable terms than those provided under the DIP Facility. Moreover, most potential lenders I contacted were not interested in providing an adequate stand alone debtor-in-possession financing facility unless the lenders would be able to prime the liens of the Prepetition Lenders. Because the Prepetition Lenders would not consent to being primed by a third party lender and because the Debtors decided that it would be imprudent to attempt to prime the Prepetition Lenders on a contested basis in light of the risk involved (and the more favorable terms of the DIP Facility), in my opinion the proposed DIP Facility is the best financing option available to the Debtors under the circumstances.

9.     WS&Co., with the assistance of the Debtors and their counsel, conducted extensive arms' length negotiations with the DIP Lenders over the terms of the DIP Facility Agreement which continued up to the Petition Date. As a result of these negotiations, WS&Co., the Debtors and the Debtors' other professionals successfully negotiated a number of key structural and financial improvements in the DIP Facility Agreement as compared to the DIP Lenders' initial proposal, which are incorporated in the proposed DIP Facility Agreement and proposed Interim Order (and will be proposed in the Final Order), and more fully described in the Trungale Declaration.

10.     Absent interim and final approval of the use of Cash Collateral and interim borrowing under the DIP Facility, the Debtors' businesses would suffer immediate and

4

irreparable harm.  Specifically, the Debtors would have no funds available to purchase goods and services necessary to continue their business operations.

11.     The DIP Facility offered by the DIP Lenders will provide the necessary working capital for the Debtors to operate their businesses in the ordinary course.  In my opinion, the terms of the DIP Facility including the interest rate and fees paid thereunder are fair and reasonable based on the credit options available to the Debtors.  It is my belief that the DIP Lenders have offered a DIP Facility sufficient to finance the Debtors' operations in the ordinary course of their businesses, on the most favorable terms available.

12.     For the foregoing reasons, I believe the amount and terms of the DIP Facility are fair and appropriate.

/s/ Joseph H. Santarlasci
Joseph H. Santarlasci, Jr.
President and CEO of
Whitby, Santarlasci & Co.