## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PERKINS AND MARIE CALLENDER'S INC., *et al*,[1] | Case No. 11-11795 (KG) |
| Debtors. | Jointly Administered |

## FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362 AND 363 OF THE BANKRUPTCY CODE, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE, AND (IV) GRANTING LIENS AND SUPERPRIORITY CLAIMS ON A PERMANENT BASIS PURSUANT TO BANKRUPTCY RULES 4001(B) AND 4001(C)

This matter is before the Court on the motion filed by Perkins & Marie Callender's Inc. and the other debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Cases") dated June 13, 2011 (the "Motion") having sought the following relief on an interim and final basis pursuant to an interim order ([Docket No. 47], the "Interim Order") and a final order (this "Final Order"):

(1)     authorizing and approving, pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Perkins & Marie

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Perkins & Marie Callender's Inc. (4388); Perkins & Marie Callender's Holding Inc. (3999); Perkins & Marie Callender's Realty LLC (N/A); Perkins Finance Corp. (0081); Wilshire Restaurant Group LLC (0938); PMCI Promotions LLC (7308); Marie Callender Pie Shops, Inc. (7414); Marie Callender Wholesalers, Inc. (1978); MACAL Investors, Inc. (4225); MCID, Inc. (2015); Wilshire Beverage, Inc. (5887); and FIV Corp. (3448). The mailing address for the Debtors is 6075 Poplar Avenue #800, Memphis, TN 38119.

Callender's Inc. ("PMCI"), as Borrower, to obtain, and Perkins & Marie Callender's Holding Inc. ("PMC Holding"), as Parent, together with the other Loan Parties signatory thereto to guarantee unconditionally (collectively, the "Guarantors"), on a joint and several basis, postpetition financing in the aggregate principal amount not to exceed $21,000,000 (the "DIP Facility") from Wells Fargo Capital Finance, LLC, a Delaware limited liability company (in its individual capacity, "WFCF"), for itself as a Lender, and as administrative agent for the Lenders (in such capacity, the "DIP Agent"), and the other lenders from time to time parties to the DIP Facility Agreement (as defined below) (collectively, in their lender capacity, the "DIP Lenders");

(2)     authorizing, under sections 363 and 364 of the Bankruptcy Code, the Debtors to, among other things, (A) fund, among other things, ongoing working capital, general corporate, letters of credit and other financing needs of the Debtors, (B) pay down the Prepetition First Lien Indebtedness (as defined below), which amounts are stipulated to be secured by the Prepetition Collateral (as defined below), (C) provide the Prepetition Agent, the Prepetition Lenders, the Secured Notes Trustee, the Collateral Agent and the Secured Noteholders with the Adequate Protection (each as defined below and referred to herein collectively as the "Prepetition Secured Parties"), (D) pay certain transaction fees, and other costs and expenses of administration of the Cases, and (E) pay certain fees and expenses (including, without limitation, reasonable fees and expenses of counsel and financial advisors) owed to the DIP Agent and the DIP Lenders under the DIP Facility Documents (as defined below) (obligations under the DIP Facility and under this Final Order, including, without limitation, principal, accrued interest, unpaid reasonable fees and expenses, and all other obligations and amounts due from time to time under the DIP Facility Documents shall be referred to hereinafter collectively as the "Postpetition Indebtedness");

(3)     authorizing and empowering the Debtors to execute and enter into the DIP Facility Documents and to perform such other and further acts as may be necessary or appropriate in connection with the DIP Facility Documents;

(4)     providing, pursuant to sections 364(c) and (d) of the Bankruptcy Code, that the obligations under the DIP Facility:

a.     have priority over any and all administrative expenses, including, without limitation, the kinds specified in or arising or ordered under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment, whether incurred in the Cases or any successor case, which allowed superpriority claims of the DIP Agent and DIP Lenders shall be payable from, and have recourse to, all prepetition and postpetition property of the Debtors as provided herein (other than the Avoidance Actions[2] and proceeds thereof) (the "DIP Facility Superpriority Claims"), subject to the payment in full in cash of the Carve-Out (as defined below) on the terms and conditions set forth herein and the DIP Facility Documents; and

b.     be and be deemed immediately secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior priming security interests and liens (the "DIP Facility Liens") in and on all prepetition and postpetition property, assets and other interests in property and assets of the Debtors, whether such property is presently owned or after-acquired, and all other "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtors, of any kind or nature whatsoever, whether real (provided however, any lien or security interest in and on any non-residential real property lease shall only

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Facility Agreement (defined below) or in the Motion, as applicable.

extend and be limited to the proceeds of such leasehold interest) or personal, tangible, intangible or mixed, and wherever located, and whether now existing or hereafter acquired, whether existing prior to or arising after the Petition Date, including proceeds (including, without limitation, proceeds of credit card receipts), products, offspring, rents and profits thereof (the "Collateral"), subject only to the Carve-Out and the Permitted Prior Liens (as defined below) on the terms and conditions set forth herein and in the DIP Facility Documents; provided, however, that the Collateral shall not include the Avoidance Actions and/or the proceeds thereof;

(5)     authorizing the Debtors, pursuant to sections 361 and 363(c) and (e) of the Bankruptcy Code, to use cash collateral (as defined under section 363 of the Bankruptcy Code, the "Cash Collateral") and all of Prepetition Collateral (as defined below) in which the Prepetition Secured Parties may have an interest and the grant of Adequate Protection to the Prepetition Secured Parties, as applicable, on account of their claims and interests under the Prepetition Loan Documents and the Secured Note Documents, respectively (each as defined below) with respect to, among other things, such use of their Cash Collateral and all diminution in the value of their respective interests in the Prepetition Collateral (as defined below) caused by the use of Cash Collateral and the terms of the financing being granted herein; and

(6)     upon entry of this Final Order, the limitation of the Debtors' and the estates' right to surcharge against the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code; and

(7)     authorizing the Debtors to repay in full any amounts outstanding under the Prepetition Credit Agreement (defined below), authorizing the Guarantors to guaranty the obligations under the DIP Facility Documents, authorizing the Debtors' use of Cash Collateral and granting the Adequate Protection described in this Final Order.

Pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due and sufficient notice under the circumstances of the Motion and the final hearing on the Motion before this Court to consider entry of this Final Order (the "Final Hearing"), the relief requested therein and notice of the Final Hearing having been provided by the Debtors as set forth in paragraph J below, and the interim hearing having been held by the Court on June 14, 2011 (the "Interim Hearing") and this Court having entered the Interim Order on June 14, 2011, and the Final Hearing having been held on July 12, 2011, and upon consideration of all the pleadings filed with this Court; and any objections to the relief requested in the Motion that have not been resolved are hereby overruled; and upon the record made by the Debtors at the Final Hearing, the Declaration of Joseph F. Trungale in Support of First Day Applications and Motions, and the Declaration of Joseph H. Santarlasci, Jr. in Further Support of the Debtors' Postpetition Debtor-in-Possession Financing, and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors, and after due deliberation and consideration and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND that:[3]

A.      Petition Date.  On June 13, 2011 (the "Petition Date"), the Debtors each commenced in this Court a case under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.      Pursuant to an order of this Court, the Cases have been consolidated for procedural purposes only and are being jointly administered.  No request for the appointment of a trustee or examiner has been made in these Cases.  The Official Committee of Unsecured

---

[3] Findings of fact shall be construed as conclusion of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

Creditors (the "Committee") was appointed in these Cases on June 24, 2011 [Docket Nos. 109, 127].

        C.        Jurisdiction. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief granted herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014 and the local bankruptcy rules of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").

        D.        Notice. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, the Interim Hearing, the Interim Order, and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Local Bankruptcy Rules, and no further notice of the relief sought at the Final Hearing and the relief granted herein is necessary or required.

        E.        Debtors' Stipulations. Subject to the rights of any non-Debtor party-in-interest, other than the Prepetition Agent, the Prepetition Lenders, the Secured Notes Trustee, the Collateral Agent, or the Secured Noteholders to, among other things, challenge the validity, priority, perfection and enforceability of the Prepetition Secured Indebtedness and the Prepetition Liens (as those terms are defined below), and specifically subject in all respects to the limitations contained in paragraph 6 below, the Debtors acknowledge, agree and stipulate that:

        (i)        Prepetition Loan Documents.

        1.        Pursuant to that certain Credit Agreement dated as of September 24, 2008, as amended by that certain Amendment Number One to Credit

Agreement, Waiver and Extension dated as of November 21, 2008, as further amended by that certain Amendment Number Two to Credit Agreement dated as of April 19, 2010, and as further amended by that certain Consent and Amendment Number Three to Credit Agreement dated as of June 9, 2011 (as further amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Credit Agreement"; and together with all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Prepetition Loan Documents") by and among PMC Holding, PMCI, the other affiliated Debtors, as guarantors, WFCF, as arranger and administrative agent for the lenders party thereto (in such capacity, the "Prepetition Agent"), and the lenders (each, a "Prepetition Lender" and collectively in their lender capacity, the "Prepetition Lenders") party thereto, the Prepetition Lenders made loans, issued letters of credit and provided other financial accommodations to or for the benefit of the Debtors (excluding PMCI Promotions LLC);

2.     As of the Petition Date, pursuant to the Prepetition Loan Documents, the Debtors were, jointly and severally, indebted to the Prepetition Agent and the Prepetition Lenders in the amount of:

      a.     approximately $165,535 with respect to "Obligations" (as defined in the Prepetition Credit Agreement), (exclusive of obligations with respect to issued and outstanding letters of credit (the "Existing Letters of Credit")); and

      b.     $10,058,760 with respect to the Existing Letters of Credit.

(ii)     Secured Note Documents.

1.     Pursuant to that certain Indenture (as amended, restated, supplemented or otherwise modified from time to time, the "Secured Note Indenture"), dated as of September 24, 2008, among PMCI, the Guarantors (as defined in the Secured Note Indenture) that are named on the signature pages thereto, and The Bank of New York Mellon Trust Company, N.A., as successor trustee (in such capacity, the "Secured Notes Trustee") and The Bank of New York Mellon, as collateral agent (in such capacity, the "Collateral Agent"), the holders (the "Secured Noteholders") of senior secured notes issued thereunder (the "Secured Notes"; together with the Secured Note Indenture and all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Secured Note Documents") made certain financial accommodations to PMCI.

2.     As of the Petition Date, pursuant to the Secured Note Documents, the Debtors were, jointly and severally, indebted to the Secured Noteholders in the aggregate principal amount of: $103,063,000, plus accrued and unpaid interest and prepayment premiums.

For purposes of this Final Order, the term "Prepetition First Lien Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Prepetition Loan Documents (including, without limitation, all "Obligations" as defined in the Prepetition Credit Agreement), and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants',

financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the Prepetition Loan Documents), and any and all obligations and liabilities, contingent or otherwise, owed with respect to the Existing Letters of Credit or other obligations outstanding thereunder. The term "Secured Note Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Secured Note Documents (including, without limitation, all "Obligations" as defined in the Secured Note Indenture), and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the Secured Note Documents). The term "Prepetition Secured Indebtedness" shall mean and include the Prepetition First Lien Indebtedness and the Secured Note Indebtedness, collectively and the term "Prepetition Secured Financing Documents" shall mean, collectively, the Prepetition Loan Documents and the Secured Note Documents;

(iii)     Pursuant to the Prepetition Loan Documents and the Secured Note Documents, the Debtors granted to the Prepetition Agent and the Collateral Agent, respectively, for the benefit of the Prepetition Lenders and the Secured Noteholders, respectively, liens and security interests (the "Prepetition Liens") on and in substantially all of the Debtors' property and assets[4] whether real or personal, tangible or intangible, and wherever located, and whether now or hereafter existing or acquired, and all the proceeds, products, offspring, rents and profits thereof (the "Prepetition Collateral") to secure the Prepetition Secured Indebtedness and guaranties thereof;

---

[4] Excluding PMCI Promotions LLC.

(iv)    As of the Petition Date and immediately prior to giving effect to this Final Order, but subject to the rights of any non-Debtor party-in-interest as provided in paragraph 6 of this Final Order:

(a)    the Prepetition Secured Financing Documents are legal, valid and binding agreements and obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay enforcement arising from section 362 of the Bankruptcy Code),

(b)    the Prepetition Liens (i) constitute valid, binding, enforceable and properly perfected first priority security interests and liens that, prior to entry of the Interim Order, were subject only to the Permitted Liens (as defined in the Prepetition Credit Agreement and in the Secured Note Indenture) and (ii) are not subject to objection, avoidance, reduction, disallowance, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attack, offset, counterclaim, defense or "claim" (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity,

(c)    the Prepetition Secured Indebtedness constitutes the legal, valid and binding obligations of the Debtors as set forth in the Prepetition Loan Documents and the Secured Note Documents, respectively, enforceable in accordance with their respective terms (other than in respect of the stay enforcement arising from section 362 of the Bankruptcy Code). The Prepetition Secured Indebtedness, and, subject to the terms of the Intercreditor Agreement (as defined below), any amounts paid at any time to any Prepetition Secured Party on account thereof or with respect thereto, are not subject to (i) any objection, attack, offset, defense, counterclaim or "claim" (as such term is defined in the Bankruptcy Code) of any kind or nature,

or (ii) avoidance, reduction, disallowance, recharacterization or subordination (whether equitable, contractual or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, and

(d) no claims, counterclaims, causes of action, defenses or setoff rights of any Debtor exist against any Prepetition Secured Party under any contract or tort (including, without limitation, lender liability) theories of recovery, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 (including, without limitation, sections 510, 544, 547, 548, 549 or 550) of the Bankruptcy Code or under any other similar provisions of applicable state or federal law; and

(v) Subject to the rights of any non-Debtor party-in-interest (other than the Prepetition Secured Parties) as provided in paragraph 6 of this Final Order, the Debtors have waived, discharged and released any right they may have to challenge any of the Prepetition Secured Indebtedness and the Prepetition Liens, and to assert any offsets, defenses, claims, objections, challenges, counterclaims, causes of action and/or choses of action against the Prepetition Secured Parties and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees (in their respective capacities as such).

F. As of the Petition Date, the Debtors have not brought, and are not aware of, (i) any claims or causes of action belonging to the Debtors that exist against the Prepetition Secured Parties, or (ii) any facts, circumstances, or other matters which would give rise to such claims or causes of action.

G. Pursuant to that certain Intercreditor Agreement dated as of September 24,

2008 (as amended, restated, supplemented or otherwise modified from time to time, the "Intercreditor Agreement"), the Prepetition Agent and the Collateral Agent are parties to an intercreditor arrangement that governs the respective rights, obligations and priorities of the Prepetition Lenders and the Secured Noteholders with respect to their interests in the Prepetition Collateral. Pursuant to the Intercreditor Agreement, the liens held by the Prepetition Agent, on behalf of the Prepetition Lenders, are senior in priority to the liens held by the Collateral Agent, on behalf of the Secured Noteholders, on all Prepetition Collateral. Further, under the Intercreditor Agreement, the Collateral Agent, Secured Notes Trustee, and the Secured Noteholders are deemed to consent to the financing under the DIP Facility and, upon approval of the DIP Facility and pursuant to the terms of this Final Order, the DIP Facility Liens shall have first priority in the Prepetition Collateral and the liens held in connection with the Prepetition First Lien Indebtedness and the Secured Note Indebtedness shall retain their relative priorities in the Prepetition Collateral as they existed prepetition and pursuant to the Intercreditor Agreement.

H.    Purpose and Necessity of Financing. The Debtors' businesses have a need for financing under the DIP Facility and use of Cash Collateral in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational, financial and general corporate needs. The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations (including letters of credit and other credit support) and use of Cash Collateral is vital to the preservation and maintenance of the going concern values of the Debtors and to the success of these Cases. Without such credit and use of Cash Collateral, the Debtors would not be able to

operate their businesses and the Debtors' estates would be irreparably harmed.

        I.        <u>Findings Regarding the Financing</u>.

        (i)        Good cause has been show for entry of this Final Order.

        (ii)        The Debtors are unable to obtain sufficient financing from sources other than the DIP Lenders on terms more favorable than under the DIP Facility and all the documents and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Facility Agreement (as defined below), the "<u>DIP Facility Documents</u>"). The Debtors have been unable to obtain sufficient unsecured credit solely under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) for the purposes set forth in the DIP Facility Documents without the Debtors providing (a) the DIP Agent, for the benefit of the DIP Lenders, with the DIP Facility Superpriority Claims and the DIP Facility Liens as provided herein and in the documents and instruments delivered pursuant to or in connection with the DIP Facility Agreement and (b) the Prepetition Secured Parties with Adequate Protection of their interests in the Prepetition Collateral on the terms and conditions as set forth herein.

        (iii)        The ability of the Debtors to finance their respective operations and the availability to the Debtors of sufficient working capital and other financial and general corporate liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations, including letters of credit and credit support, and use of Cash Collateral are in the best interests of the Debtors and their respective creditors and estates. The financing arrangements and use of Cash Collateral authorized hereunder are vital to avoid immediate irreparable harm to the Debtors' businesses,

properties and estates and to allow the orderly continuation of the Debtors' businesses.

(iv)    Based upon the record presented by the Debtors to this Court: (i) the terms of the DIP Facility and use of Cash Collateral are the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duty, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility and use of Cash Collateral has been negotiated in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, and any loans, credit, letters of credit, credit support, use of Cash Collateral or other financial accommodations set forth in this Final Order shall be deemed to have been extended, issued, made, or consented to, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

(v)    The consent of the Prepetition Secured Parties granted herein is expressly limited to: (i) the Debtors' use of Cash Collateral and Prepetition Collateral solely on the terms and conditions set forth in this Final Order and (ii) the postpetition financing being provided by the DIP Agent and DIP Lenders as contemplated by this Final Order and the DIP Facility Documents. Nothing in this Final Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of any Prepetition Secured Party are or will be adequately protected with respect to any non-consensual use of Cash Collateral or priming of the Prepetition Liens.

J.    Notice.  Telephonic, facsimile notice or overnight mail notice of the Final Hearing and the proposed entry of this Final Order has been provided to (a) the forty (40) largest creditors listed in the Debtors' consolidated list of creditors (excluding insiders), (b) the Office

of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (c) counsel to the Committee, (d) counsel to the DIP Agent and the Prepetition Agent, (e) counsel to the Secured Notes Trustee and the Collateral Agent, (f) counsel to the Secured Noteholders, (g) all known parties asserting a lien against the Collateral, and (h) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice under the Bankruptcy Rules (collectively, the "Notice Parties"). The notice of the Motion and the relief requested thereby and this Final Order constitutes due and sufficient notice therefor and complies with Bankruptcy Rule 4001 and the Local Bankruptcy Rules, and no further notice of the relief sought at the Final Hearing or the relief granted herein is necessary or required.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.    Disposition. The Motion is granted on a final basis as set forth in this Final Order. Any objections to the Motion that have not previously been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled on their merits. This Final Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon its entry. All actions taken by any Debtor or any Prepetition Secured Party in connection with or in reliance upon the Interim Order are hereby reaffirmed in full as if taken in connection with or in reliance upon this Final Order.

2.    Authorization to Borrow Under the DIP Facility.

(a)    PMCI, as "Borrower", and PMC Holding, as "Parent" were by the Interim Order and hereby are expressly authorized and empowered, on a final and nunc pro tunc basis, to execute, enter into, and to perform their respective obligations under, that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement, dated as of June 14, 2011, by and among PMCI, PMC Holding, the DIP Agent, and the DIP Lenders, as amended by that

certain Amendment Number One to Credit Agreement, dated as of July 12, 2011, in the form annexed hereto as <u>Exhibit A</u> and as modified by this Final Order (said credit agreement, in the form amended, annexed hereto as <u>Exhibit A</u> and as modified by this Final Order, and as hereafter amended, restated or otherwise modified from time to time in accordance with the terms thereof, the "<u>DIP Facility Agreement</u>"). PMCI and PMC Holding, and each of the other Debtors, are hereby expressly authorized and empowered, on a final basis, to execute, enter into, and to perform their respective obligations under, each of the other DIP Facility Documents, as modified by this Final Order, all of which are hereby approved (on a nunc pro tunc basis, in the case of any such DIP Facility Documents entered into by any Debtor, the DIP Agent, or any DIP Lender, as applicable, prior to the entry of this Final Order and otherwise in accordance with the terms and conditions of this Final Order).

(b) Provided that the Debtors are not in default under the terms of this Final Order, PMCI is authorized to borrow, and the Guarantors are hereby authorized to guaranty, borrowings under the DIP Facility up to $21,000,000 in an aggregate principal amount of Advances (inclusive of letters of credit and Existing Letters of Credit, which shall be deemed to have been issued under the DIP Facility) (in the aggregate, exclusive of interest and reasonable fees, charges and expenses payable under the DIP Facility Documents the "<u>DIP Facility Amount</u>") pursuant to the terms and conditions of the DIP Facility Agreement and in conformity with the amounts set forth in the then most recent 13-Week Budget and variances permitted with respect thereto, and to fund the Debtors' working capital and other general corporate needs in accordance with the terms of the DIP Facility Agreement and this Final Order.

(c) The DIP Facility Documents (upon their execution and delivery in accordance with this Final Order, in the case of any DIP Facility Document(s) executed after

entry of this Final Order) shall constitute legal, valid, and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of the DIP Facility Documents and the terms hereof. The Debtors shall, subject to the terms and conditions of the DIP Facility Documents, be entitled to borrow all amounts available under the DIP Facility Agreement to fund the Debtors' working capital and other general corporate needs and pay such other amounts required or allowed to be paid pursuant to the DIP Facility Documents, this Final Order and any other orders of this Court, including, but not limited to, any amounts then outstanding with respect to the Prepetition First Lien Indebtedness.

3.      <u>DIP Facility Superpriority Claims</u>. For the Postpetition Indebtedness and any other of the Debtors' obligations arising under the DIP Facility Documents, the DIP Lenders and DIP Agent are each granted, pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the Carve-Out as provided for herein, the allowed DIP Facility Superpriority Claims, which claims shall have priority over any and all administrative expenses, including, without limitation, the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment, whether incurred in the Cases or any successor case and which claims shall be payable from and have recourse to, in addition to the Collateral, any unencumbered prepetition or postpetition property of the Debtors and all proceeds thereof whether now existing or hereafter acquired (other than the Avoidance Actions and proceeds thereof). The DIP Facility Superpriority Claims shall be deemed legal, valid, binding, and enforceable claims, not subject to subordination, impairment or avoidance other than as provided herein, for all purposes in the Cases and any successor case.

4.    <u>DIP Facility Liens</u>.  As security for the repayment of the Postpetition Indebtedness arising under the DIP Facility Documents, pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, the DIP Agent, on behalf of itself and the DIP Lenders, is hereby granted (without the necessity of the execution by the Debtors or the filing, recordation, or execution and delivery of mortgages, security agreements, control agreements, financing statements, or otherwise) the DIP Facility Liens.  The DIP Facility Liens are valid, binding, enforceable and fully perfected as of the date hereof, shall prime and be senior in all respects to the Prepetition Liens and the Replacement Liens (as defined below) pursuant to section 364(d) of the Bankruptcy Code, and are subject only to the Carve-Out and the Permitted Prior Liens. Immediately upon entry of this Final Order, all possessory collateral held by the Prepetition Agent shall be subject to the DIP Facility Liens on a final basis and disbursed in accordance with the terms of this Final Order.  As used herein, the term "<u>Permitted Prior Liens</u>" means only such liens and security interests that are (a) valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), (b) not subject to avoidance, reduction, disallowance or subordination pursuant to the Bankruptcy Code or applicable non bankruptcy law and (c) senior in priority to the Prepetition Liens under applicable law and after giving effect to any applicable subordination or intercreditor agreements.  For the avoidance of doubt, the Permitted Prior Liens shall not include, or be deemed to include, any or all of the Primed Liens.

5.    <u>Carve-Out</u>.

(a)    As used in this Final Order, the term "<u>Carve-Out</u>" shall mean, to the extent there are not sufficient unencumbered funds available to the Debtors' estates, proceeds

of Collateral to pay the following expenses upon the occurrence of and during the continuance of an Event of Default under the DIP Facility Documents: (i) the unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of title 28 of the United States Code, (ii) to the extent allowed at any time, whether by interim order, procedural order or otherwise (whether such allowance occurs before or after the Carve-Out Trigger Date, as defined below), all unpaid fees, disbursements, costs and expenses (collectively, the "Professional Fees"), up to the amount included in the then most recent 13-Week Budget for such Professional Fees, incurred by professionals or professional firms retained by (x) the Debtors pursuant to section 327 of the Bankruptcy Code and (y) the Committee appointed pursuant to section 1103 of the Bankruptcy Code (collectively, the "Professional Persons") at any time before or on the Carve-Out Trigger Date (and including amounts incurred but not invoiced or approved prior, to or on, the Carve-Out Trigger Date), and (iii) following the Carve-Out Trigger Date, to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of Professional Fees to Professional Persons in an aggregate amount not to exceed $300,000 to be allocated among the Professional Persons on a pro rata basis based on amounts incurred after the Carve-Out Trigger Date and after allowance by the Bankruptcy Court and application of any retainers to such unpaid amounts (items (i), (ii) and (iii), collectively, the "Maximum Carve-Out Amount"). As used herein, "Carve-Out Trigger Date" shall mean the date on which the DIP Agent provides written notice to the Debtors and lead counsel to the Debtors, with a copy of such notice to lead counsel for the Committee, the U.S. Trustee, lead counsel to the Collateral Agent, and lead counsel to the Secured Noteholders, that the Carve-Out is invoked, which notice may be delivered only following the occurrence and during the continuation of an Event of Default under the DIP Facility and the termination of funding under the DIP Facility. The Carve-Out Trigger

Date shall be deemed to have occurred, regardless of whether notice has been delivered by the DIP Agent, upon the Maturity Date.

(b)     Subject to the terms and conditions of the DIP Facility Documents and this Final Order, prior to the Carve-Out Trigger Date, the Debtors shall be permitted to pay all allowed Professional Fees actually incurred (including on an interim basis) as the same may be due and payable; such payments shall not reduce or be deemed to reduce the amount of the Carve-Out specified in clause (a)(iii) above.

(c)     Notwithstanding anything herein or in any other order by this Court to the contrary, no Prepetition Collateral, Collateral, Cash Collateral, amounts borrowed under the DIP Facility Documents, proceeds of any of the foregoing, or any portion of the Carve-Out shall include, apply to, or be available for, any fees or expenses incurred by any party, including the Debtors or the Committee, in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the DIP Agent, any DIP Lender, or any Prepetition Secured Party, including, without limitation, challenging the amount, validity, extent, perfection, priority, characterization, or enforceability of, or asserting any defense, counterclaim, or offset to, the Postpetition Indebtedness, the DIP Facility Superpriority Claims, or the DIP Facility Liens, (ii) asserting (A) any claims or causes of action against the DIP Agent, any DIP Lender, or any Prepetition Secured Party, including, without limitation, claims or actions to hinder or delay the assertion or enforcement of the DIP Facility Liens or Replacement Liens, or realization on the Collateral, in accordance with the DIP Facility Documents or this Final Order by the DIP Agent, any DIP Lender, or any Prepetition Secured Party, or (B) any Avoidance Actions against any DIP Agent, any DIP Lender, or any Prepetition Secured Party, or (iii) the initiation or prosecution of any claims, causes of action, adversary

proceedings, or other litigation against any Prepetition Secured Party, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to, the Prepetition Secured Indebtedness, any Prepetition Secured Financing Document, or the Adequate Protection granted herein; provided, however, that the Committee shall be authorized to use up to an aggregate amount of $50,000 to (i) investigate the liens, claims and interests of the Prepetition Secured Parties and (ii) negotiate and/or contest the terms or entry of this Final Order. The foregoing shall not be construed as consent to the allowance of any Professional Fees and shall not affect the right of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Committee, the U.S. Trustee, or other parties-in-interest to object to the allowance and payment of any Professional Fees. Payment of any portion of the Carve-Out shall not, and shall not be deemed to, (x) reduce any Debtor's obligations owed to the DIP Agent or any DIP Lender or any Prepetition Secured Party or (y) except as expressly provided herein, subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties on and in the Collateral or Prepetition Collateral (or their respective claims against the Debtors).

6.     Investigation Rights.     Each stipulation, admission and agreement contained in this Final Order, including, without limitation, in paragraph E of this Final Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Lender Claims (defined below) as of the date of the entry of the Interim Order. Each stipulation and admission contained in this Final Order, including, without limitation, in paragraph E of this Final Order, shall be binding upon all other parties-in-interest, including, without limitation, the

Committee, under all circumstances and for all purposes, except solely to the extent as provided in this Final Order. Notwithstanding anything herein to the contrary, until August 23, 2011 (the "Investigation Termination Date"), the Committee shall be entitled to investigate the validity, amount, perfection, priority, and enforceability of the Prepetition Liens and Prepetition Secured Indebtedness, or to assert any other claims or causes of action held by the Debtors' estates against any Prepetition Secured Party (collectively, the "Lender Claims"). If the Committee determines that there may be a challenge to any Prepetition Secured Party's prepetition liens, claims or security interests, the Committee may, on or before the Investigation Termination Date, file a motion or otherwise initiate an appropriate action (including any motion or other action seeking standing to prosecute such challenge) (each, a "Challenge"), and shall have only until the Investigation Termination Date to file an objection or otherwise initiate an appropriate action setting forth the basis of such Challenge. If the Committee does not timely file a Challenge on or before the Investigation Termination Date (or such other later date as extended in accordance with paragraph 8 below), (a) disputing any agreement, acknowledgement, release and/or stipulation contained in paragraph E of this Final Order, then the agreements, acknowledgements, releases and stipulations contained in paragraph E of this Final Order which have not been expressly disputed in connection with a Challenge shall be irrevocably binding on all other parties, the estates, the Committee and all parties-in-interest (including, without limitation, any receiver, administrator, or trustee appointed in any of the Cases or any successor case in any jurisdiction) without further action by any party or this Court, and (b) the Committee and any other party-in-interest (including without limitation, any receiver, administrator, or trustee appointed in any of the Cases or any successor case or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge with respect to the Prepetition Secured Parties or

any agreement, acknowledgements, releases and stipulations contained in paragraph E of this Final Order.

7.     If a Challenge is timely filed on or before the Investigation Termination Date, any and all other potential claims and actions against the Prepetition Secured Parties not expressly asserted in such Challenge shall be deemed, immediately and without further notice, motion or application to, order of, or hearing before, this Court, to have been forever relinquished, discharged, released and waived. Nothing in this Final Order (a) confers standing on any party to file or prosecute such claims and actions described herein or (b) precludes any Prepetition Secured Party from seeking allowance of all or any portion of the Prepetition Secured Indebtedness prior to the occurrence of the Investigation Termination Date.

8.     The Investigation Termination Date may not be extended unless (a) the DIP Agent (on behalf of the DIP Lenders), the Prepetition Agent (on behalf of the Prepetition Lenders), each of the Secured Noteholders, and the Debtors each consent in writing to an extension or (b) the Committee files a motion seeking an extension before the expiration of the Investigation Termination Date and the Court enters an order granting such an extension (regardless of whether such order is entered after the Investigation Termination Date). Notwithstanding anything herein to the contrary, only the Committee shall be entitled to bring a Challenge on behalf of the Debtors' estates against any Prepetition Secured Party, and no other party-in-interest shall be entitled to investigate the validity, amount, perfection, priority, or enforceability of the Prepetition Liens and Prepetition Secured Indebtedness, or to assert any other claims or causes of action held by the Debtors' estates against the Prepetition Secured Parties.

9.     Section 506(c) and 552(b) Waivers. With the exception of the Carve-Out

and except as otherwise permitted by the DIP Facility Documents or this Final Order, neither the Collateral nor the DIP Agent, any DIP Lender, the Prepetition Secured Parties, nor any of their claims, shall be subject to any costs or expenses of administration that have been, or may be incurred at any time, pursuant to sections 105, 506(c) or 552(b) of the Bankruptcy Code, or otherwise, by the Debtors or any other party-in-interest; provided, further, that no action, inaction, or acquiescence by the DIP Agent, any DIP Lender, or any Prepetition Secured Party shall be deemed to constitute consent for any such "surcharge" of the Collateral. The "equities of the case" exception contained in section 552(b) of the Bankruptcy Code is deemed waived with respect to the Collateral. None of the DIP Agent, any DIP Lender, or the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or Prepetition Collateral.

10.     Validity and Effect of Intercreditor Agreement. Each of the DIP Agent, the Prepetition Agent and the Collateral Agent (the "Intercreditor Parties") shall be bound by, and their respective rights and remedies pursuant to the Prepetition Secured Indebtedness and the Postpetition Indebtedness, shall be subject to the terms, provisions and restrictions of the Intercreditor Agreement, and the Intercreditor Agreement shall apply and govern the Intercreditor Parties in these Cases. Nothing in this Final Order is meant to or shall be deemed to alter or otherwise modify the rights contained in the Intercreditor Agreement as between the Intercreditor Parties.

11.     Use of Cash Collateral. To fund the Debtors' working capital and other general corporate needs pending the Final Hearing, in accordance with the terms of this Final Order, the DIP Facility Documents and the then most recent 13-Week Budget, the Debtors may request revolving credit advances under the DIP Facility, including letters of credit

("Advances").  Upon entry of this Final Order and thereafter, the Debtors shall receive Advances under the DIP Facility to fund the Debtors' working capital and other general corporate needs in accordance with the terms of the Final Order, the DIP Facility Documents and the then most recent 13-Week Budget.  The Debtors are hereby authorized to use all Cash Collateral of the Prepetition Secured Parties, but solely for the purposes set forth in this Final Order and in accordance with the then most recent 13-Week Budget, including, but not limited to, payment of professional fees and to make Adequate Protection Payments provided for in this Final Order. The Debtors' right to use Cash Collateral, and the Prepetition Secured Parties' consent to the use of the Cash Collateral, shall terminate automatically on the Maturity Date; provided that the Debtors shall continue to have the right to use Cash Collateral to pay and satisfy the payments contemplated by the Carve-Out, with any such payment to be subject to such further and other orders of the Court regarding the compensation of professionals.

12.     Adequate Protection of Prepetition Secured Parties.    The Prepetition Secured Parties are entitled, pursuant to sections 362, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in their respective Prepetition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in the value of the Prepetition Secured Parties' security interests in the Prepetition Collateral (which diminution in value shall be calculated in accordance with section 506(a) of the Bankruptcy Code) as a result of, among other things, the Debtors' sale, lease or use of the Cash Collateral and any other of the Prepetition Collateral, the priming of the Prepetition Secured Parties' security interests and liens in the Prepetition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Facility Documents and this Final Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code or otherwise.  As adequate protection, subject to the Investigation Rights

set forth in paragraph 6 of this Final Order, the Prepetition Secured Parties shall receive the following (collectively the "Adequate Protection"):

        (a)     Adequate Protection Liens. As security for and to the extent there is a diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral (whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the imposition of the automatic stay (including, without limitation, any diminution in value of such interests in the Prepetition Collateral prior to any Prepetition Secured Party seeking vacation of the automatic stay or the Court granting such relief), the priming of the Prepetition Liens, the use of Cash Collateral or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral), (i) the Prepetition Agent, on behalf of the Prepetition Lenders, and (ii) the Collateral Agent, on behalf of itself, the Secured Notes Trustee, and the Secured Noteholders, respectively, were by the Interim Order and hereby are granted replacement liens (the "Replacement Liens") in the Collateral, which Replacement Liens are valid, binding, enforceable and fully perfected as of the Petition Date without the necessity of the execution, filing or recording by the Debtors or any Prepetition Secured Party of mortgages, security agreements, pledge agreements, financing statements, or other agreements, and which shall be subordinate only to the Carve-Out, the DIP Liens and the Permitted Prior Liens and shall be equivalent to a lien granted under section 364(c) of the Bankruptcy Code, and which Replacement Liens shall cover assets, interest, and proceeds of the Debtors that are or would be collateral under the Prepetition Secured Financing Documents if not for section 552(a) of the Bankruptcy Code, and all cash and cash equivalents (with the exception of the Avoidance Actions and proceeds thereof). The Replacement Liens shall rank in the same relative priority and rights as do the respective security interests and liens

under the Prepetition Secured Financing Documents as of the Petition Date and pursuant to the Intercreditor Agreement.

(b)　　Prepetition Secured Party Administrative Claim.　As further adequate protection of the interests of the Prepetition Secured Parties against any diminution in value of such interests in the Prepetition Collateral (whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the imposition of the automatic stay (including, without limitation, any diminution in value of such interests in the Prepetition Collateral prior to any Prepetition Secured Party seeking vacation of the automatic stay or the Court granting such relief), the priming of the Prepetition Liens, the use of Cash Collateral or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral), the Prepetition Agent, on behalf of the Prepetition Lenders, and Secured Noteholders, respectively, were by the Interim Order and hereby are granted in each of the Cases an allowed administrative claim (the "Prepetition Secured Party Administrative Claim") under Bankruptcy Code section 507(b) with respect to all Adequate Protection obligations.　Such Prepetition Secured Party Administrative Claim shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, not existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to section 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726 (to the extent permitted by law), 1113 and 1114; provided, however, the Prepetition Secured Party Administrative Claim shall be junior and subordinate only to the DIP Facility Superpriority Claim, the Carve-Out and any Permitted Prior Liens.　The Prepetition Secured Party Administrative Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all

proceeds thereof (with the exception of the Avoidance Actions and the proceeds thereof).

(c)     Access.  The Prepetition Secured Parties shall be afforded (i) any financial information or periodic reporting that is provided to, or required to be provided to, the DIP Agent or the DIP Lenders (or their advisors) pursuant to the DIP Facility Documents, and (ii) reasonable access to the Collateral and the Debtors' business premises, during normal business hours, for purposes of verifying the Debtors' compliance with the terms of this Final Order as it pertains to the Prepetition Secured Parties and as otherwise permitted under the Prepetition Secured Financing Documents.

(d)     Allowance of Claims.  The claims arising from or in connection with the Prepetition Secured Indebtedness are hereby deemed "allowed claims" within the meaning of section 502 of the Bankruptcy Code.

(e)     Right to Credit Bid.  Subject in all respects to the terms of the Intercreditor Agreement, (i) the Prepetition Agent (on behalf of the Prepetition Lenders) and (ii) the Secured Notes Trustee (on behalf of the Secured Noteholders), or the Secured Noteholders, respectively, shall have the right to "credit bid" the allowed amount of the Prepetition Lenders' or the Secured Noteholders' claims, respectively, during any sale of all or substantially all of the Prepetition Collateral, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code.

(f)     Accrual of Interest on Secured Notes.  During the pendency of the Cases, interest will continue to accrue on the Secured Note Indebtedness (exclusive of the Prepayment Premium[5]) as provided in the Secured Note Documents; provided, however, that

---

[5] As defined in the Secured Note Documents.

accrued and unpaid interest shall not be paid by the Debtors from the proceeds of the DIP Facility or Cash Collateral so long as any obligations remain outstanding and unpaid under the DIP Facility or the commitments thereunder have not terminated.

(g)     The automatic stay is modified as to the Prepetition Secured Parties to allow implementation of the provisions of this paragraph 12, without further notice or order of the Court.

(h)     <u>Reservation of Rights of Prepetition Secured Parties</u>.  Under the circumstances and given that Adequate Protection is consistent with the Bankruptcy Code, including section 506(c) thereof, the Court finds that the Adequate Protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties.  However, subject to the terms of the Intercreditor Agreement, any Prepetition Secured Party may request further or different adequate protection, and the Debtors or any other party may contest any such request; <u>provided</u> that such further or different adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Agent and the DIP Lenders granted under this Final Order and the DIP Facility Documents.  Except as expressly provided herein, nothing contained in this Final Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to any Prepetition Secured Party, the DIP Agent or any DIP Lender.

13.     <u>Adequate Protection Payments</u>.  Upon entry of this Final Order, the Debtors shall promptly pay to the Prepetition Agent from Cash Collateral or Advances under the DIP Facility amounts accrued in connection with the Prepetition First Lien Indebtedness, including, without limitation, payment of interest charged on the Prepetition First Lien Indebtedness, fees, expenses, charges, letter of credit fees, and commissions (the "<u>Adequate</u>

Protection Payments").

14. <u>Reimbursement of Fees and Expenses</u>. The Debtors shall promptly reimburse (i) the DIP Agent and the DIP Lenders in accordance with the DIP Facility Documents for reasonable fees and expenses incurred in connection with the Cases or under the DIP Facility Documents, (ii) the Prepetition Agent and the Prepetition Lenders in accordance with the terms of the Prepetition Loan Documents for reasonable fees and expenses in connection with the Cases or under the Prepetition Loan Documents, and (iii) the Secured Notes Trustee, Collateral Agent and the Secured Noteholders in accordance with the Secured Note Documents (including, without limitation, the reasonable fees and expenses of such entities' legal and financial advisors) for reasonable fees and expenses incurred in connection with the Cases or under the Secured Notes Documents: in each case, whether incurred prepetition or postpetition, within ten (10) business days (if no written objection is received within such ten (10) business-day period) after such professional has delivered an invoice substantially in the form delivered in the ordinary course of business describing such fees and expenses; <u>provided</u> that (other than local counsel) there shall be no more than one law firm acting as primary counsel for each of the (a) – (d): (a) the DIP Agent and the DIP Lenders, (b) the Prepetition Agent and the Prepetition Lenders, (c) the Secured Notes Trustee and the Collateral Agent, and (d) the Secured Noteholders; and <u>provided, further, however</u>, that any such invoice may be redacted to protect privileged, confidential, proprietary information or any information constituting attorney work product, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or for any benefits of the attorney work product doctrine. A copy of each invoice submitted shall be delivered to the U.S. Trustee, counsel to the Committee, counsel to the DIP Agent, and counsel to the Secured Noteholders concurrently with delivery to counsel to the

Debtors. Any written objection to such fees or expenses must contain a specific basis for the objection and a quantification of the undisputed amount of the fees and expenses invoiced; failure to object with specificity or to quantify the undisputed amount of the invoice subject to such objection will constitute a waiver of any objection to such invoice. None of such fees and expenses shall be subject to Court approval or required to be maintained in accordance with the United States Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, that to the extent the Debtors fail to reimburse the Prepetition Secured Parties, the DIP Agent and/or the DIP Lenders for any such fees and expenses that are not subject to objection as provided herein, the applicable professionals shall be permitted to apply any amounts held in escrow or retainer (whether obtained prior to, on, or after, the Petition Date) against such unpaid fees and expenses without the need to file any application with the Court; provided, further, that the Court shall have jurisdiction to determine any dispute concerning such invoices; provided, however, that if an objection to a professional's invoice is timely received, the Debtors shall only be required to timely pay the undisputed amount of the invoice and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

15.    Restrictions on the Debtors. Other than the Carve-Out and the Permitted Prior Liens, no claim or lien having a priority superior or *pari passu* with those granted by this Final Order to the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Secured Parties shall be granted by any Debtor, while any obligations under the DIP Facility (or refinancing thereof) or any Prepetition Secured Indebtedness remains outstanding without the written consent of the DIP Agent, the Prepetition Agent, the Secured Notes Trustee, the Collateral Agent, and the Secured Noteholders. Except as expressly permitted by the DIP Facility

Documents and this Final Order, the Debtors will not, at any time during the Cases while any obligations under the DIP Facility and/or the Prepetition Secured Financing Documents remain outstanding, grant senior or *pari passu* mortgages, security interests, or liens in the Collateral, the Prepetition Collateral, or any portion thereof pursuant to section 364(d) of the Bankruptcy Code or otherwise.

16.     <u>Additional Perfection Measures</u>.  None of the DIP Agent, any DIP Lender, or any Prepetition Secured Party shall be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction, or take any other action, to attach or perfect the security interests and liens granted under the DIP Facility Documents, the Interim Order and this Final Order (including, without limitation, taking possession of or obtaining control over any of the Collateral, or taking any action to have security interests or liens noted on certificates of title or similar documents).  Notwithstanding the foregoing, the DIP Agent, any DIP Lender or any Prepetition Secured Party, may, in its discretion, file this Final Order or such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments, or otherwise confirm perfection of such liens, security interests, and mortgages, without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, and all such documents shall be deemed to have been filed or recorded or other action taken on the Petition Date, with the priorities set forth herein; <u>provided</u>, that the failure of the DIP Facility Agent, any DIP Facility Lender or any Prepetition Secured Party to file any such financing statement, mortgage, deed of trust, notice of lien or other instrument, or to otherwise confirm perfection of such liens, security interests or mortgages or make any other such request shall not affect either the perfection or priority of the DIP Facility Liens.

17.     <u>Rights with Respect to Certain Prepetition Agreements</u>.  The DIP Agent

and the DIP Lenders shall have all the rights and benefits with respect to each Deposit Account subject to a Control Agreement (each term as defined in the DIP Facility Agreement), any securities or other accounts subject to a Control Agreement, each other agreement with a third party (including, but not limited to, any agreement with a landlord, warehouseman, customs broker, or freight forwarder), and each other notification or agreement received or furnished in connection with the Prepetition Credit Agreement, and all depository banks, blocked account banks, landlords, securities intermediary, warehousemen, customs brokers, freight forwarders and other third parties shall continue to comply, for the benefit of the DIP Agent and the DIP Lenders, with the terms and conditions of each such agreement or notification, in each such case whether or not, and as if, an additional agreement or notification has been executed or furnished in connection with the DIP Facility; with such benefit in favor of the DIP Agent and the DIP Lenders, in respect of the DIP Facility, to apply notwithstanding any termination or discharge of the Prepetition Credit Agreement or other Prepetition Loan Document, all or any part of the Prepetition First Lien Indebtedness, and all or any part of the security interests and other liens granted under the Prepetition Loan Documents, the Interim Order or this Final Order in respect of any such Prepetition First Lien Indebtedness.

18.     <u>Access to Collateral – No Landlord's Liens</u>.  Subject to applicable state law, notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent, for the benefit of the DIP Lenders, contained in this Final Order or the DIP Facility Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Facility Documents and paragraph 19 below, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Facility Documents, the DIP Agent may, subject to any separate agreement by and between

such landlord and the DIP Agent (the "Separate Agreement"), enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and, subject to the Separate Agreement, shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from such landlord; provided, that, subject to the Separate Agreement, the DIP Agent shall only pay rent of the Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a per diem basis. Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded to the DIP Agent in this paragraph. Notwithstanding the foregoing, the DIP Agent's rights are limited to those (1) granted under applicable non-bankruptcy law; (2) consented to in writing by the applicable landlord; or (3) granted by the Court on motion, notice and an opportunity for the affected landlord to respond thereto.

19. <u>Automatic Stay</u>. Any automatic stay otherwise applicable to the DIP Agent and the DIP Lenders is hereby modified so that after the occurrence and during the continuation of any Event of Default (subject to any applicable grace periods) under the DIP Facility Documents, and delivery by the DIP Agent of written notice of its intent to exercise remedies (a "Remedies Notice") in each case given to the Debtors and their counsel, counsel to the Secured Notes Trustee and the Collateral Agent, counsel to the Secured Noteholders, counsel to the Committee and the United States Trustee, the DIP Agent shall be entitled to exercise its rights and remedies in accordance with the DIP Facility Agreement without further order of this Court beginning five (5) business days following delivery of the Remedies Notice (the "Remedies Notice Period") unless otherwise provided by order of this Court; provided, however, immediately upon the commencement of the Remedies Notice Period and thereafter until the

Remedies Expiration Date: (i) the DIP Lenders may charge default rates of interest, (ii) the Debtors shall have no right to use any Collateral except (a) to make disbursements in the ordinary course of business and (b) for payment of the Carve-Out, the Adequate Protection Payments and the Postpetition Indebtedness, and (iii) any obligation otherwise imposed on the DIP Lenders to provide any loan or advance to the Debtors pursuant to the DIP Facility Agreement shall be suspended. During the Remedies Notice Period, the Debtors, the Secured Noteholders, the Committee and/or the U.S. Trustee shall be entitled to an emergency hearing before this Court (an "Event of Default Hearing"); provided, however, that the Debtors, the Secured Noteholders, the Committee and/or the U.S. Trustee shall have the initial burden of proof at such hearing and the only issue to be determined at such hearing shall be whether an Event of Default under the DIP Facility Documents has occurred and is continuing, and if an Event of Default under the DIP Facility Documents is determined to have occurred and be continuing, the automatic stay will not be re-imposed or continue with respect to the DIP Agent or DIP Lenders without their consent. After the expiration of the Remedies Notice Period, without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code shall be deemed vacated and the DIP Agent and the DIP Lenders may exercise all rights and remedies provided for in the DIP Facility Documents; provided, however, to the extent an Event of Default Hearing is occurring, then the Remedies Notice Period shall be extended pending a determination by the Court as to whether an Event of Default has occurred. Notwithstanding the occurrence of an Event of Default under the DIP Facility Documents or termination of the commitments under the DIP Facility Agreement or anything herein to the contrary, all of the rights, remedies, benefits, and protections provided to the DIP Agent and DIP Lenders under the DIP Facility Documents and this Final Order shall survive the date of

termination of the DIP Facility. Upon the expiration of the Remedies Notice Period, the principal of and all accrued interest and fees and all other "Obligations" under the DIP Facility Documents shall be immediately due and payable and the DIP Agent and DIP Lenders shall have all other rights and remedies provided in the DIP Facility Documents, and this Final Order. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay with respect to the DIP Agent and DIP Lenders. For the avoidance of doubt, the Remedies Notice Period shall expire no later than the earliest date of cure or waiver of the applicable Event of Default or payment in full in cash of the Postpetition Indebtedness (such date, the "Remedies Expiration Date").

20. <u>Binding Effect</u>. The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Agent, DIP Lenders, Prepetition Secured Parties, the Debtors, the Committee, and their respective successors and assigns, including any trustee hereafter appointed for the estate of any of the Debtors, whether in these Cases or any successor case, including the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Final Order.

21. <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order (a) confirming any plan under chapter 11 of the Bankruptcy Code in any of the Cases (and, to the extent not satisfied in full in cash, the Postpetition Indebtedness shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge), (b) approving any sale under section 363 of the Bankruptcy Code, (c) converting any of the Cases to a chapter 7 case unless permitted under the DIP Facility Documents, or (d) to the

maximum extent permitted by law, dismissing any of the Cases unless permitted under the DIP Facility Documents, and notwithstanding the entry of any such order, the terms and provisions of this Final Order shall continue in full force and effect, and the DIP Facility Superpriority Claims, DIP Facility Liens and Adequate Protection granted pursuant to this Final Order and/or the DIP Facility Documents shall continue in full force and effect and shall maintain their priority as provided by this Final Order and the DIP Facility Documents to the maximum extent permitted by law until all of the Postpetition Indebtedness is indefeasibly paid in full in cash or otherwise addressed pursuant to a confirmed plan.

22. <u>After-Acquired Property</u>. Except as otherwise provided in this Final Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors after the Petition Date, including, without limitation, all Collateral pledged or otherwise granted to the DIP Agent, on behalf of the DIP Lenders, pursuant to the DIP Facility Documents and this Final Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date (or perfected after the Petition Date pursuant to section 546(b) of the Bankruptcy Code) which is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

23. <u>Access to the Debtors</u>. In accordance with the provisions of access in the DIP Facility Documents, the Debtors shall permit representatives, agents, and employees of the DIP Agent and the DIP Lenders to have reasonable access to the Debtors' premises and records during normal business hours (without unreasonable interference with the proper operation of the

Debtors' businesses) and shall cooperate, consult with, and provide to such representatives, agents, and/or employees all such information as is reasonably requested.

24.    Authorization to Act.  Each of the Debtors is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay interest, fees and all other amounts as provided under this Final Order and the DIP Facility, which may be reasonably required or necessary for the Debtors' full and timely performance under the DIP Facility and this Final Order, including, without limitation:

(a)    the execution of the DIP Facility Documents;

(b)    the modification or amendment of the DIP Facility Agreement or any other DIP Facility Documents without further order of this Court, in each case, in such form as the Debtors, the DIP Agent, and the DIP Lenders may agree, with the consent of the Secured Noteholders (which consent shall be in the Secured Noteholders' sole discretion; provided, however, that consent to non-material modifications or amendments shall not be unreasonably withheld), in accordance with the terms of the DIP Facility; provided, however, that notice of any material modification or amendment shall be provided to counsel for the Committee and the U.S. Trustee, each of which will have five (5) business days from the date of delivery of such notice within which to object in writing; provided further, that if an objection is timely delivered, such modification or amendment shall be permitted only pursuant to an order of the Court; and

(c)    making the Adequate Protection Payments provided for in this Final Order;

(d)    making the non-refundable payments to the DIP Agent or the DIP Lenders, as the case may be, of the fees referred to in the DIP Facility Agreement, and

reasonable costs and expenses as may be due from time to time as provided in this Final Order, including, without limitation, reasonable attorneys' and other professional fees and disbursements as provided in the DIP Facility Documents; and

(e)     the performance of all other acts required under or in connection with the DIP Facility Documents.

25.     <u>Insurance Policies</u>.  The DIP Agent, on behalf of the DIP Lenders, shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors which in any way relates to the Collateral and each liability insurance policy maintained by the Debtors (other than D&O insurance and any "tail" policy).  Any insurance proceeds or other receipts from any source that relate to the Collateral shall be immediately delivered to the Debtors and subject to the DIP Facility Liens and the terms of the DIP Facility Documents.

26.     <u>Subsequent Reversal</u>.  If any or all of the provisions of this Final Order or the DIP Facility Documents are hereafter reversed, modified, vacated, amended, or stayed by subsequent order of this Court or any other court:  (a) such reversal, modification, vacatur, amendment, or stay shall not affect (i) the validity of any obligation of any Debtor to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties pursuant to this Final Order that is or was incurred prior to such party receiving written notice of the effective date of such modification, vacatur, amendment, or stay (the "<u>Effective Date</u>"), or (ii) the validity, enforceability or priority of the DIP Facility Superpriority Claims, DIP Facility Liens, Adequate Protection or other grant authorized or created by this Final Order and the DIP Facility Documents that is or was incurred prior to such party receiving written notice of the Effective Date; (b) the Postpetition Indebtedness and Adequate Protection pursuant to this Final Order and

the DIP Facility Documents arising prior to the Effective Date shall be governed in all respects by the provisions of this Final Order and the DIP Facility Documents in effect immediately prior to the Effective Date; and (c) the use of Cash Collateral and the validity of any financing provided or security interest granted pursuant to this Final Order and the DIP Facility Documents is and shall be protected by section 364(e) of the Bankruptcy Code.

27. <u>Effect of Dismissal of Cases</u>. If the Cases are dismissed, converted or substantively consolidated, then neither the entry of such order nor the dismissal, conversion or substantive consolidation of these Cases shall affect the rights of the DIP Agent and DIP Lenders under their respective documents or this Final Order, or the Prepetition Secured Parties under this Final Order, and all of the respective rights and remedies thereunder of the DIP Agent and DIP Lenders or the Prepetition Secured Parties shall remain in full force and effect as if the Cases had not been dismissed, converted, or substantively consolidated. If an order dismissing any of the Cases is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Facility Liens and DIP Facility Superpriority Claims granted to and conferred upon the DIP Agent and DIP Lenders and the protections afforded to the DIP Agent and the DIP Lenders pursuant to this Final Order and the DIP Facility Documents shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Postpetition Indebtedness shall have been paid and satisfied in full in cash (and that such DIP Facility Liens, DIP Facility Superpriority Claims and other protections shall, notwithstanding such dismissal, remain binding on all interested parties), (ii) the Adequate Protection granted to and conferred upon the Prepetition Secured Parties and any other protections afforded to the Prepetition Secured Parties pursuant to this Final Order and the DIP Facility Documents shall continue in full force and effect as provided in this Final Order until all

Postpetition Indebtedness shall have been paid and satisfied in full in cash (and that such Adequate Protection and any other protections shall, notwithstanding such dismissal, remain binding on all interested parties), (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Facility Liens, Prepetition Liens, DIP Facility Superpriority Claims and Adequate Protection, and (iv) any hearing on a motion to dismiss any of the Cases shall require at least twenty (20) days' prior notice to the DIP Agent, unless otherwise ordered by the Court for good cause shown.

28.　　<u>Findings of Fact and Conclusions of Law</u>.　This Final Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon the entry thereof.

29.　　<u>Controlling Effect of Order</u>.　To the extent any provision of this Final Order conflicts with any provision of the Motion, any documents executed or delivered prior to the Petition Date, the Interim Order, or any DIP Facility Documents, the provisions of this Final Order shall control.

Dated: July **12** , 2011

The Honorable Kevin Gross
United States Bankruptcy Judge