# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PERKINS & MARIE CALLENDER'S INC.,[1] et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 11-11795 (KG)<br><br>Jointly Administered |

## DEBTORS' JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

TROUTMAN SANDERS LLP
Mitchel H. Perkiel (admitted *pro hac vice*)
Hollace T. Cohen (admitted *pro hac vice*)
Brett D. Goodman (admitted *pro hac vice*)
The Chrysler Building
405 Lexington Avenue, 7th Floor
New York, NY 10174
Telephone:     (212) 704-6000
Facsimile:     (212) 704-6288

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Robert S. Brady (DE Bar No. 2847)
Robert F. Poppiti, Jr. (DE Bar No. 5052)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone:     (302) 571-6600
Facsimile:     (302) 571-1253


Dated:    July 14, 2011
          Wilmington, Delaware

---

[1]  The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Perkins & Marie Callender's Inc. (4388); Perkins & Marie Callender's Holding Inc. (3999); Perkins & Marie Callender's Realty LLC (N/A); Perkins Finance Corp. (0081); Wilshire Restaurant Group LLC (0938); PMCI Promotions LLC (7308); Marie Callender Pie Shops, Inc. (7414); Marie Callender Wholesalers, Inc. (1978); MACAL Investors, Inc. (4225); MCID, Inc. (2015); Wilshire Beverage, Inc. (5887); and FIV Corp. (3448).  The mailing address for the Debtors is 6075 Poplar Avenue, Suite 800, Memphis, TN 38119.

# TABLE OF CONTENTS

**I. DEFINITIONS AND CONSTRUCTION OF TERMS** ......................................................... **3**

    A.    Definitions ........................................................................................................ 3

    B.    Interpretation, Application of Definitions and Rules of Construction ................ 19

**II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** ............................ **19**

    A.    General Rules of Classification ...................................................................... 19

    B.    Classification of Claims and Interests ............................................................ 20

**III. TREATMENT OF ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS AND DIP FINANCING CLAIMS** .............. **21**

    A.    Administrative Claims .................................................................................... 21

    B.    Bar Date for Administrative Claims ................................................................ 21

    C.    Professional Fee Claims ................................................................................. 21

    D.    Priority Tax Claims ........................................................................................ 22

    E.    DIP Financing Claims .................................................................................... 22

**IV. TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS** ............ **23**

    A.    Class 1 — Other Priority Claims .................................................................... 23

    B.    Class 2 — Other Secured Claims ................................................................... 23

    C.    Class 3 — Senior Secured Notes Claims ........................................................ 24

    D.    Class 4 — Senior Notes Claims ...................................................................... 24

    E.    Class 5 — General Unsecured Claims ............................................................ 25

    F.    Class 6 — Convenience Claims ...................................................................... 26

    G.    Class 7 — Intercompany Claims .................................................................... 26

    H.    Class 8 — Subordinated Claims ..................................................................... 26

    I.    Class 9A — Equity Interests in PMC Holding ............................................... 26

    J.    Class 9B — Equity Interests in the Subsidiary Debtors .................................... 27

**V. PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE REORGANIZED DEBTORS** ............................................................................. **27**

    A.    Amendments to Corporate Formation and Governance Documents ................... 27

    B.    New Certificates of Formation ....................................................................... 28

    C.    Appointment of Officers and Managers .......................................................... 28

    D.    Powers of Officers ......................................................................................... 29

    E.    Management of Reorganized Debtors .............................................................. 29

    F.    Management Incentive Plan ............................................................................ 29

    G.    PMC Holding LLC Agreement ...................................................................... 30

    H.    Corporate Reorganization .............................................................................. 30

**VI. LIMITED CONSOLIDATION FOR VOTING, CONFIRMATION, AND DISTRIBUTION PURPOSES** ........................................................................... **30**

**VII.    PROVISIONS REGARDING MEANS OF IMPLEMENTATION, VOTING, DISTRIBUTIONS, AND RESOLUTION OF DISPUTED CLAIMS ...................... 31**

A.    First Lien Exit Facility ...................................................................... 31
B.     Issuance of PMC Holding Membership Interests .............................. 32
C.    New Secured Term Loans ................................................................. 32
D.    Restructuring Transactions ............................................................... 33
E.    Corporate Action .............................................................................. 33
F.    Effectuating Documents; Further Transactions ................................. 34
G.    Cancellation of Securities and Agreements ...................................... 34
H.    Voting of Claims .............................................................................. 35
I.    Nonconsensual Confirmation ............................................................ 35
J.    Distributions in Respect of Allowed Claims ...................................... 35
K.    Resolution of Disputed Claims ......................................................... 38

**VIII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................................. 40**

A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ........ 40
B.    Limited Extension of Time to Reject ................................................. 41
C.    Cure ................................................................................................. 41
D.    Rejection Damage Claims ................................................................. 41
E.    Assignment ...................................................................................... 41
F.    Benefit Plans .................................................................................... 42
G.    Assumption of Indemnification Obligations ...................................... 42

**IX.    EFFECT OF CONFIRMATION OF THIS PLAN ........................................... 43**

A.    Continued Corporate Existence ........................................................ 43
B.    Vesting of Assets ............................................................................. 43
C.    Preservation of Causes of Action ..................................................... 43
D.    Discharge of the Debtors .................................................................. 44
E.    Releases by the Debtors of Certain Parties ........................................ 44
F.    Releases by Non-Debtors .................................................................. 45
G.    Exculpation ..................................................................................... 45
H.    Injunction ........................................................................................ 46
I.    Term of Bankruptcy Injunction or Stays ........................................... 46
J.    Preservation of Insurance ................................................................. 46

**X.    EFFECTIVENESS OF THIS PLAN ........................................................... 46**

A.    Conditions Precedent to Confirmation ............................................. 46
B.    Conditions Precedent to the Effective Date ...................................... 47
C.    Waiver of Conditions ....................................................................... 47
D.    Notice of Confirmation and Effective Date ...................................... 48
E.    Effect of Failure of Conditions ........................................................ 48
F.    Vacatur of Confirmation Order ......................................................... 48
G.    Revocation, Withdrawal, Modification or Non-Consummation ......... 48

| | | |
|---|---|---|
| **XI.** | **RETENTION OF JURISDICTION** | **49** |
| **XII.** | **MISCELLANEOUS PROVISIONS** | **50** |
| | A. Payment of Statutory Fees | 50 |
| | B. Payment of Fees and Expenses of Restructuring Support Parties | 50 |
| | C. Payment of Fees and Expenses of the Senior Secured Notes Trustee, Senior Secured Notes Collateral Agent and the Senior Notes Trustee | 50 |
| | D. Modification of this Plan | 50 |
| | E. Dissolution of Creditors' Committee | 51 |
| | F. Votes Solicited in Good Faith | 51 |
| | G. Administrative Claims Incurred After the Effective Date | 51 |
| | H. Request for Expedited Determination of Taxes | 52 |
| | I. Governing Law | 52 |
| | J. Filing or Execution of Additional Documents | 52 |
| | K. Exemption From Transfer Taxes | 52 |
| | L. Section 1145 Exemption | 52 |
| | M. Waiver of Federal Rule of Civil Procedure 62(a) | 53 |
| | N. Exhibits/Schedules | 53 |
| | O. Notices | 53 |
| | P. Plan Supplement | 53 |
| | Q. Further Actions; Implementations | 54 |
| | R. Severability | 54 |
| | S. Entire Agreement | 54 |
| | T. Binding Effect | 54 |
| | U. Substantial Consummation | 54 |
| | V. Conflict | 55 |

EXHIBIT A    New Secured Term Loan Agreement Term Sheet

## INTRODUCTION

Perkins & Marie Callender's Inc., Perkins & Marie Callender's Holding Inc., Perkins & Marie Callender's Realty LLC, Perkins Finance Corp., Wilshire Restaurant Group LLC, PMCI Promotions LLC, Marie Callender Pie Shops, Inc., Marie Callender Wholesalers, Inc., MACAL Investors, Inc., MCID, Inc., Wilshire Beverage, Inc. and FIV Corp., the above-captioned debtors and debtors in possession, propose the following joint plan of reorganization under section 1121(a) of the Bankruptcy Code.[2]

The Debtors' Chapter 11 Cases are being jointly administered pursuant to an order of the Court, and this Plan is being presented as a joint plan of reorganization of the Debtors. Claims against, and Interests in, the Debtors (other than Administrative Claims, Professional Fee Clams, Priority Tax Claims, and DIP Financing Claims) are classified in Article II hereof and treated in Article IV hereof.

Reference is made to the Disclosure Statement accompanying this Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, properties, financial projections of future operations, and risk factors, together with a summary and analysis of this Plan. All Claim and Interest holders entitled to vote on this Plan are encouraged to review the Disclosure Statement and to read this Plan carefully before voting to accept or reject this Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE COURT, HAVE BEEN AUTHORIZED BY THE COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

---

[2]    Capitalized terms used in this Introduction shall have the meanings ascribed to them below.

# I.

## DEFINITIONS AND CONSTRUCTION OF TERMS

### A.    <u>Definitions.</u>

Unless otherwise defined herein, or the context otherwise requires, the following terms shall have the respective meanings set forth below:

| | |
|---|---|
| ***Administrative Claim*** | means a Claim for costs and expenses of administration of the Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving and operating the Estates; (b) any indebtedness or obligations incurred or assumed by the Debtors in Possession in connection with the conduct of their businesses, including for wages, salaries, or commissions for services, and payments for goods and other services and leased premises; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code. |
| ***Administrative Claims Bar Date*** | means the first Business Day that is thirty (30) days after the Effective Date. |
| ***Allowed*** | means, with reference to any Claim, (a) any Claim against any of the Debtors that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary Proof of Claim has been filed, (b) any Claim specifically allowed under this Plan, (c) any Claim that is not Disputed by the Claims Objection Deadline, or (d) any Claim the amount or existence of which, if Disputed, (i) has been determined by a Final Order of a court of competent jurisdiction other than the Court, or (ii) has been allowed by Final Order of the Court; <u>provided</u>, <u>however</u>, that any Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Court shall not be considered "Allowed Claims" hereunder. |
| ***Ballots*** | means each of the ballot forms distributed with the Disclosure Statement to each holder of an Impaired Claim (other than to holders not entitled to vote on this Plan) for, among other things, voting on the acceptance or rejection |

of this Plan.

**Bankruptcy Code**                    means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as in effect on the date hereof.

**Bankruptcy Rules**                   means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and the local rules of the Court, as the context may require.

**Bar Date**                           means, in the case of an Administrative Claim, the Administrative Claims Bar Date; and, in any other case, the applicable "bar date" as may have been established therefor by the Court by a Final Order.

**Business Day**                       means any day on which commercial banks are open for business, and not authorized to close, in the City of New York, New York, except any day designated as a legal holiday by Bankruptcy Rule 9006(a).

**Cash**                               means legal tender of the United States of America.

**Cash Election**                      means the election as provided on the Ballot by a holder of a General Unsecured Claim in an amount less than $500,000 to receive Cash in an amount equal to the lesser of (i) 10% of such holder's Allowed General Unsecured Claim or (ii) such holder's Pro Rata share of the Cash Election Cap Amount as provided in Article IV.E.2 of this Plan; provided, however, that, the holder of an Allowed Claim in the amount of $500,000 or more may irrevocably elect to reduce that Claim to an amount less than $500,000 and thereby be eligible to make the Cash Election in respect of that reduced Claim; provided, further, however, that, without the prior written consent of the Debtors (with the consent of the Restructuring Support Parties), any Claim that is Allowed in the amount of $500,000 or more may not be subdivided into multiple General Unsecured Claims for the purpose of determining whether the Cash Election applies to any or more of those subdivided Claims; provided further, however that in the event a holder of an Allowed General Unsecured Claim holds multiple Allowed General Unsecured Claims against the Debtors, such Allowed General Unsecured Claims shall not be aggregated for purposes of determining whether the Cash Election applies to each such Allowed General Unsecured Claim.

| | |
|---|---|
| ***Cash Election Cap Amount*** | means $1,500,000.00. |
| ***Causes of Action*** | means any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, now-owned, hereafter acquired, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity, or otherwise, including any causes of action arising under sections 510, 544, 547, 548, 549, 550, 551 or any other section of the Bankruptcy Code, unless otherwise waived or released by the Debtor(s), with the consent of the Restructuring Support Parties or by the Reorganized Debtor(s) to the extent such Cause of Action is a Cause of Action held by one or more Debtors or Reorganized Debtors. |
| ***Chapter 11 Cases*** | means the chapter 11 cases commenced by the Debtors. |
| ***CHI*** | means Castle Harlan, Inc. |
| ***CHI Management Agreements*** | means (i) the Agreement dated September 21, 2005 among CHI, The Restaurant Holding Corporation, PMCI (f/k/a The Restaurant Company), TRC Holding Corp. and TRC Holding LLC, and (ii) the Agreement dated November 12, 1999 among CHI, Wilshire Restaurant Group LLC and Marie Callender Pie Shops, Inc. |
| ***Claim*** | means any claim, as such term is defined in section 101(5) of the Bankruptcy Code. |
| ***Claims Agent*** | means Omni Management Group, LLC or any successor thereto. |
| ***Claims Objection Deadline*** | means, as applicable (except for Administrative Claims and Professional Fee Claims): (a) the day that is the later of (i) the first business day that is sixty (60) days after the Effective Date, or (ii) as to Proofs of Claim filed after the applicable Bar Date, the first Business Day that is at least thirty (30) days after a Final Order is entered deeming the late filed claims to be treated as timely filed; or (b) such later date as may be established by the Court upon a motion by the Reorganized Debtors, without any further notice to other parties-in-interest. |

| | |
|---|---|
| ***Class*** | means a group of Claims or Equity Interests as classified under this Plan. |
| ***Collateral*** | means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law. |
| ***Confirmation Date*** | means the date on which the Confirmation Order is entered by the Court, but in no event later than the earlier of (a) October 4, 2011 and (b) the date that is five (5) weeks after the hearing on the approval of the Disclosure Statement; provided, however, that such dates may be extended by the Debtors with the consent of the Restructuring Support Parties. |
| ***Confirmation Hearing*** | means the hearing conducted by the Court to consider confirmation of this Plan pursuant to section 1128 of the Bankruptcy Code, as it may be adjourned or continued from time to time. |
| ***Confirmation Order*** | means the order entered by the Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code. |
| ***Convenience Claim Amount*** | means $5,000. |
| ***Convenience Claims*** | means any Claim that would otherwise be a General Unsecured Claim that is Allowed in the Convenience Claim Amount or less, including a Claim that would otherwise be a General Unsecured Claim that would be Allowed in an amount greater than the Convenience Claim Amount but which is reduced to the Convenience Claim Amount or less by an irrevocable written election of the holder of such Claim delivered to the Debtors, provided, however, that, without the prior written consent of the Debtors (with the consent of the Restructuring Support Parties), any Claim that was originally Allowed in excess of the Convenience Claim Amount may not be subdivided into multiple Convenience Claims in the Convenience Claim Amount or less for purposes of receiving the treatment provided under this Plan to holders of Allowed Convenience Claims; provided further, however, that, in the event a holder of an Allowed General Unsecured Claim holds multiple Allowed General Unsecured Claims against the Debtors, such Allowed General Unsecured Claims shall |

|  | not be aggregated for purposes of determining whether each such Allowed General Unsecured Claim is a Convenience Claim. |
|---|---|
| ***Court*** | means, (a) the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases; (b) to the extent there is no reference pursuant to section 157 of title 28 of the United States Code, the United States District Court for the District of Delaware; and (c) any other court having jurisdiction over the Chapter 11 Cases or proceedings arising therein. |
| ***Creditors' Committee*** | means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Debtors' Chapter 11 Cases, as constituted from time to time. |
| ***Debtors*** | means Perkins & Marie Callender's Inc.; Perkins & Marie Callender's Holding Inc.; Perkins & Marie Callender's Realty LLC; Perkins Finance Corp.; Wilshire Restaurant Group LLC; PMCI Promotions LLC; Marie Callender Pie Shops, Inc.; Marie Callender Wholesalers, Inc.; MACAL Investors, Inc.; MCID, Inc.; Wilshire Beverage, Inc.; and FIV Corp. |
| ***Debtors in Possession*** | means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. |
| ***DIP Administrative Agent*** | means Wells Fargo Capital Finance, LLC, in its capacity as administrative agent under the DIP Credit Facility. |
| ***DIP Credit Agreement*** | means that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement, dated as of June 14, 2011, by and among PMC Holding, PMCI, the DIP Lenders and the DIP Administrative Agent, as amended from time to time. |
| ***DIP Credit Documents*** | means the "Loan Documents" under (and as defined in) the DIP Credit Agreement, including any and all guaranties and collateral documents executed and delivered in connection therewith. |
| ***DIP Credit Facility*** | means the credit facility established in favor of PMCI, as borrower, and as guaranteed by each of the other Debtors, pursuant to the DIP Credit Agreement and the other DIP Credit Documents. |

| | |
|---|---|
| **DIP Financing Claims** | means all Claims arising under or relating to the DIP Credit Facility, whether pursuant to the DIP Credit Agreement, any other DIP Credit Document, the Final DIP Order, or otherwise. |
| **DIP Lenders** | means the lenders, banks, other financial institutions or other non-Debtor entities that are or may become parties to the DIP Credit Agreement from time-to-time. |
| **Disbursing Agent** | means the Debtors or the Reorganized Debtors, or any Person designated by the Debtors (with the consent of the Restructuring Support Parties) or the Reorganized Debtors to serve as a disbursing agent, or to assist the Debtors or the Reorganized Debtors in the making of Distributions, under this Plan. |
| **Disclosure Statement** | means the written disclosure statement that relates to this Plan, as approved by the Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time. |
| **Disputed** | means, with reference to any Claim: (a) any Claim, (i) proof of which was not timely or properly filed and that has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, or (ii) for which a proof of claim was required, but as to which a proof of claim was not timely or properly filed; or (b) any Claim as to which the Debtors, the Reorganized Debtors, or any other party in interest has filed an objection or request for estimation on or before such limitation period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court, except to the extent that such objection or request for estimation is withdrawn or determined by a Final Order in favor of the holder of such Claim. |
| **Distributions** | means the distribution in accordance with this Plan of (a) Cash, (b) PMC Holding Membership Interests, (c) rights and obligations with respect to the New Secured Term Loans, or (d) other form of consideration, as the case may be. |
| **Effective Date** | means the first Business Day on which (i) all of the conditions specified in Article X.A. and Article X.B. of this Plan have been satisfied or waived in accordance with Article X.C. of this Plan, and (ii) the stay of the Confirmation Order, if any, is no longer in effect and such |

date shall be set forth in a notice filed with the Court by the Reorganized Debtors within five (5) Business Days of the occurrence of the Effective Date; provided, however, that if (i) and (ii) do not occur by the earlier of (a) October 21, 2011 and (b) seventeen (17) days from the entry of the Confirmation Order, then the Effective Date may not occur, unless such dates are extended by the Debtors with the consent of the Restructuring Support Parties.

**Equity Interest or Interest**    means any equity security within the meaning of section 101(16) of the Bankruptcy Code or any other instrument evidencing an ownership interest in any of the Debtors (or Reorganized Debtors, as applicable), whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire, sell or subscribe for any such interest.

**Estates**    means the Chapter 11 estates of the Debtors, individually or collectively, as is appropriate in the context created by the commencement of and in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

**Final DIP Order**    means the order entered by the Court on July 12, 2011 and appearing at Docket No. 211 in the Chapter 11 Cases, as it may be further amended from time to time, approving on a final basis the DIP Credit Facility.

**Final Order**    means an order or judgment of the Court, or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, vacated or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending.

**Finance**    means Perkins Finance Corp.

**First Lien Exit Facility**    means that certain exit facility, in an aggregate principal amount (including letters of credit) not to exceed $35 million, to be entered into by the Reorganized Debtors effective as of the Effective Date pursuant to a credit agreement substantially in the form set forth in the Plan Supplement and as shall be acceptable to the Debtors and the Restructuring Support Parties; with the obligations under such exit facility to be secured by a first priority lien

on and security interest in substantially all of the assets of the Reorganized Debtors.

**FIV**

means FIV Corp.

**General Unsecured Claim**

means a Claim against any of the Debtors that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Professional Fee Claim, DIP Financing Claim, Other Secured Claim, Senior Secured Notes Claim, Senior Notes Claim, Convenience Claim, Intercompany Claim, or Subordinated Claim, and shall include (a) pre-Petition Date Claims of vendors or customers of the Debtors that are not priority claims under section 503(b)(9) of the Bankruptcy Code, (b) Claims of employees of the Debtors that are not priority claims under section 507(a) of the Bankruptcy Code, (c) Claims arising as a result of the rejection by any of the Debtors of executory contracts or unexpired leases pursuant to section 365 of the Bankruptcy Code, and (d) Claims arising as a result of pre-Petition Date litigation against any of the Debtors.

**General Unsecured Claim Reserve**

has the meaning ascribed to it in Article VII.K.4 of this Plan.

**Governmental Unit**

has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**Impaired**

means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**Indemnification Obligation**

means any obligation of any of the Debtors to indemnify, reimburse, or provide contribution pursuant to charter, by-laws, contract, or otherwise.

**Insider**

has the meaning set forth in section 101(31) of the Bankruptcy Code.

**Intercompany Claims**

means any Claim held by one of the Debtors against any other Debtor, including (a) any account reflecting intercompany book entries by a Debtor with respect to any other Debtor, (b) any Claim not reflected in book entries that is held by such Debtor against any other Debtor or Debtors, and (c) any derivative Claim asserted or assertable by or on behalf of a Debtor against any other Debtor or Debtors.

| | |
|---|---|
| ***Lien*** | has the meaning set forth in section 101(37) of the Bankruptcy Code. |
| ***Litigation Rights*** | means the Causes of Action, claims, suits, or proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person (except to the extent such claims are expressly released under this Plan), which are to be retained by the Reorganized Debtors and identified in the Plan Supplement (which document shall be in form and substance acceptable to the Restructuring Support Parties). |
| ***MCID*** | means MCID, Inc. |
| ***MCPSI*** | means Marie Callender Pie Shops, Inc. |
| ***MACAL*** | means MACAL Investors, Inc. |
| ***Management Incentive Plan*** | means a certain post-Effective Date Management Incentive Plan to be adopted and implemented by the board of managers of Reorganized PMC Holding on or as soon as reasonably practicable after the Effective Date, and on such terms as such board of managers may determine, all in accordance with Article V.F. of this Plan. |
| ***Marie Callender's IP Sale*** | means the sale to ConAgra Foods RDM, Inc. which became effective June 9, 2011, of MCPSI's trademarks and domain names that were previously licensed to an affiliate of ConAgra Foods RDM, Inc. |
| ***New Certificates of Formation*** | means: (a) in the case of any Debtor that was a corporation prior to the Effective Date, a new certificate of formation (or certificate or articles of organization, as applicable) to be filed in such Debtor's state of incorporation in connection with the conversion of such Debtor into a limited liability company in accordance with this Plan, which shall be included (in substantially final form) in the Plan Supplement and shall be in form and substance acceptable to the Restructuring Support Parties; (b) in the case of any Debtor that was a limited liability company prior to the Effective Date, and unless clause (c) below applies, an amended, or amended and restated, certificate of formation (or certificate or articles of organization, as applicable) of such Debtor, which shall be included (in substantially final form) in the Plan Supplement and shall be in form and substance acceptable to the Restructuring Support Parties; and (c) in the case of any Debtor that was |

a limited liability company prior to the Effective Date and as to which the Restructuring Support Parties determine no amendment, or amendment and restatement, is necessary or desirable in respect of its existing certificate of formation (or certificate or articles of organization, as applicable), such existing certificate of articles.

*New Intercreditor Agreement*   means a certain intercreditor agreement to be entered into between the administrative agent (or collateral agent) under the First Lien Exit Facility and the New Secured Term Loan Agent in substantially the form set forth in the Plan Supplement, and otherwise to be in form and substance acceptable to the Debtors and the Restructuring Support Parties.

*New Secured Term Loan Agent*   means [****], in its capacity as administrative agent under the New Secured Term Loan Agreement, or such other party, in such capacity, as is acceptable to the Restructuring Support Parties.

*New Secured Term Loan Agreement*   means that certain new secured term loan agreement, to be dated as of the Effective Date, and to be substantially in the form set forth in the Plan Supplement, and to be consistent in all material respects with the terms and conditions contained in the term sheet attached to this Plan as Exhibit A hereto (and otherwise to be in form and substance acceptable to the Debtors and the Restructuring Support Parties).

*New Secured Term Loans*   means the new secured term loans to be made, on the Effective Date and under the New Secured Term Loan Agreement, to Reorganized PMCI, as borrower, and to be guaranteed by all of the other Reorganized Debtors, in an aggregate principal amount equal to the aggregate outstanding principal amount of the Senior Secured Notes (provided that the Debtors shall have the option to add accrued and unpaid interest at the applicable contract rate as of the Effective Date, if any to the principal amount of the Debtors' obligations under the New Secured Term Loans). The obligations under the New Secured Term Loan Agreement shall be secured by a second priority lien on and security interest in substantially all of the assets of the Reorganized Debtors.

*Ordinary Course Administrative Claims*   means Administrative Claims against the Debtors that represent liabilities (a) to sellers of goods or services for and on account of such seller's provision of goods and/or

| | |
|---|---|
| | services subsequent to the Petition Date through the Effective Date and (b) that were incurred in the ordinary course of business by the Debtors subsequent to the Petition Date through the Effective Date. |
| ***Other Priority Claim*** | means any Claim against any of the Debtors other than an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim or a DIP Financing Claim that is entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of Bankruptcy Code. |
| ***Other Secured Claims*** | means any Claim (other than the DIP Financing Claims, and the Senior Secured Notes Claims) to the extent reflected in the Schedules or a Proof of Claim filed as a secured Claim, which is (i) secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, (ii) in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff. |
| ***Person*** | means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other entity. |
| ***Petition Date*** | means June 13, 2011. |
| ***Plan*** | means this "Debtors' Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code", as it may be amended or modified from time to time, together with all addenda, exhibits, schedules or other attachments, if any. |
| ***Plan Supplement*** | means the compilation of documents and forms of documents, schedules, attachments and exhibits to this Plan, to be filed by the Debtors following the filing of this Plan as set forth herein, each of which documents and other materials shall be acceptable in form and substance to the Debtors to the extent this Plan otherwise provides that such documents and other materials must be acceptable to the Debtors and the Restructuring Support Parties, by no later than (A) ten (10) calendar days prior to the Confirmation Hearing or (B) such later date as may be approved by the Court on notice to parties in interest, as such Plan Supplement documents may be amended, modified, or |

supplemented from time to time with the consent of the Debtors, to the extent this Plan otherwise provides that such documents and other materials must be acceptable to the Debtors, and the Restructuring Support Parties and which shall include the following: (i) the credit agreement relating to the First Lien Exit Facility in substantially final form; (ii) the New Secured Term Loan Agreement in substantially final form; (iii) the New Intercreditor Agreement in substantially final form; (iv) the New Certificates of Formation in substantially final form; (v) the PMC Holding LLC Agreement in substantially final form; (vi) the Subsidiary LLC Agreements in substantially final form; (vii) a list of the initial post-Effective Date managers and officers of the Reorganized Debtors and information regarding the terms of their employment and compensation; (viii) a list of the Litigation Rights retained by the Reorganized Debtors; and (ix) the Schedule of Rejected Contracts and Leases.

**PMC Holding** means Perkins & Marie Callender's Holding Inc.

**PMC Holding LLC Agreement** means the limited liability company agreement of Reorganized PMC Holding (upon its conversion from a corporation into a limited liability company), dated as of the Effective Date, a substantially final form of which will be contained in the Plan Supplement, and the terms of which shall be acceptable to the Restructuring Support Parties.

**PMC Holding Membership Interests** means the Class A Membership Interests of Reorganized PMC Holding issued under this Plan and governed by the PMC Holding LLC Agreement (and including both economic and membership rights).

**PMCI** means Perkins & Marie Callender's Inc.

**PMC Realty** means Perkins & Marie Callender's Realty LLC.

**Prepayment Premium** means the prepayment premium due pursuant to section 3.07 of the Senior Secured Notes Indenture with respect to $28,937,000 in aggregate principal amount of Senior Secured Notes redeemed from the net proceeds of the Marie Callender's IP Sale.

**Prepayment Premium Waiver** means the waiver of the right of holders of Senior Secured Notes whose Senior Secured Notes were redeemed from proceeds of the Marie Callender's IP Sale to receive the

|  | Prepayment Premium, which waiver becomes effective on the Effective Date. |
|---|---|
| **Pre-Petition Administrative Agent** | means Wells Fargo Capital Finance LLC, in its capacity as administrative agent under the Pre-Petition Secured Credit Facility. |
| **Pre-Petition Secured Credit Facility** | means that certain Credit Agreement dated as of September 24, 2008, as amended from time to time, among PMCI, PMC Holding, the Pre-Petition Secured Credit Facility Lenders and the Pre-Petition Administrative Agent. |
| **Pre-Petition Secured Credit Facility Lenders** | means the lender parties under the Pre-Petition Secured Credit Facility. |
| **Priority Tax Claim** | means any unsecured Claim that is entitled to a priority in right of payment under section 507(a)(8) of the Bankruptcy Code. |
| **Professional** | means (i) any professional employed in the Chapter 11 Cases pursuant to sections 327 and 328 of the Bankruptcy Code or otherwise and (ii) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b) of the Bankruptcy Code but excluding professionals for (a) the Pre-Petition Administrative Agent, (b) the DIP Administrative Agent, (c) the Restructuring Support Parties, (d) the Senior Secured Notes Trustee, (e) the Senior Secured Notes Collateral Agent, and (f) the Senior Notes Trustee. |
| **Professional Fee Claims** | means an Administrative Claim Allowed under section 328, 330(a), 331 or 503 of the Bankruptcy Code for reasonable compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Cases on or prior to the Effective Date (including the reasonable, actual and necessary expenses of the members of the Creditors' Committee incurred as members of the Creditors' Committee in discharge of their duties as such), but specifically excluding the fees and expenses of professionals of (a) the Pre-Petition Administrative Agent, (b) the DIP Administrative Agent, (c) the Restructuring Support Parties, (d) the Senior Secured Notes Trustee, (e) the Senior Secured Notes Collateral Agent, and (f) the Senior Notes Trustee. |
| **Promotions** | means PMCI Promotions LLC. |

| | |
|---|---|
| ***Pro Rata*** | means the proportion that an allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class and in any other Class entitled to share in the same recovery as such Allowed Claim under this Plan. |
| ***Proof of Claim*** | means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases. |
| ***Record Date*** | means, (i) for purposes of making distributions under this Plan on account of Allowed Claims, the Confirmation Date, and (ii) for purposes of casting Ballots, the date set forth in the order approving the Disclosure Statement that accompanies this Plan. |
| ***Released Parties*** | means (i) the officers, directors, employees, legal, financial and tax advisors, and other representatives of the Debtors as of the Petition Date, in their capacity as such; (ii) all direct and indirect holders of Equity Interests in PMC Holding as of the Petition Date, in their capacity as such; (iii) the Restructuring Support Parties and their legal, financial and tax advisors, in their capacity as such; (iv) the Pre-Petition Administrative Agent, the arranger under the Pre-Petition Secured Credit Facility, the issuer of letters of credit under the Pre-Petition Secured Credit Facility, and the Pre-Petition Secured Credit Facility Lenders (and each of the foregoing parties' respective legal and financial advisors), in their respective capacities as such; (v) the Senior Secured Notes Trustee and the Senior Secured Notes Collateral Agent and their respective legal advisors, in their capacity as such; (vi) the Senior Notes Trustee and its legal advisors, in its capacity as such; and (vii) the DIP Administrative Agent, the arranger under the DIP Credit Facility, the issuer of letters of credit under the DIP Credit Facility, and the DIP Lenders (including each of the foregoing parties' respective legal and financial advisors), in their respective capacities as such. |
| ***Reorganized Debtor*** | means each of the Debtors, or any successors thereto by merger, consolidation, or otherwise, on and after the Effective Date; and includes any corporate Debtor converting into a limited liability company in accordance with this Plan. |

| | |
|---|---|
| **Reorganized PMC Holding** | means PMC Holding or any successor thereto by merger, consolidation or otherwise, on or after the Effective Date, including by its conversion into a limited liability company in accordance with this Plan. |
| **Reorganized PMCI** | means PMCI or any successor thereto by merger, consolidation or otherwise, on or after the Effective Date, including by its conversion into a limited liability company in accordance with this Plan. |
| **Reorganized Subsidiary Debtor** | means any Subsidiary Debtor, or any successor thereto by merger, consolidation or otherwise, on or after the Effective Date, including in the case of any corporate Subsidiary Debtor, by its conversion into a limited liability company in accordance with this Plan. |
| **Restructuring Support Agreement** | means that certain Restructuring Support Agreement dated as of June 6, 2011, between PMC Holding, on behalf of itself and the other Debtors parties thereto, and the Restructuring Support Parties. |
| **Restructuring Support Parties** | means the holders of one hundred percent (100%) in aggregate principal amount of the Senior Secured Notes and the holders of more than eighty percent (80%) in aggregate principal amount of Senior Notes on the Petition Date parties to the Restructuring Support Agreement. |
| **Schedule of Rejected Contracts and Leases** | means the schedule of executory contracts and unexpired leases to be rejected pursuant to this Plan to be filed in connection with the Plan Supplement, which schedule shall be in form and substance acceptable to the Debtors and the Restructuring Support Parties. |
| **Schedules** | means the schedules of assets and liabilities, statements of financial affairs, lists of holders of Claims and Equity Interests and related exhibits filed with the Court by each of the Debtors, including any amendments or supplements thereto. |
| **Senior Notes** | means the $190,000,000 in aggregate principal amount outstanding of 10% Senior Notes due October 1, 2013 issued by PMCI (f/k/a The Restaurant Company) pursuant to the Senior Notes Indenture. |
| **Senior Notes Claims** | means any Claim of a holder of Senior Notes based on the Senior Notes. |

| | |
|---|---|
| ***Senior Notes Indenture*** | means the Indenture dated as of September 21, 2005 among PMCI (f/k/a The Restaurant Company), the other Subsidiary Debtors parties thereto, and the Senior Notes Trustee, as amended, restated, supplemented or otherwise modified from time to time. |
| ***Senior Notes Trustee*** | means Wilmington Trust Company, as successor indenture trustee, for the Senior Notes. |
| ***Senior Secured Notes*** | means the $103,063,000 in aggregate principal amount outstanding of 14% Senior Secured Notes due May 31, 2013, issued by PMCI pursuant to the Senior Secured Notes Indenture. |
| ***Senior Secured Notes Claims*** | means any Claim of a holder of Senior Secured Notes based on the Senior Secured Notes. |
| ***Senior Secured Notes Collateral Agent*** | means The Bank of New York Mellon, as Collateral Agent for the Senior Secured Notes. |
| ***Senior Secured Notes Indenture*** | means the Indenture dated as of September 24, 2008 among PMCI, PMC Holding, the other Subsidiary Debtors party thereto, the Senior Secured Notes Trustee, and the Senior Secured Notes Collateral Agent, as amended, restated, supplemented or otherwise modified from time to time. |
| ***Senior Secured Notes Trustee*** | means The Bank of New York Mellon Trust Company, N.A., as indenture trustee for the Senior Secured Notes. |
| ***Subordinated Claims*** | means any Claim that is subordinated by Final Order of the Court pursuant to section 510(b) or 510(c) of the Bankruptcy Code. |
| ***Subsidiary Debtors*** | means PMCI and each of the other Debtors, excluding PMC Holding. |
| ***Subsidiary LLC Agreements*** | means: (a) in the case of any Subsidiary Debtor that was a corporation prior to the Effective Date, a new limited liability company agreement (or operating agreement or company agreement, as applicable), to be dated as of the Effective Date, and which shall be included (in substantially final form) in the Plan Supplement and shall be in form and substance acceptable to the Restructuring Support Parties; and (b) in the case of any Subsidiary Debtor that was a limited liability company prior to the Effective Date, an amended and restated limited liability company agreement (or operating agreement or company |

| | |
|---|---|
| | agreement, as applicable), to be dated as of the Effective Date, and which shall be included (in substantially final form) in the Plan Supplement and shall be in form and substance acceptable to the Restructuring Support Parties. |
| ***Subsidiary Membership Interests*** | means the limited liability company membership interests (including both economic and membership rights) in each of the Reorganized Subsidiary Debtors, which shall be governed by their respective Subsidiary LLC Agreements. |
| ***Unimpaired*** | means, when used with reference to a Claim or Interest, a Claim or Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code. |
| ***Wilshire*** | means Wilshire Restaurant Group LLC. |
| ***Wilshire Beverage*** | means Wilshire Beverage, Inc. |

### B.  Interpretation, Application of Definitions and Rules of Construction.

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter, such meanings to be applicable to both the singular and plural forms of the terms defined. Capitalized terms in this Plan that are not defined herein shall have the same meanings assigned to such terms by the Bankruptcy Code or Bankruptcy Rules, as the case may be. The words "herein," "hereof," and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section or subsection in this Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. Captions and headings to Articles, Sections and exhibits to this Plan are inserted for convenience of reference only, are not a part of this Plan, and shall not be used to interpret this Plan. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## II.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

### A.  General Rules of Classification.

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims and Interests.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Financing

Claims, as described below, have not been classified. These Claims will be Unimpaired and, therefore, will not be entitled to vote to accept or reject this Plan. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

As discussed in greater detail in Article VI hereof, this Plan is premised upon the limited consolidation of the Debtors for purposes of this Plan only and shall not affect the legal and corporate structures of the Debtors, subject to the rights of the Debtors to effectuate the restructuring transactions contemplated herein. Accordingly, for purposes of this Plan, the assets and liabilities of each of the Debtors are deemed assets and liabilities of a single, consolidated entity; provided, however, that if any Class of Impaired Claims votes to reject this Plan, the Debtors' ability to confirm this Plan with respect to such rejecting Class pursuant to the "cramdown" standards of section 1129(b) of the Bankruptcy Code will be determined by reference to the treatment to which the holders of Claims in such Class would be entitled were (i) their Claims limited to the specific Debtor(s) that are liable for such Claims, and (ii) the Debtors not treated as consolidated for distribution and confirmation purposes. This limited consolidation treatment is designed to consensually pool the assets and liabilities of the Debtors solely to implement the settlements and compromises reached by the primary constituencies in the Chapter 11 Cases.

**B.** **Classification of Claims and Interests.**

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired under this Plan, (ii) entitled to vote to accept or reject this Plan, and (iii) deemed to either accept or reject this Plan. A Claim or Interest is designated in a particular Class only to the extent it falls within the description of that Class, and is classified in any other Class to the extent (if any) that a portion of such Claim or Interest falls within the description of such other Class.

| Class | Designation | Status | Entitled to Vote |
|-------|-------------|--------|------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | Senior Secured Notes Claims | Impaired | Yes |
| 4 | Senior Notes Claims | Impaired | Yes |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | Convenience Claims | Unimpaired | No (deemed to accept) |
| 7 | Intercompany Claims | Unimpaired | No (deemed to accept) |
| 8 | Subordinated Claims | Impaired | No (deemed to reject) |
| 9A | Equity Interests in PMC Holding | Impaired | No (deemed to reject) |
| 9B | Equity Interests in the Subsidiary Debtors | Unimpaired | No (deemed to accept) |

# III.

## TREATMENT OF ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS AND DIP FINANCING CLAIMS

### A.     Administrative Claims.

Each holder of an Allowed Administrative Claim (other than Professional Fee Claims and DIP Financing Claims) shall receive from the Debtors (a) Cash in an amount equal to the amount of such Allowed Administrative Claim on the later of the (i) Effective Date and (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, or (b) such other treatment as the Debtors and such holder shall have agreed upon in writing; provided, however, that Allowed Ordinary Course Administrative Claims shall be paid in full in the ordinary course of business of the Reorganized Debtors consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions; provided, further, that in no event shall a post-Petition Date obligation that is contingent or disputed and subject to liquidation through pending or prospective litigation, including alleged obligations arising from personal injury, property damage, products liability, consumer complaints, employment law, secondary payor liability, or any other disputed legal or equitable claim based on tort, statute, contract, equity, or common law, be considered to be an obligation which is payable in the ordinary course of business.

### B.     Bar Date for Administrative Claims.

Unless a prior date has been established pursuant to the Bankruptcy Code, the Bankruptcy Rules or a prior order of the Court, the Confirmation Order will establish a bar date for filing notices, requests, Proofs of Claim, applications or motions for allowance of Administrative Claims (other than Professional Fee Claims, Ordinary Course Administrative Claims, DIP Financing Claims of the DIP Administrative Agent and the DIP Lenders, the post-Petition Date fees and expenses of the Restructuring Support Parties, the Senior Secured Notes Trustee, the Senior Secured Notes Collateral Agent and the Senior Notes Trustee), which date shall be the Administrative Claims Bar Date.  Holders of Administrative Claims not paid prior to the Confirmation Date shall file with the Court and serve upon the Debtors or Reorganized Debtors, as applicable, a motion requesting payment of such Administrative Claim on or before the Administrative Claims Bar Date or forever be barred from doing so. The notice of entry of the Confirmation Order to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set forth the Administrative Claims Bar Date and constitute good and sufficient notice of the Administrative Claims Bar Date. The Reorganized Debtors shall have thirty (30) days (or such longer period as may be allowed by Final Order of the Court, which may be entered without notice or a hearing) following the Administrative Claims Bar Date to review and object to all Administrative Claims (other than those listed in the parenthetical above).

### C.     Professional Fee Claims.

All requests for compensation or reimbursement of Professional Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services

rendered prior to the Effective Date shall be filed and served on the Reorganized Debtors, counsel to the Reorganized Debtors, the United States Trustee, counsel to the Restructuring Support Parties and counsel to the Creditors' Committee and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than thirty (30) days after the Effective Date. Holders of Professional Fee Claims that are required to file and serve applications for final allowance of their Professional Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors, the Reorganized Debtors or their respective properties, and such Professional Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Professional Fee Claims must be filed and served no later than twenty (20) days following the filing with the Court of any request for compensation or reimbursement of Professional Fee Claims. Objections must be served on the Reorganized Debtors, counsel for the Reorganized Debtors, counsel to the Restructuring Support Parties, counsel to the Creditors' Committee and the holders of Professional Fee Claims requesting payment no later than fifty (50) days after the Effective Date.

### D. Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors (with the consent of the Restructuring Support Parties) or the Reorganized Debtors, (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of (i) the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (b) treatment in any other manner such that its Allowed Priority Tax Claim shall not be Impaired, including equal annual installment payments in Cash of an aggregate value, as of the Effective Date, equal to the Allowed amount of such Claim, over a period ending not later than five (5) years after the Petition Date.

### E. DIP Financing Claims.

The DIP Financing Claims shall be allowed in an amount equal to the sum of all amounts outstanding under the DIP Credit Agreement as of the Effective Date. On or as soon as reasonably practicable after the Effective Date, each holder of an Allowed DIP Financing Claim shall receive payment in full in Cash of all debts, Claims, liabilities and obligations calculated in accordance with the DIP Credit Agreement, except to the extent that the holders of DIP Financing Claims agree to a different treatment.

# IV.

## TREATMENT OF CLASSIFIED CLAIMS AND
## EQUITY INTERESTS

### A.     Class 1 — Other Priority Claims.

    1.     **Classification.** Class 1 consists of all Other Priority Claims.

    2.     **Treatment.** Except to the extent that a holder of an Allowed Other Priority Claim (i) has been paid in full by the Debtors, prior to the Effective Date or (ii) agrees to a less favorable treatment with the Debtors (with the consent of the Restructuring Support Parties, if the Claim is greater than $25,000) or the Reorganized Debtors, each holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of and in exchange for such Other Priority Claim, Cash in the full amount of such Allowed Other Priority Claim, on or as soon as practicable after the later of (a) the Effective Date and (b) the date when such Other Priority Claim becomes Allowed.

    3.     **Impairment and Voting.** Class 1 is Unimpaired under this Plan. Holders of Allowed Other Priority Claims in Class 1 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

### B.     Class 2 — Other Secured Claims.

    1.     **Classification.** Class 2 consists of all Other Secured Claims.

    2.     **Treatment.**

    Except to the extent that a holder of an Allowed Other Secured Claim shall have agreed in writing to a less favorable treatment, at the option of the Debtors (with the consent of the Restructuring Support Parties) or the Reorganized Debtors, in full and final satisfaction of such Claim, (i) such holder's Allowed Other Secured Claim shall be reinstated and Unimpaired in accordance with section 1124(2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Allowed Other Secured Claim to demand or receive payment of such Allowed Other Secured Claim prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of a default, (ii) such holder of an Allowed Other Secured Claim shall receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code or (iii) such holder of an Allowed Other Secured Claim shall receive the Collateral securing its Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on or as soon as practicable after the later of (a) the Effective Date and (b) the date when such Other Secured Claim becomes Allowed.

Notwithstanding the foregoing, to the extent any Allowed Other Secured Claim arises on account of property taxes, such Allowed Other Secured Claim shall be treated as a Priority Tax Claim, and any applicable Liens shall remain Unimpaired until such Allowed Other Secured Claim is paid in full. Any applicable interest in respect of such Allowed Other Secured Claim shall be calculated in a manner consistent with section 511 of the Bankruptcy Code.

3. **Impairment and Voting.** Class 2 is Unimpaired under this Plan. Holders of Allowed Other Secured Claims in Class 2 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

### C. <u>Class 3 — Senior Secured Notes Claims.</u>

1. **Classification.** Class 3 consists of all Senior Secured Notes Claims.

2. **Allowance.** The Senior Secured Notes Claims shall be Allowed and deemed to be Allowed in the amount of (i) $103,063,000 on account of the aggregate outstanding principal amount of the Senior Secured Notes plus (ii) accrued and unpaid interest thereon at the applicable contract rate, if any, as of the Effective Date.

3. **Treatment.** On or as soon as reasonably practicable after the Effective Date, the Senior Secured Notes shall be cancelled and, in full and final satisfaction of and in exchange for all Allowed Senior Secured Notes Claims, each holder of Senior Secured Notes shall receive its Pro Rata share of the rights and obligations in respect of the New Secured Term Loans. The vote by the holders of the Senior Secured Notes to accept this Plan shall constitute such holders' consent to the Prepayment Premium Waiver; <u>provided</u>, <u>however</u>, that the Prepayment Premium Waiver shall be deemed null and void if the Effective Date of this Plan does not occur.

4. **Impairment and Voting.** Class 3 is Impaired under this Plan. Holders of Allowed Senior Secured Notes Claims in Class 3 are entitled to vote to accept or reject this Plan.

### D. <u>Class 4 — Senior Notes Claims.</u>

1. **Classification.** Class 4 consists of all Senior Notes Claims.

2. **Allowance.** The Senior Notes Claims shall be Allowed and deemed to be Allowed in the amount of (i) $190,000,000 on account of the aggregate outstanding principal amount of the Senior Notes plus (ii) accrued and unpaid interest thereon at the applicable contract rate from October 1, 2010 to the Petition Date.

3. **Treatment.** On or as soon as reasonably practicable after the Effective Date, the Senior Notes shall be cancelled, and, in full and final satisfaction of and in exchange for all Allowed Senior Notes Claims, each holder of an Allowed Senior Notes Claim shall receive its Pro Rata percentage of the PMC Holding Membership Interests (subject to dilution on account of PMC Holding Membership Interests or other similar Interests, if any, that

may be issued from time to time pursuant to the Management Incentive Plan), with such Pro Rata percentage determined by dividing the Allowed amount of such holder's Senior Notes Claim by the total aggregate amount of all Allowed Senior Notes Claims and Allowed General Unsecured Claims that receive PMC Holding Membership Interests under this Plan.

        4.      **Impairment and Voting.**  Class 4 is Impaired under this Plan. Holders of Allowed Senior Notes Claims in Class 4 are entitled to vote to accept or reject this Plan.

        **E.**        <u>**Class 5 — General Unsecured Claims.**</u>

        1.      **Classification.**  Class 5 consists of all General Unsecured Claims.

        2.      **Treatment.**  On or as soon as reasonably practicable after the Effective Date, in full and final satisfaction of and in exchange for all Allowed General Unsecured Claims, each holder of an Allowed General Unsecured Claim shall receive its Pro Rata percentage of the PMC Holding Membership Interests (subject to dilution on account of PMC Holding Membership Interests or other similar Interests, if any, that may be issued from time to time pursuant to the Management Incentive Plan), with such Pro Rata percentage determined by dividing the Allowed amount of such holder's General Unsecured Claim by the total aggregate amount of all Allowed Senior Notes Claims and Allowed General Unsecured Claims that receive PMC Holding Membership Interests under this Plan.

If such holder's Allowed General Unsecured Claim is an amount less than $500,000, such holder may elect on its Ballot to receive (in lieu of such Pro Rata percentage of PMC Holding Membership Interests) Cash in an amount equal to the lesser of (i) 10% of the holder's Allowed General Unsecured Claim or (ii) such holder's Pro Rata share of the Cash Election Cap Amount. If such holder's General Unsecured Claim is Allowed in the amount of $500,000 or more, such holder may irrevocably elect to reduce that Claim to an amount less than $500,000 and thereby be eligible to make the Cash Election in respect of that reduced Claim. However, unless the Debtors and the Restructuring Support Parties otherwise agree in writing, any General Unsecured Claim that is Allowed in the amount of $500,000 or more may not be subdivided into multiple General Unsecured Claims for the purpose of determining whether the Cash Election applies to any one or more of those subdivided Claims. Nevertheless, in the event a holder of an Allowed General Unsecured Claim holds multiple Allowed General Unsecured Claims against the Debtors, such Allowed General Unsecured Claims shall not be aggregated for purposes of determining whether the Cash Election applies to each such Allowed General Unsecured Claim.

        3.      **Impairment and Voting.**  Class 5 is Impaired under this Plan. Holders of Allowed General Unsecured Claims in Class 5 are entitled to vote to accept or reject this Plan.

**F.**     **Class 6 — Convenience Claims.**

      1.     **Classification.**  Class 6 consists of all Convenience Claims.

      2.     **Treatment.**  Each holder of an Allowed Convenience Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such holder's Allowed Convenience Claim as soon as practicable after the later of (a) the Effective Date and (b) the date such Convenience Claim becomes Allowed.

      3.     **Impairment and Voting.**  Class 6 Claims are Unimpaired under this Plan.  Holders of Allowed Convenience Claims in Class 6 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

**G.**     **Class 7 — Intercompany Claims.**

      1.     **Classification.**  Class 7 consists of all Intercompany Claims.

      2.     **Treatment.**  On or as soon as reasonably practicable after the Effective Date, at the option of the Debtors (with the consent of the Restructuring Support Parties) or the Reorganized Debtors, each Allowed Intercompany Claim shall be either (i) reinstated and continued in full or in part, or (ii) eliminated in full or in part by offset, distribution, cancellation, assumption or contribution of such Intercompany Claim or otherwise to the extent determined by the applicable Debtor(s), subject to the consent of the Restructuring Support Parties or by the Reorganized Debtor(s).

      3.     **Impairment and Voting.**  Class 7 is Unimpaired under this Plan. Holders of Allowed Intercompany Claims in Class 7 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

**H.**     **Class 8 — Subordinated Claims.**

      1.     **Classification.**  Class 8 consists of all Subordinated Claims.

      2.     **Treatment.**  The holders of Subordinated Claims shall neither receive Distributions nor retain any property under this Plan for or on account of such Subordinated Claims.

      3.     **Impairment and Voting.**  Class 8 is Impaired under this Plan. Holders of Subordinated Claims are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

**I.**     **Class 9A — Equity Interests in PMC Holding.**

      1.     **Classification.**  Class 9A consists of all Equity Interests in PMC Holding.

2.    **Treatment.**  The holders of Equity Interests in PMC Holding shall neither receive any Distributions nor retain any property under this Plan for or on account of such Equity Interests.

3.    **Impairment and Voting.**  Class 9A is Impaired under this Plan. Holders of Equity Interests of PMC Holding are presumed and deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

## J.    Class 9B — Equity Interests in the Subsidiary Debtors.

1.    **Classification.**  Class 9B consists of all Equity Interests in the Subsidiary Debtors.

2.    **Distributions.**  On the Effective Date, the Equity Interests in the Subsidiary Debtors (as Reorganized Subsidiary Debtors) shall remain effective and outstanding (in the form of Subsidiary Membership Interests), and shall be owned and held by the same applicable Debtor (as a Reorganized Debtor) that had held and/or owned such Equity Interests prior to the Effective Date; provided, that, to the extent that a Reorganized Debtor had been a corporation prior to its conversion into a limited liability company on the Effective Date in accordance with this Plan, the corporate stock held in such Debtor automatically upon such conversion is converted into a Subsidiary Membership Interest in such Reorganized Debtor.

3.    **Impairment and Voting.**  Class 9B is Unimpaired under this Plan. Holders of Equity Interests in the Subsidiary Debtors are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

## V.

## PROVISIONS REGARDING CORPORATE GOVERNANCE OF
## THE REORGANIZED DEBTORS

### A.    Amendments to Corporate Formation and Governance Documents.

#### 1.    Reorganized PMC Holding.

On the Effective Date, PMC Holding shall convert to a Delaware limited liability company which shall be governed by the New Certificate of Formation of Reorganized PMC Holding, and by the PMC Holding LLC Agreement, which PMC Holding LLC Agreement shall, among other things, (i) authorize the issuance of PMC Holding Membership Interests, (ii) prohibit the issuance of nonvoting equity interests, only so long as, and to the extent that, the issuance of nonvoting securities is prohibited, and (iii) will subject holders of PMC Holding Membership Interests to mandatory capital call obligations.  The New Certificate of Formation of Reorganized PMC Holding, and the PMC Holding LLC Agreement, shall be substantially in the form set forth in the Plan Supplement.

## 2.   **Reorganized Subsidiary Debtors.**

On the Effective Date, each of the Reorganized Subsidiary Debtors that was not a limited liability company prior thereto shall convert to a limited liability company in its respective state of incorporation, and thereupon shall be governed by its respective New Certificate of Formation and by its respective Subsidiary LLC Agreement.  On the Effective Date, each other Reorganized Subsidiary Debtor shall be governed by its respective New Certificate of Formation and by its respective Subsidiary LLC Agreement.  Each of such Subsidiary LLC Agreements shall, among other things, (i) authorize the issuance of Subsidiary Membership Interests, and (ii) prohibit the issuance of nonvoting equity interests, only so long as, and to the extent that, the issuance of nonvoting securities is prohibited.  The New Certificates of Formation of the Reorganized Subsidiary Debtors, and their respective Subsidiary LLC Agreements, shall be substantially in the form set forth in the Plan Supplement.

## 3.   **Securities to Be Issued Pursuant to this Plan.**

On the Effective Date, Reorganized PMC Holding shall issue the PMC Holding Membership Interests, the principal terms of which are described in the PMC Holding LLC Agreement.

## B.   **New Certificates of Formation.**

On or immediately before the Effective Date, the Debtors, on behalf of the Reorganized Debtors, or the Reorganized Debtors will file their respective New Certificates of Formation (including, in the case of any Debtor being converted into a limited liability company, all other related conversion filings) with the applicable Secretaries of State and/or other applicable authorities in their respective states of formation in accordance with the limited liability company and corporate laws of the respective states of formation.  After the Effective Date, the Reorganized Debtors may amend, or amend and restate, their New Certificates of Formation and other constituent documents as permitted by the laws of their respective states of formation and their respective New Certificates of Formation and Subsidiary LLC Agreements (the PMC Holding LLC Agreement, in the case of Reorganized PMC Holding).

## C.   **Appointment of Officers and Managers.**

Reorganized PMC Holding shall be a manager-managed limited liability company.  The initial board of managers of Reorganized PMC Holding shall be a five-member board comprised of five (5) managers designated by the Restructuring Support Parties, one of whom shall be the Chief Executive Officer of Reorganized PMC Holding. The initial officers of Reorganized PMC Holding shall be designated by the Restructuring Support Parties.

Reorganized PMCI and each other Reorganized Subsidiary Debtor shall be a manager-managed limited liability company.  The initial boards of managers of each of the Reorganized Subsidiary Debtors shall have the same membership and composition as the board of managers for Reorganized PMC Holding or such other membership or composition as determined by the board of managers of Reorganized PMC Holding.  The initial officers of each of the Reorganized Subsidiary Debtors shall be determined in accordance with Article V.E. of this Plan.

The identities, affiliations and other information relating to the initial board members and initial officers of each Reorganized Debtor will be disclosed in the Plan Supplement and shall be acceptable to the Restructuring Support Parties. No individual shall be designated as a manager or officer who has not consented to serve in such respective capacity. Any successors to the Reorganized Debtors' initial boards of managers, and officers, will be appointed in compliance with the applicable Reorganized Debtor's governance documents. Each member of the boards of directors or boards of managers of the Debtors shall be deemed to have resigned on and as of the Effective Date, in each case without further notice to or order of the Court, act, or action under applicable law, resolution, order or rule of the vote, consent, or authority of any Debtor.

### D.     Powers of Officers.

The officers of the Debtors (with the consent of the Restructuring Support Parties) or the Reorganized Debtors, as applicable, shall have the power to (i) enter into, execute or deliver any documents or agreements that may be necessary and appropriate to implement and effectuate the terms of this Plan, and (ii) take any and all other actions that may be necessary and appropriate to effectuate the terms of this Plan, including the making of appropriate filings, applications or recordings, provided that such documents and agreements are in form and substance acceptable to the Restructuring Support Parties.

### E.     Management of Reorganized Debtors.

Subject to the consent of the Restructuring Support Parties, (i) the initial officers of the Reorganized Debtors shall be substantially the same as the officers of the Debtors on the Effective Date (except as provided in Article V.C. of this Plan, in the case of officers of Reorganized PMC Holding), and (ii) such officers shall serve in accordance with any employment agreement previously in effect with the Debtor or to be entered into with the Reorganized Debtors as well as in accordance with applicable nonbankruptcy law. The Debtors will disclose the terms of such employment agreements in the Plan Supplement.

### F.     Management Incentive Plan.

As soon as reasonably practicable after the Effective Date, the board of managers of Reorganized PMC Holding will adopt and implement the Management Incentive Plan, which may provide for the issuance of Cash and equity incentive awards. Specific awards shall be as determined by the board of managers of Reorganized PMC Holding (or, if applicable, a compensation committee established by such board of managers) from time to time. Issuances of PMC Holding Membership Interests (or other types of equity interests, if any) made under the Management Incentive Plan will dilute the interests of the holders of PMC Holding Membership Interests issued by Reorganized PMC Holding; provided, however, that no more than ten percent (10%) of PMC Holding Membership Interests or similar equity interests will be issued in the aggregate pursuant to the Management Incentive Plan. In connection with any such issuances (or exercises, in the case of options and warrants), the Reorganized Debtors may take whatever actions they may determine to be necessary or appropriate to comply with applicable federal, state, local and international tax withholding obligations (including withholding from

distributions a portion of the PMC Holding Membership Interests and selling such securities to satisfy tax withholding obligations including income, social security and Medicare taxes).

### G. PMC Holding LLC Agreement.

On the Effective Date, the PMC Holding LLC Agreement will be adopted by Reorganized PMC Holding and will be binding upon all holders of Reorganized PMC Holding Membership Interests, and their respective successors and assigns, in each case, whether or not any such holder (or successor or assign) shall have executed and delivered a counterpart to the PMC Holding LLC Agreement agreeing to be bound thereby, and also whether or not any certificate evidencing the PMC Holding Membership Interests (or, if interests are uncertificated, any ledger or book entry) shall have been legended to reflect the existence of the PMC Holding LLC Agreement. The PMC Holding LLC Agreement will, among other things, (i) govern the access that each holder of PMC Holding Membership Interests will have to information with respect to Reorganized PMC Holding, (ii) govern the ability to transfer such holder's PMC Holding Membership Interests, (iii) provide for a right of first refusal for significant holders of the PMC Holding Membership Interests, (iv) provide for customary drag-along and tag-along rights, (v) subject holders of Reorganized PMC Holding Membership Interests to mandatory capital call obligations, and (vi) unless and until the board of managers of Reorganized PMC Holding shall determine otherwise in accordance with the PMC Holding LLC Agreement, PMC Holding Membership Interests will be uncertificated.  The PMC Holding LLC Agreement will take effect on the Effective Date.  Notwithstanding the foregoing, all holders of Senior Notes Claims and General Unsecured Claims that are to receive PMC Holding Membership Interests pursuant to this Plan shall be required to execute a counterpart signature page (or comparable joinder), in the discretion of the board of managers of Reorganized PMC Holding, as a condition precedent to receiving their respective allocation of PMC Holding Membership Interests; and the failure of any such holder to deliver such executed counterpart (or joinder) within the time frame specified in Article VII.B. of this Plan shall have the effects set forth in that Article VII.B.

### H. Corporate Reorganization.

Except as otherwise set forth herein, or as modified by appropriate corporate or limited liability company action after the Effective Date, the corporate structure and equity ownership of the Debtors shall be unchanged.

## VI.

## LIMITED CONSOLIDATION FOR VOTING, CONFIRMATION, AND DISTRIBUTION PURPOSES

Solely for purposes of voting on, confirmation of, and Distributions to be made to holders of Allowed Claims under this Plan, this Plan is predicated upon, and it is a condition precedent to confirmation of this Plan, that the Court provide in the Confirmation Order for the limited consolidation of the Estates of the Debtors into a single Estate for purposes of this Plan, the confirmation hereof and Distributions hereunder.

Pursuant to the Confirmation Order (i) all assets and liabilities of the consolidated Debtors will be deemed to be merged solely for purposes of this Plan, the confirmation hereof and Distributions to be made hereunder, (ii) the obligations of each Debtor will be deemed to be the obligation of the consolidated Debtors solely for purposes of this Plan, the confirmation hereof and Distributions hereunder, (iii) any Claims filed or to be filed in connection with any such obligations will be deemed Claims against the consolidated Debtors, (iv) each Claim filed in the Chapter 11 Case of any Debtor will be deemed filed against the Debtors in the consolidated Chapter 11 Cases in accordance with the limited consolidation of the assets and liabilities of the Debtors, (v) all transfers, disbursements and Distributions made by any Debtor hereunder will be deemed to be made by the consolidated Debtors, and (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors. Holders of Allowed Claims in each Class shall be entitled to their share of assets available for Distribution to such Class without regard to which Debtor was originally liable for such Claim. Intercompany Claims shall be treated as provided in Class 7 of this Plan and Interests in the Subsidiary Debtors shall be treated as provided in Class 9B of this Plan.

Notwithstanding the foregoing, such limited consolidation shall not affect (a) the legal and corporate structure of the Reorganized Debtors, (b) any obligations under any contracts or leases that were entered into during the Chapter 11 Cases or executory contracts or unexpired leases that have been or will be assumed pursuant to this Plan, (c) distributions from any insurance policies or proceeds of such policies, (d) the revesting of assets in the separate Reorganized Debtors pursuant to Article IX.B of this Plan, or (e) guarantees that are required to be maintained post-Effective Date (i) in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been, or will hereunder be, assumed, (ii) pursuant to the express terms of this Plan, (iii) in connection with the First Lien Exit Facility, or (iv) in connection with the New Secured Term Loans. The limited consolidation proposed herein shall not affect each Debtor's obligation to file the necessary operating reports and pay any required fees pursuant to 28 U.S.C. § 1930(a)(6). Such obligations shall continue until a Final Order is entered closing, dismissing or converting each such Debtor's Chapter 11 Case.

## VII.

## PROVISIONS REGARDING MEANS OF IMPLEMENTATION, VOTING, DISTRIBUTIONS, AND RESOLUTION OF DISPUTED CLAIMS

### A.    <u>First Lien Exit Facility</u>.

On the Effective Date, the Reorganized Debtors shall enter into the First Lien Exit Facility. The amounts borrowed under the First Lien Exit Facility shall be used to make required Distributions under this Plan, satisfy certain Plan-related expenses and fund the Reorganized Debtors' working capital needs. The terms and conditions of the First Lien Exit Facility shall be substantially in the form set forth in the Plan Supplement.

## B.    Issuance of PMC Holding Membership Interests.

The issuance of PMC Holding Membership Interests (including any New PMC Holding Membership Interests, options or other equity awards reserved for the Management Incentive Plan) by Reorganized PMC Holding is authorized without the need for any further corporate action (except in the case of the Management Incentive Plan, which must be adopted by the board of managers of Reorganized PMC Holding; and issuances under which shall be as determined from time to time by the board of managers of Reorganized PMC Holding or by any compensation committee thereof) or without any further action by a holder of Claims or Interests. On the Effective Date (or as soon as reasonably practicable thereafter), the PMC Holding Membership Interests shall be issued, subject to the provisions of this Plan, to the Senior Notes Trustee, for the benefit of holders of Senior Notes Claims, and to the holders of Allowed General Unsecured Claims who have not made the Cash Election, respectively. The amount of the PMC Holding Membership Interests, if any, to be issued pursuant to this Plan shall be disclosed in the Plan Supplement.

All of the PMC Holding Membership Interests issued pursuant to this Plan shall be duly authorized and validly issued, and shall be subject to mandatory capital call obligations . Each Distribution and issuance referred to in this Article VII shall be governed by the terms and conditions set forth herein applicable to such Distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such Distribution or issuance, including the PMC Holding LLC Agreement, which terms and conditions shall bind each Person receiving such Distribution or issuance.  Unless and until changed by the board of managers of Reorganized PMC Holding in accordance with the PMC Holding LLC Agreement, PMC Holding Membership Interests shall be uncertificated.

Upon the Effective Date, the PMC Holding LLC Agreement shall be deemed to become valid, binding and enforceable in accordance with its terms, and each holder of PMC Holding Membership Interests shall be bound thereby, in each case, without need for execution by any party thereto other than Reorganized PMC Holding; provided, however, any holder of Senior Notes Claims or Allowed General Unsecured Claims that fails to register its PMC Holding Membership Interests with the Reorganized Debtors or such transfer agent as may be designated by the Debtors (with the consent of the Restructuring Support Parties), and execute a counterpart signature page (or other joinder, approved by the board of managers of Reorganized PMC Holding) to the PMC Holding LLC Agreement, and to provide applicable information required to be collected by the Internal Revenue Service in respect of pass-through entities, by the later of (i) the 6 month anniversary of the Effective Date or (ii) 60 days after the allowance by Final Order of such holder's General Unsecured Claim, shall be deemed to have forever forfeited its right to receive PMC Holding Membership Interests on account of its Claim.

## C.    New Secured Term Loans.

The incurrence of obligations under the New Secured Term Loans by the Reorganized Debtors is authorized without the need for any further corporate action or without any further action by a holder of Claims or Interests.  On the Effective Date, and subsequent to the issuance of PMC Holding Membership Interests, the Reorganized Debtors, the New Secured

Term Loan Agent and holders of the Senior Secured Notes Claims shall be deemed to have executed the New Secured Term Loan Agreement and shall be bound by the terms thereof.

Upon the Effective Date, the New Intercreditor Agreement shall be deemed to become valid, binding and enforceable in accordance with its terms, and each lender and agent under the New Secured Term Loan Agreement and the First Lien Exit Facility shall be bound thereby.

### D. Restructuring Transactions.

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, including: (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion (including related formation), disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of this Plan and having other terms to which the applicable parties may agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion (including related formation) or dissolution pursuant to applicable state law; and (iv) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

### E. Corporate Action.

Upon the Effective Date, all corporate actions contemplated by this Plan shall be deemed authorized and approved in all respects, including (i) the transactions contemplated by Article VII.D. hereof, (ii) the adoption of the PMC Holding LLC Agreement and the Subsidiary LLC Agreements, (iii) the conversion of each of the Reorganized Debtors that is not a limited liability company to a limited liability company, (iv) the filing of New Certificates of Formation, (v) the initial selection of managers and officers for the Reorganized Debtors, (vi) the Distribution of PMC Holding Membership Interests, New Secured Term Loans and Cash pursuant to this Plan, (vii) the execution and entry into the New Secured Term Loan Agreement, (viii) the execution and entry into the First Lien Exit Facility, and (ix) all other actions contemplated by this Plan (whether to occur before, on, or after the Effective Date), in each case unless otherwise provided in this Plan. All matters provided for under this Plan involving the corporate structure of the Debtors and Reorganized Debtors or corporate action to be taken by or required of a Debtor or a Reorganized Debtor will be deemed to occur and be effective as of the Effective Date, if no such other date is specified in such documents, and shall be authorized, approved, adopted and, to the extent taken prior to the Effective Date, ratified and confirmed in all respects and for all purposes without any requirement of further action by holders of Claims or Interests, directors or managers of the Debtors or the Reorganized Debtors, as applicable, or any other Person, except for applicable filings necessary to convert corporate Debtors into

limited liability companies, and to effect the filing of the New Certificates of Formation respecting the Debtors.

## F. Effectuating Documents; Further Transactions.

On and after the Effective Date, the Reorganized Debtors and the officers and members of the boards of managers thereof, are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan and the securities issued pursuant to this Plan in the name of and on behalf of the Reorganized Debtors, without need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan and applicable non-bankruptcy law.

## G. Cancellation of Securities and Agreements.

On the Effective Date, except as otherwise specifically provided for in this Plan: (1) the obligations of the Debtors under the Pre-Petition Secured Credit Facility, the Senior Secured Notes Indenture, the Senior Notes Indenture and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to this Plan), shall be cancelled solely as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the membership interests, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to this Plan) shall be released and discharged; provided, however, notwithstanding confirmation of this Plan or the occurrence of the Effective Date, any agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of allowing holders to receive Distributions under this Plan as provided herein; provided, further, notwithstanding confirmation of this Plan or the occurrence of the Effective Date, the Senior Secured Notes Indenture and the Senior Notes Indenture shall continue in effect solely for the purposes of: (1) allowing holders of the Senior Secured Notes Claims and the Senior Notes Claims to receive Distributions under this Plan; and (2) allowing and preserving the rights of the Senior Secured Notes Trustee and the Senior Notes Trustee to (a) make Distributions in satisfaction of the applicable Senior Secured Notes Claims and Senior Notes Claims, (b) exercise its charging lien against any such Distributions, and (c) seek compensation and reimbursement for any fees and expenses incurred in making Distributions; provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, the Confirmation Order or this Plan, or result in any expense or liability to the Reorganized Debtors.

**H.**     <u>Voting of Claims.</u>

Each holder of an Allowed Claim in an Impaired Class of Claims shall be entitled to vote to accept or reject this Plan as provided in such Final Order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan, or any other order or orders of the Court.

**I.**     <u>Nonconsensual Confirmation.</u>

If less than all Impaired Classes accept this Plan, but at least one (1) Class of Claims Impaired under this Plan has accepted this Plan (and which Class's acceptance is determined without inclusion of Claims of Insiders), the Debtors may seek to have the Court confirm this Plan under section 1129(b) of the Bankruptcy Code.

**J.**     <u>Distributions in Respect of Allowed Claims.</u>

(a)     *Record Date for Distributions*. As of the close of business on the Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims or Equity Interests occurring on or after the Record Date. The Debtors and the Reorganized Debtors shall have no obligation to recognize any transfer of any Claims or Equity Interests occurring after the Record Date.

(b)     *Date of Distributions.* Except as otherwise provided herein, Distributions and deliveries under this Plan with respect to Allowed Claims shall be made before the close of business on or as soon as reasonably practicable after the Effective Date. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

(c)     *Disbursing Agent*. Except as otherwise provided herein, all Distributions under this Plan shall be made by the Reorganized Debtors as Disbursing Agent or such other entity (as defined in section 101(15) of the Bankruptcy Code) designated by the Reorganized Debtors to assist the Disbursing Agent on the Effective Date. If the Disbursing Agent is an independent third party designated by the Reorganized Debtors to serve in such capacity, such Disbursing Agent shall receive, without further Court approval, reasonable compensation for distribution services rendered pursuant to this Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtors on terms acceptable to the Reorganized Debtors. No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Court. If otherwise so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

(d)     *Powers of Disbursing Agent.* The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder, (ii) make all Distributions contemplated hereby, and

(iii) exercise such other powers as may be vested in the Disbursing Agent by Final Order of the Court or pursuant to this Plan.

(e)     *Delivery of Distributions*.

Except as otherwise provided herein, the Disbursing Agent shall make Distributions to holders of Allowed Claims at the address for each holder indicated on the Debtors' records as of the date of any such Distribution unless such addresses are superseded by Proofs of Claim or transfers of Claim filed pursuant to Bankruptcy Rule 3001 by the Record Date.  If any Distribution to a holder of a Claim is returned as undeliverable, no further Distributions shall be made unless and until the Disbursing Agent is notified of the then-current address of such holder of the Claim, at which time all missed distributions shall be made to such holder of the Claim without interest.  Amounts in respect of undeliverable distributions shall be returned to the Reorganized Debtors until such Distributions are claimed.  The Reorganized Debtors shall make reasonable efforts to locate holders of undeliverable Distributions.

Except as otherwise provided herein, all Distributions to holders of DIP Financing Claims shall be governed by the DIP Credit Facility, and shall be deemed completed when made to the DIP Administrative Agent, who shall in turn make distributions in accordance with the DIP Credit Facility, for further Distribution to the holders of DIP Financing Claims.

Except as otherwise provided herein, all Distributions to holders of Senior Secured Notes Claims and Senior Notes Claims shall be governed by the Senior Secured Notes Indenture and the Senior Notes Indenture, respectively, and shall be deemed completed when made to the Senior Secured Notes Trustee and the Senior Notes Trustee, respectively, who shall in turn make Distributions in accordance with the Senior Secured Notes Indenture and Senior Notes Indenture, as applicable, for further distribution to holders of Senior Secured Notes Claims and Senior Notes Claims.

(f)     *Distribution of Cash*.  Any payment of Cash by the Reorganized Debtors pursuant to this Plan shall be made at the option and in the sole discretion of the Reorganized Debtors by (i) a check drawn on, or (ii) wire transfer from, a U.S. domestic bank selected by the Reorganized Debtors.

(g)     *Unclaimed Distributions*.  Any Distribution under this Plan that is unclaimed six (6) months after the Disbursing Agent has delivered (or has attempted to deliver) such Distribution shall become the property of the Reorganized Debtor against which such Claim was Allowed notwithstanding any federal or state escheat, abandoned or unclaimed property laws to the contrary, and the entitlement by the holder of such unclaimed Allowed Claim to such Distribution or any subsequent Distribution on account of such Allowed Claim shall be discharged and forever barred.  In the case of any unclaimed Distributions of New PMC Holding Membership Interests that remain unclaimed for six (6) months after the Disbursing Agent has delivered (or attempted to deliver) such Distribution, such unclaimed PMC Holding Membership Interests shall be forfeited, and the holder of the Allowed Claim otherwise entitled to receive such PMC Holding Membership Interests shall have forever forfeited its right to receive any recovery or Distribution under the Plan on account of its Allowed Claim.

(h)     *Fractional PMC Holding Membership Interests and De Minimis Distributions*.  Notwithstanding any other provision in this Plan to the contrary, no fractional units of PMC Holding Membership Interests shall be issued or distributed pursuant to this Plan. Whenever any payment of a fraction of a unit of PMC Holding Membership Interests would otherwise be required under this Plan, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole share (up or down), with half Interests or less being rounded down and fractions in excess of a half of an Interest being rounded up. Any holder whose Claim has been so rounded down shall not be entitled to receive any compensation whatsoever on account of such reduction. If two or more holders are entitled to equal fractional entitlements and the number of holders so entitled exceeds the number of whole Interests, as the case may be, which remain to be allocated, the Reorganized Debtors shall allocate the remaining whole units to such holders by random lot or such other impartial method as the Reorganized Debtors deem fair, in the their sole discretion. Upon the allocation of all of the whole PMC Holding Membership Interests authorized under this Plan, all remaining fractional portions of the entitlements shall be canceled and shall be of no further force and effect.

The Debtors (with the consent of the Restructuring Support Parties) or the Reorganized Debtors, as the case may be, shall not be required to, but may in their discretion, make distributions to any holder of a Claim of Cash in an amount less than twenty-five dollars ($25).  In addition, the Debtors (with the consent of the Restructuring Support Parties) and the Reorganized Debtors shall not be required to, but may in their discretion, make any payment on account of any Claim in the event that the costs of making such payment exceeds the amount of such payment.

(i)     *Distributions for Claims Allowed as of the Effective Date*.  Unless otherwise provided in this Plan, on the Effective Date the Reorganized Debtors shall distribute Cash, PMC Holding Membership Interests, rights and obligations in respect of the New Secured Term Loans, or other appropriate consideration, as the case may be, to the holders of Allowed Claims as contemplated herein.

(j)     *Interest on Claims*.  Except as expressly provided for in this Plan, the Confirmation Order or any contract, instrument, release, settlement or other agreement entered into in connection with this Plan, or as required by applicable bankruptcy law, including sections 511 and 1129(a)(9)(C)-(D) of the Bankruptcy Code, post-Petition Date interest shall not be treated as accruing in respect of any Claim for purposes of determining the allowance of, and Distribution for or on account of, such Claim; provided, however, that post-Petition Date interest shall accrue on the principal amount of the Senior Secured Notes outstanding at the applicable contract rate set forth in the Senior Secured Notes and the Senior Secured Notes Indenture.

(k)     *Withholding and Reporting Requirements*.  In connection with this Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all Distributions under this Plan shall be subject to any such withholding or reporting requirements.

(l)     *Setoffs*.  The Debtors (with the consent of the Restructuring Support Parties) and the Reorganized Debtors may, but shall not be required to, set off against

any Claim (for purposes of determining the Allowed amount of such Claim on which Distribution shall be made), any claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim the Debtors or the Reorganized Debtors may have against the holder of such Claim.  Nothing in this Plan shall be deemed to expand rights to setoff under applicable non-bankruptcy law.  Notwithstanding the foregoing, the Reorganized Debtors shall be deemed to waive and shall have no right to setoff or recoupment against the holders of Senior Secured Notes Claims or Senior Notes Claims.

(m)     *Allocation of Consideration.* To the extent that any Allowed Claim entitled to a Distribution under this Plan is comprised of indebtedness and, accrued but unpaid interest thereon, the consideration distributed to the holder of such Allowed Claim shall be treated as first satisfying the principal amount of such Claim (as determined for federal income tax purposes), and any remaining consideration shall be treated as satisfying accrued but unpaid interest.

## K.     Resolution of Disputed Claims.

### 1.     Objections to Claims.

The Debtors (with the consent of the Restructuring Support Parties, as to any claim in excess of $25,000) or the Reorganized Debtors shall have the exclusive right to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan.  Unless otherwise ordered by the Court, objections to, or other proceedings concerning the allowance of Claims shall be filed and served upon the holders of such Claims as to which the objection is made, or otherwise commenced, as the case may be, as soon as practicable, but in no event later than the Claims Objection Deadline. Objections to Professional Fee Claims shall be filed and served in accordance with Article III.C.

From and after the Effective Date, the Reorganized Debtors may, in their sole discretion, litigate to judgment or withdraw objections to, or other proceedings contesting the allowance of Claims.

### 2.     Settlement of Claims.

Notwithstanding the requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Reorganized Debtors shall have the authority to settle or compromise any objections or proceedings relating to the allowance of Claims as and to the extent deemed prudent and reasonable by the Reorganized Debtors without further review or approval of the Court.

Nothing in this Article VII.K. shall be deemed to effect or modify the applicable Bar Dates previously established in the Chapter 11 Cases.

3. **No Distributions Pending Allowance.**

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of such Claim unless such Disputed Claim becomes an Allowed Claim.

4. **Establishment of General Unsecured Claims Reserve.**

On the Effective Date or as soon as practicable thereafter, the Reorganized Debtors shall reserve, Cash from the Cash Election Cap Amount and New PMC Holding Membership Interests (to the extent the holder of a Disputed General Unsecured Claim is to receive New PMC Holding Membership Interests or Cash) with an aggregate value equal to 100% of the Distributions of Cash or New PMC Holding Membership Interests to which holders of Disputed General Unsecured Claims would be entitled under this Plan as of such date as if the Disputed General Unsecured Claims were Allowed General Unsecured Claims either in the amounts of the Claims as filed or in such amounts as estimated by the Court (the "***General Unsecured Claims Reserve***").  Accordingly, until such time as all Disputed Claims are resolved, Pro Rata Distributions will be calculated taking into account all Disputed and Allowed Claims of the Class or Classes of Claims to which the pro ration applies.

5. **New PMC Holding Membership Interests and Cash Held in General Unsecured Claims Reserve.**

Cash and New PMC Holding Membership Interests held in the General Unsecured Claims Reserve shall be held by the Reorganized Debtors in trust for the benefit of holders of Allowed General Unsecured Claims. Cash and New PMC Holding Membership Interests held in the General Unsecured Claims Reserve shall not constitute property of the Reorganized Debtors or any of them and no New PMC Holding Membership Interests held in the General Unsecured Claims Reserve shall have any voting rights unless and until such Interests are distributed in accordance herewith. The Reorganized Debtors shall pay, or cause to be paid, out of any dividends or distributions paid on account of New PMC Holding Membership Interests held in the General Unsecured Claims Reserve, any tax imposed on the General Unsecured Claims Reserve by any Governmental Unit with respect to income generated by New PMC Holding Membership Interests held in the General Unsecured Claims Reserve and any costs associated with maintaining the General Unsecured Claims Reserve. Any New PMC Holding Membership Interests held in the General Unsecured Claims Reserve after all General Unsecured Claims have been Allowed or disallowed, including any unclaimed Distributions forfeited in accordance with Article VII.J. hereof, shall be forfeited.

6. **Distributions after Allowance.**

In the event that a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the holder of such Claim such holder's Pro Rata portion of the property distributable with respect to the Class in which such Claim is classified herein.  To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any distributions on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated Pro Rata to the holders of

Allowed Claims in the same Class. The Disbursing Agent shall make Distributions to holders of Disputed Claims that become Allowed at such time that the Reorganized Debtors determine, in their sole discretion, to make subsequent Distributions to holders of other Claims Allowed following the Initial Distribution Date; provided, however, that the Reorganized Debtors shall make such Distributions at least semi-annually. Nothing set forth herein is intended to, nor shall it, prohibit the Reorganized Debtors, in their sole discretion, from making a Distribution on account of any Claim at any time after such Claim becomes an Allowed Claim.

### 7. **Interest on Disputed Claims.**

Unless otherwise specifically provided for in this Plan or as otherwise required by sections 506(b), 511 or 1129(a)(9)(C)-(D) of the Bankruptcy Code, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes and Allowed Claim.

### 8. **Estimation of Claims.**

The Debtors (with the consent of the Restructuring Support Parties) or the Reorganized Debtors may at any time request that the Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or other applicable law regardless of whether the Debtors or the Reorganized Debtors have previously objected to such Claim or whether the Court has ruled on any such objection. The Court will retain jurisdiction to estimate any Claim at any time during the pendency of litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Court estimates any Disputed Claim, such estimated amount shall constitute either (a) the Allowed amount of such Claim, (b) the amount on which a reserve is to be calculated for purposes of any reserve requirement to this Plan or (c) a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors (with the consent of the Restructuring Support Parties) or the Reorganized Debtors, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Court.

## VIII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. **Assumption and Rejection of Executory Contracts and Unexpired Leases.**

Except as otherwise provided herein or in any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, as of the Effective Date, all executory contracts and unexpired leases governed by section 365 of the Bankruptcy Code to which any of the Debtors are parties are hereby assumed except for any executory contract or unexpired lease that (i) previously has been assumed or rejected by the Debtors in the Chapter 11 Cases, (ii) previously expired or terminated pursuant to its own terms; (iii) is specifically identified on the Schedule of Rejected Contracts and Leases, or (iv) is the

subject of a separate motion to assume or reject such executory contract or unexpired lease filed by the Debtors under section 365 of the Bankruptcy Code prior to the Effective Date.  The Debtors reserve the right to amend the Schedule of Rejected Contracts and Leases at any time prior to the Effective Date, subject to the consent of the Restructuring Support Parties.

### B.      Limited Extension of Time to Reject.

In the event the Reorganized Debtors become aware after the Effective Date of the existence of an executory contract or unexpired lease that was not included in the Schedules, the right of the Reorganized Debtors to move to reject such executory contract or lease shall be extended until the date that is thirty (30) days after the date on which the Reorganized Debtors become aware of the existence of such executory contract or lease. The deemed assumptions and rejections provided for in this Article VIII of this Plan shall not apply to any such executory contract or lease.

### C.      Cure.

Except to the extent that different treatment has been agreed to by the non-Debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Article VIII.A hereof, within ten (10) Business Days prior to the Confirmation Hearing, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code, and consistent with the requirements of section 365 of the Bankruptcy Code, file and serve a pleading with the Bankruptcy Court listing the cure amounts of all executory contracts or unexpired leases to be assumed.  The parties to such executory contracts or unexpired leases to be assumed by the Debtors shall have five (5) Business Days from service of such pleading to object to the cure amounts listed by the Debtors.  If there are any objections filed with respect thereto, the Court shall conduct a hearing to consider such cure amounts and any objections thereto.  The Debtors shall retain their right to reject any of their executory contracts or unexpired leases, including any executory contracts or leases that are subject to a dispute concerning amounts necessary to cure any defaults.

### D.      Rejection Damage Claims.

Any and all Claims for damages arising from the rejection of an executory contract or unexpired lease must be filed with the Court in accordance with the terms of the Final Order authorizing such rejection, but in no event later than thirty (30) days after the Effective Date. Any Claims for damages arising from the rejection of an executory contract or unexpired lease that is not filed within such time period will be forever barred from assertion against the Debtors, their respective estates and the Reorganized Debtors. All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as General Unsecured Claims or Convenience Claims, as appropriate under the circumstances.

### E.      Assignment.

On and after the Effective Date, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors (subject to the consent of the Restructuring Support Parties) and the Reorganized Debtors may assume, transfer and assign any of their executory contracts and unexpired leases that have not been rejected without any further act, authority, or notice.  Any

executory contract or unexpired lease so transferred and assigned shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment. Any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition on any such transfer an assignment shall constitute an unenforceable anti-assignment provision that is void and of no force or effect.

## F. Benefit Plans.

As of and subject to the Effective Date, all employment and severance agreements and policies, and all employee compensation and benefit plans, policies, and programs of the Debtors applicable generally to their employees, including agreements and programs subject to section 1114 of the Bankruptcy Code, as in effect on the Effective Date, including all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans, and life, accidental death, and dismemberment insurance plans, nonqualified deferred compensation plans, and senior executive retirement plans shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed under this Plan, and the Debtors' obligations under all such agreements and programs shall survive the Effective Date of this Plan, without prejudice to the Reorganized Debtors' rights under applicable nonbankruptcy law to modify, amend, or terminate the foregoing arrangements in accordance with the terms and provisions thereof, except for (i) such executory contracts or plans specifically rejected pursuant to this Plan (to the extent such rejection does not violate section 1114 of the Bankruptcy Code), and (ii) such executory contracts or plans as have previously been terminated, or rejected, pursuant to a Final Order, or specifically waived by the beneficiaries of such plans, benefits, contracts, or programs.

## G. Assumption of Indemnification Obligations.

### 1. Indemnification Obligations of PMC Holding and PMCI.

Upon the Effective Date, Reorganized PMC Holding shall assume all existing Indemnification Obligations of PMC Holding and of PMCI in favor of those individuals serving, as of the Effective Date, as directors or officers of PMC Holding or of PMCI, or serving, as of the Effective Date, at their request as directors, managers or officers of any of the other Subsidiary Debtors.

### 2. Indemnification Obligations of Other Subsidiary Debtors.

Upon the Effective Date, each other respective Reorganized Subsidiary Debtor shall assume all existing Indemnification Obligations in favor of those individuals serving, as of the Effective Date, as directors (or managers) or officers of such respective Reorganized Subsidiary Debtor, or serving, as of the Effective Date, at the request of such respective

Reorganized Subsidiary Debtor as directors, managers or officers of any of the other Subsidiary Debtors.

<h1 style="text-align:center">IX.</h1>

<h2 style="text-align:center">EFFECT OF CONFIRMATION OF THIS PLAN</h2>

### A.     Continued Corporate Existence.

Each of the Debtors, as Reorganized Debtors (converted into limited liability companies, in the case of Debtors that were corporations prior to the Effective Date), shall continue to exist after the Effective Date with all powers of a limited liability company under the laws of the respective states governing their formation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law, except as such rights may be limited, modified and conditioned by this Plan and the documents and instruments executed and delivered in connection therewith.

### B.     Vesting of Assets.

Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date all property in each Estate, all Causes of Action, and any other property acquired by any of the Debtors pursuant to this Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens, if any, granted to secure the First Lien Exit Facility and New Secured Term Loans and any liens applicable to any capitalized leases existing on the Effective Date). On and after the Effective Date, except as otherwise provided in this Plan, each Reorganized Debtor may operate its business and conduct its affairs, and may use, acquire, or dispose of their property and assets and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

### C.     Preservation of Causes of Action.

In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the Debtors (with the consent of the Restructuring Support Parties) and the Reorganized Debtors shall retain all Litigation Rights and nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any such Litigation Rights. The Debtors may (but are not required to) enforce all Litigation Rights and all other similar claims arising under applicable state laws, including fraudulent transfer claims, if any, and all other Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code. The Reorganized Debtors, as applicable, in their sole and absolute discretion, shall determine whether to bring, settle, release, compromise, or enforce any such Litigation Rights (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action. The Debtors (with the consent of the Restructuring Support Parties), the Reorganized Debtors, or any successors thereof may pursue such Litigation Rights in accordance with the best interests of the Reorganized Debtors or any successors holding such rights of action.

### D. Discharge of the Debtors.

Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge and release, effective as of the Effective Date, of any and all Claims and Causes of Action (whether known or unknown) against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property or assets shall have been distributed or retained pursuant to this Plan on account of such Claims, rights, and Interests, including Claims and Interests that arose before the Effective Date, any liability (including withdrawal liability to the extent such Claims relate to services performed by employees of the Debtors prior to the Petition Date and that arise from a termination of employment or a termination of any employee or retiree benefit program which occurred prior to the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest was filed, is filed, or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interests based upon such Claim, debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim, right, or Interest accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors, subject to the terms thereof and the occurrence of the Effective Date.

### E. Releases by the Debtors of Certain Parties.

**Pursuant to section 1123(b)(3) of the Bankruptcy Code, effective as of the Effective Date, each Debtor, in its individual capacity and as a debtor in possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on, or relating to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, corporate or debt restructuring, or the Chapter 11 Cases, including any claim relating to or arising out of the Chapter 11 Cases, the negotiation and filing of this Plan, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation, or consummation of this Plan, the Disclosure Statement, any document filed by the Debtors in respect of this Plan, the Plan Supplement, any employee benefit plan, instrument, release, or other agreement or document created, modified amended or entered into in connection with this Plan. The Reorganized Debtors and any newly-formed entities that will be continuing the Reorganized Debtors' businesses after the Effective Date shall be bound, to the same extent that the Debtors are bound, by the releases and discharges set forth above; provided, however, that the Debtors shall not release any claims or Causes of Action if any, against the Debtors' directors as of the Petition Date (other than any director who continued to serve as an officer and a director subsequent to the Petition Date) or any holders of Interests in the Debtors as of the Petition Date in any way relating to (i) the CHI**

Management Agreements and (ii) any claims of CHI or any other Person or entity arising under or from the rejection of the CHI Management Agreements.

F. **Releases by Non-Debtors.**

On the Effective Date, each Persons who (a) directly or indirectly, has held, holds, or may hold any Claim, (b) votes to accept this Plan in its capacity as a holder of any Claim or Interest, and (c) does not mark their Ballot to indicate their refusal to grant the releases provided in this paragraph, in consideration for the obligations of the Debtors and the Reorganized Debtors under this Plan including the New Secured Term Loans and the Cash, PMC Holding Membership Interests, and other contracts, instruments, releases, agreements, or documents to be delivered in connection with this Plan (each, a "<u>Release Obligor</u>"), shall have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors, the Reorganized Debtors, and all Released Parties for and from any Claim or Cause of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, any or all of the Debtors, the subject matter of, or the transaction or event giving rise to, the Claim of such Release Obligor prior to or in connection with the Chapter 11 Cases, the business or contractual arrangements between or among any Debtors and Release Obligor or any Released Party, the restructuring of the claim of such Release Obligor prior to or in connection with the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to such subject matter, transaction, obligation, restructuring or the Chapter 11 Cases, including any Claim relating to, or arising out of the Chapter 11 Cases, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation, or consummation of this Plan, the Disclosure Statement, any document filed by the Debtors in respect of this Plan, the Plan Supplement, any employee benefit plan, instrument, release, or other agreement or document, created, modified, amended or entered into in connection with this Plan; <u>provided</u>, <u>however</u>, that nothing in this Article IX.F shall release (i) any obligations of the Debtors or the Reorganized Debtors arising under this Plan, (ii) any of the Released Parties from any claim based on any act or omission that constitutes gross negligence or willful misconduct as determined by Final Order or (iii) any Claims or Causes of Action against the Debtors' directors as of the Petition Date (other than any director who continued to serve as an officer and a director subsequent to the Petition Date) or any holders of Interests in the Debtors as of the Petition Date in any way relating to (x) the CHI Management Agreements and (y) any claims of CHI or any other Person or entity arising under or from the rejection of the CHI Management Agreements.

G. **Exculpation.**

Except as otherwise specifically provided in this Plan, the Plan Supplement or related documents, the Debtors, the Reorganized Debtors and the Released Parties shall neither have, nor incur any liability to any entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to, or arising out of the Chapter 11 Cases, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implantation, administration, confirmation or consummation of this Plan, the Disclosure Statement, the exhibits to this Plan and the Disclosure Statement, the

Plan Supplement documents, any employee benefit plan, instrument, release or other agreement or document created, modified, amended or entered into in connection with this Plan, except for their willful misconduct or gross negligence as determined by a Final Order and except with respect to obligations arising under confidentiality agreements, joint interest agreements, or protective orders, if any, entered during the Chapter 11 Cases; **provided**, **however**, that each Released Party shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the above referenced documents, actions, or inactions; **provided**, **further**, that Debtors' directors as of the Petition Date (other than any director who continued to serve as an officer and a director subsequent to the Petition Date) and any holders of Equity Interests as of the Petition Date shall not be exculpated from any liability for any act or omission in connection with, related to, or arising out of (i) the CHI Management Agreements or (ii) any claims of CHI or any other Person or entity arising under or from the rejection of the CHI Management Agreements.

    **H.**    <u>Injunction</u>.

    **The satisfaction, release, and discharge pursuant to this Article IX shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset or recover any Claim, Interest, or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including to the extent provided for or authorized by sections 524 or 1141 of the Bankruptcy Code.**

    **I.**    <u>Term of Bankruptcy Injunction or Stays</u>.

    All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

    **J.**    <u>Preservation of Insurance</u>.

    Except as otherwise provided herein, the Debtors' discharge and release from all Claims as provided herein, except as necessary to be consistent with this Plan, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors or the Reorganized Debtors, including its officers and current and former directors, or any other person or entity.

**X.**

**EFFECTIVENESS OF THIS PLAN**

    **A.**    <u>Conditions Precedent to Confirmation</u>.

    It shall be a condition to confirmation of this Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.C hereof:

(1)  the Confirmation Order, in form and substance satisfactory to the Debtors and the Restructuring Support Parties, shall have been entered and shall be in full force and effect and there shall not be a stay or injunction in effect with respect thereto;

(2)  This Plan, the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in form and substance acceptable to the Debtors, to the extent this Plan otherwise provides that such schedule, document or exhibit must be acceptable to the Debtors, and the Restructuring Support Parties.

**B.**  **Conditions Precedent to the Effective Date.**

It shall be a condition to the Effective Date of this Plan that the following provisions, terms and conditions are approved or waived pursuant to the provisions of Article X.C.:

(1)  the Confirmation Order, in form and substance acceptable to the Debtors and the Restructuring Support Parties, shall be in full force and effect and there shall not be a stay or injunction in effect with respect thereto;

(2)  all authorizations, consents and regulatory approvals required (if any) for this Plan's effectiveness shall have been obtained;

(3)  the formation and governance documents for each of the Reorganized Debtors (including the New Certificates of Formation, the PMC Holding LLC Agreement and the Subsidiary LLC Agreements) shall be consistent with this Plan and acceptable to the Restructuring Support Parties;

(4)  the Reorganized Debtors shall have entered into the First Lien Exit Facility, which shall be on terms and conditions acceptable to the Debtors and the Restructuring Support Parties;

(5)  the Reorganized Debtors shall have entered into the New Secured Term Loan Agreement, which shall be in form and substance acceptable to the Debtors and the Restructuring Support Parties; and

(6)  the administrative agent (or collateral agent) under the First Lien Exit Facility and the New Secured Term Loan Agent shall have entered into the New Intercreditor Agreement, which shall be in form and substance acceptable to the Debtors and the Restructuring Support Parties.

**C.**  **Waiver of Conditions.**

The conditions to confirmation of this Plan and to the Effective Date set forth in Article X.A. and X.B. hereof may be waived by the Debtors (with the consent of the Restructuring Support Parties) without notice, leave or order of the Court or any formal action other than proceeding to confirm or consummate this Plan.

### D. Notice of Confirmation and Effective Date.

On or before five (5) Business Days after the occurrence of the Effective Date, the Reorganized Debtors shall mail or cause to be mailed to all holders of Claims and Interests a notice that informs such holders of (i) the entry of the Confirmation Order, (ii) the occurrence of the Effective Date, (iii) the occurrence of the applicable Bar Date, and (iv) such other matters as the Debtors deem appropriate.

### E. Effect of Failure of Conditions.

In the event that the Effective Date does not occur: (a) the Confirmation Order shall be vacated; (b) no Distributions under this Plan shall be made; (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (d) the Debtors' obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained in this Plan shall (i) constitute or be deemed a waiver or release of any Claims against or any Equity Interests in the Debtors or any other Person, (ii) prejudice in any manner any right, remedy or claim of the Debtors or any Person in any further proceedings involving the Debtors or otherwise, or (iv) be deemed an admission against interest by the Debtors or any other Person.

### F. Vacatur of Confirmation Order.

If a Final Order denying confirmation of this Plan is entered, or if the Confirmation Order is vacated, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtors, (b) prejudice in any manner the rights of the holder of any Claim against, or Equity Interest in, the Debtors, (c) prejudice in any manner any right, remedy or claim of the Debtors, or (d) be deemed an admission against interest by the Debtors.

### G. Revocation, Withdrawal, Modification or Non-Consummation.

The Debtors reserve the right to revoke, withdraw, amend or modify this Plan at any time prior to the Confirmation Date (in each case subject to the consent of the Restructuring Support Parties, except as otherwise provided in Article XII.D. of this Plan). If the Debtors revoke or withdraw this Plan, the Confirmation Order is not entered, or the Effective Date does not occur, (i) this Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting the amount of any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (iii) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (a) constitute or be deemed a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (b) prejudice in any manner any right, remedy or claim of the Debtors or any other Person in any further proceeding involving the Debtors or otherwise, or (c) constitute an admission against interest by the Debtors or any other Person.

# XI.

## RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Plan pursuant to, and for the purposes of, section 105(a) and section 1142 of the Bankruptcy Code and for, among other things, the following purposes: (1) to hear and determine motions for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of Claims resulting therefrom; (2) to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date; (3) to ensure that Distributions to holders of Allowed Claims are accomplished as provided herein; (4) to resolve disputes as to the ownership of any Claim or Equity Interest; (5) to hear and determine timely objections to Claims; (6) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; (7) to issue such orders in aid of execution of this Plan, to the extent authorized by section 1142 of the Bankruptcy Code; (8) to consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including the Confirmation Order; (9) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 328, 330, 331 and 503(b) of the Bankruptcy Code; (10) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan; (11) to hear and determine any issue for which this Plan requires a Final Order of the Court; (12) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; (13) to hear and determine disputes arising in connection with compensation and reimbursement of expenses of professionals for the Restructuring Support Parties, the Senior Secured Notes Trustee, the Senior Secured Notes Collateral Agent or the Senior Notes Trustee for services rendered and expenses incurred during the period commencing on the Petition Date through and including the Effective Date; (14) to hear and determine any Causes of Action preserved under this Plan under Bankruptcy Code sections 544, 547, 548, 549, 550, 551, 553, and 1123(b)(3); (15) to hear and determine any matter regarding the existence, nature and scope of the Debtors' discharge; (16) to hear and determine any matter regarding the existence, nature, and scope of the releases and exculpation provided in Article IX of this Plan; and (17) to enter a final decree closing the Chapter 11 Cases.

# XII.

## MISCELLANEOUS PROVISIONS

### A.    Payment of Statutory Fees.

All fees payable on or before the Effective Date pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors on or before the Effective Date and all such fees payable after the Effective Date shall be paid by the applicable Reorganized Debtor.

### B.    Payment of Fees and Expenses of Restructuring Support Parties.

The Debtors or the Reorganized Debtors shall promptly pay in Cash in full (following receipt of an appropriate invoice in reasonable detail) all reasonable and documented fees and expenses incurred by the Restructuring Support Parties in connection with the restructuring described herein that have not previously been paid, including the fees and expenses of (i) Akin Gump Strauss Hauer & Feld LLP, in its capacity as legal advisor to the Restructuring Support Parties, and (ii) local Delaware counsel to the Restructuring Support Parties.  All amounts distributed and paid to the foregoing parties pursuant to this Plan shall not be subject to setoff, recoupment, reduction or allocation of any kind and shall not require the filing or approval of any fee application.

### C.    Payment of Fees and Expenses of the Senior Secured Notes Trustee, Senior Secured Notes Collateral Agent and the Senior Notes Trustee.

The Debtors or the Reorganized Debtors shall promptly pay in Cash in full (following receipt of an appropriate invoice in reasonable detail) all reasonable and documented fees and expenses incurred by the Senior Secured Notes Trustee, the Senior Secured Notes Collateral Agent and the Senior Notes Trustee without the need of such parties to file fee applications with the Court; provided that the Senior Secured Notes Trustee, the Senior Secured Notes Collateral Agent and the Senior Notes Trustee shall provide the Debtors, the Restructuring Support Parties and the Creditors' Committee with invoices (or such other documentation as the Debtors or another of such parties may reasonably request) for which it seeks payment on or before the Effective Date, and provided that the Debtors, the Restructuring Support Parties and the Creditors' Committee have no objection to such fees and expenses, such fees and expenses shall be promptly paid.  To the extent that the Debtors or any of such other parties object to any of the fees and expenses of the Senior Secured Notes Trustee, the Senior Secured Notes Collateral Agent or the Senior Notes Trustee, the Debtors or the Reorganized Debtors shall not pay any disputed portion of such fees and expenses until a resolution of such objection is agreed to by the Debtors (or Reorganized Debtors) and such party and/or their counsel or a further order of the Court upon a motion filed with the Court by the party whose fees and expenses have been objected to.

### D.    Modification of this Plan.

Subject to the limitations contained in this Plan: (1) the Debtors (with the consent of the Restructuring Support Parties) reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend, modify, revoke or withdraw this Plan prior to the entry of

the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors (with the consent of the Restructuring Support Parties) or the Reorganized Debtors, as the case may be, may, upon order of the Court, amend or modify this Plan, in accordance with Section 1127(b) of the Bankruptcy Code.

Notwithstanding anything to the contrary herein, the Debtors may revoke or withdraw the Plan upon the occurrence of a "Company Termination Event" under (and as defined in) the Restructuring Support Agreement; provided, however, that the Debtors reserve the right to fully or conditionally waive, on a prospective or retroactive basis, the effects of this paragraph in respect of any such Company Termination Event, with any such waiver effective only if in writing and signed by the Debtors.

## E. Dissolution of Creditors' Committee.

The Creditors' Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code. On the Effective Date, the Creditors' Committee shall be dissolved and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or this Plan and its implementation, and the retention or employment of the Creditors' Committee's attorneys, financial advisors, and other agents shall terminate as of the Effective Date; provided, however, such attorneys and financial advisors shall be entitled to pursue their own Professional Fee Claims and represent the Creditors' Committee in connection with the review of and the right to be heard in connection with all Professional Fee Claims.

## F. Votes Solicited in Good Faith.

The Debtors have, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. The Debtors (and each of their respective affiliates, agents, directors, managers, officers, members, employees, advisors, and attorneys) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of the securities offered and sold under this Plan and, therefore, are not, and on account of such offer and issuance will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer or issuance of the securities offered and distributed under this Plan.

## G. Administrative Claims Incurred After the Effective Date.

Except as otherwise specifically provided for in this Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash (i) any Administrative Claims and (ii) the reasonable legal, professional, or other fees and expenses related to the implementation of this Plan incurred by the Reorganized Debtors. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation of services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in

the ordinary course of business without any further notice to or action, order or approval of the Court.

**H.**     **Request for Expedited Determination of Taxes.**

The Reorganized Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns (other than federal tax returns) filed by any of them, or to be filed by any of them, for any and all taxable periods ending after the Petition Date through the Effective Date.

**I.**     **Governing Law.**

Unless a rule of law or procedure is supplied by Federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Delaware shall govern the construction and implementation of this Plan, any agreements, documents, and instruments executed in connection with this Plan (except as otherwise set forth in those agreements or instruments, in which case the governing law of such agreements shall control).  Corporate governance matters shall be governed by the laws of the state of incorporation or formation of the applicable Debtor.

**J.**     **Filing or Execution of Additional Documents.**

On or before the Effective Date, the Debtors (with the consent of the Restructuring Support Parties) or the Reorganized Debtors, shall file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**K.**     **Exemption From Transfer Taxes.**

Pursuant to section 1146(c) of the Bankruptcy Code, (a) the issuance, transfer or exchange under this Plan of PMC Holding Membership Interests and Subsidiary Membership Interests and the security interests in favor of the administrative agent and lenders under the First Lien Exit Facility and in favor of the New Secured Term Loan Agent and lenders under the New Secured Term Loan Agreement, (b) the making or assignment of any lease or sublease, or (c) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with this Plan shall not be subject to any stamp, real estate transfer, mortgage, recording sales or use or other similar tax.

**L.**     **Section 1145 Exemption.**

Pursuant to, in accordance with, and solely to the extent provided under section 1145 of the Bankruptcy Code, the issuance of the PMC Holding Membership Interests and Distribution thereof to holders of Claims under Class 4 and Class 5 of this Plan and the issuance of New Secured Term Loans, to the extent they are deemed securities (as defined in the Securities Act) will be exempt from registration under applicable securities laws (including Section 5 of the Securities Act or any similar state or local law requiring the registration for offer or sale of a security or registration or licensing of an issuer of a security) pursuant to Section

1145(a) of the Code, and may be sold without registration to the extent permitted under Section 1145 of the Code and is deemed to be a public offering.

**M.**      **Waiver of Federal Rule of Civil Procedure 62(a).**

     The Debtors may request that the Confirmation Order include (a) a finding that Fed. R. Civ. P. 62(a) shall not apply to the Confirmation Order, and (b) authorization for the Debtors to consummate this Plan immediately after entry of the Confirmation Order.

**N.**      **Exhibits/Schedules.**

     All Exhibits and schedules to this Plan and the Plan Supplement are incorporated into and constitute a part of this Plan as if set forth herein.

**O.**      **Notices.**

     All notices, requests, and demands hereunder to be effective shall be in writing and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

     To the Debtors:  Perkins & Marie Callender's Inc., in care of Troutman Sanders LLP, The Chrysler Building, 405 Lexington Avenue, New York, NY 10174, attention:  Mitchel H. Perkiel, Esq., Tel: (212) 704-6000, Fax: (212) 704-6288.

     To the Creditors' Committee:  Official Committee of Unsecured Creditors of Perkins & Marie Callender's Inc., in care of Ropes & Gray, LLP, 1211 Avenue of the Americas, New York, New York 10036, attention:  Mark Somerstein, Esq., Tel: (212) 841-8814, Fax: (646) 728-1663.

     To the Pre-Petition Administrative Agent and DIP Administrative Agent:  In care of Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree Street, N.E., Suite 2400, Atlanta, Georgia 30308, attention: Jesse Austin, Esq., Tel: (404) 815-2400, Fax: (404) 685-5167.

     To the Restructuring Support Parties:  In care of Akin Gump Strauss Hauer & Feld LLP, 1333 New Hampshire Avenue, N.W., Washington, D.C. 20036, attention: Scott Alberino, Esq., Tel: (202) 887-4000, Fax: (202) 887-4288.

**P.**      **Plan Supplement.**

     The Plan Supplement will be filed with the Clerk of the Court no later than ten (10) calendar days prior to the Confirmation Hearing, unless such date is further extended by order of the Court on notice to parties in interest. The Plan Supplement may be inspected in the office of the Clerk of the Court during normal court hours and shall be available online at "https://ecf.deb.uscourts.gov." Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to counsel to the Debtors in accordance with Article XII.O of this Plan or by accessing the website maintained by the Debtors' claims and noticing agent at "www.PRKMCRestructuring.com".

**Q.     Further Actions; Implementations.**

The Debtors shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and take such other or further actions as may be necessary to effectuate or further evidence the terms and conditions of this Plan.  From and after the Confirmation Date, the Debtors shall be authorized to take any and all steps and execute all documents necessary to effectuate the provisions contained in this Plan.

**R.     Severability.**

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable, the Court, at the request of the Debtors (with the consent of the Restructuring Support Parties), shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**S.     Entire Agreement.**

Except as otherwise indicated, this Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

**T.     Binding Effect.**

This Plan shall be binding on and inure to the benefit of the Debtors, the holders of Claims against and Equity Interests in the Debtors, and each of their respective successors and assigns, including each of the Reorganized Debtors, and all other parties in interest in the Chapter 11 Cases.

**U.     Substantial Consummation.**

On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code; provided, however, that nothing herein shall prevent the Debtors or any other party in interest from arguing that substantial consummation of this Plan has occurred prior to the Effective Date.

**V.** **Conflict.**

The terms of this Plan shall govern in the event of any inconsistency with the summaries of this Plan set forth in the Disclosure Statement. In the event of any inconsistency or ambiguity between and among the terms of this Plan, the Disclosure Statement, and the Confirmation Order, the terms of the Confirmation Order shall govern and control.

(Remainder of Page Intentionally Left Blank)
(Signature Pages Follow)

IN WITNESS WHEREOF, each Debtor has executed this Plan this 14th day of July, 2011.

PERKINS & MARIE CALLENDER'S INC.

By:
Name:     Joseph F. Trungale
Title:     President & CEO


PERKINS & MARIE CALLENDER'S HOLDING INC.

By:
Name:     Joseph F. Trungale
Title:     President & CEO


PERKINS & MARIE CALLENDER'S REALTY LLC

By:
Name:     Joseph F. Trungale
Title:     President & CEO


PERKINS FINANCE CORP.

By:
Name:     Joseph F. Trungale
Title:     President

WILSHIRE RESTAURANT GROUP LLC

By:_____
Name:      Joseph F. Trungale
Title:       President & CEO


PMCI PROMOTIONS LLC

By:_____
Name:      Joseph F. Trungale
Title:       President & CEO


MARIE CALLENDER PIE SHOPS, INC.

By:_____
Name:      Joseph F. Trungale
Title:       President


MARIE CALLENDER WHOLESALERS, INC.

By:_____
Name:      Joseph F. Trungale
Title:       President


MACAL INVESTORS, INC.

By:_____
Name:      Joseph F. Trungale
Title:       President

MCID, INC.

By: _____
Name:        Joseph F. Trungale
Title:        President


WILSHIRE BEVERAGE, INC.

By: _____
Name:        Joseph F. Trungale
Title:        Vice President


FIV CORP.

By: _____
Name:        Joseph F. Trungale
Title:        President

**EXHIBIT A**
**TO**
**DEBTORS' JOINT PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Term Sheet Regarding New Secured Term Loans

<u>$[103,063,000] New Secured Term Loan Agreement</u>
<u>Summary of Principal Terms and Conditions</u>

<u>Borrower</u>:                    Perkins & Marie Callender's LLC, a Delaware limited
                               liability company ("***Reorganized PMCI***").

<u>Guarantors</u>:                  Perkins & Marie Callender's Holding LLC ("***Reorganized
                               PMC Holding***") and each of the Reorganized Subsidiary
                               Debtors (other than Reorganized PMCI)[1] and any
                               subsequently acquired or organized, wholly owned domestic
                               subsidiary of the Borrower.

<u>Principal Amount</u>:           $103,063,000; <u>provided</u>, <u>however</u>, that the Debtors shall have
                               the option to add any accrued and unpaid interest due and
                               owing with respect to the Senior Secured Notes on the
                               Effective Date to the outstanding principal amount of the New
                               Secured Term Loan obligations rather than pay such accrued
                               and unpaid interest on the Effective Date.

<u>Agent</u>:                      [•] ("***Bank***"), will act as sole administrative agent and
                               collateral agent (collectively, in such capacities, the "***Agent***")
                               for a group of lenders (together with Bank, the "***Lenders***"),
                               and will perform the duties customarily associated with such
                               roles.

<u>Definitive Documentation</u>:   The definitive documentation shall, except as otherwise set
                               forth herein, be substantially the same as the definitive
                               documentation for the First Lien Exit Facility (as defined
                               below).

<u>Second Lien Secured</u>
<u>Facilities</u>:                 A second lien secured term loan facility up to the aggregate
                               Principal Amount (the "***Term Facility***").

<u>Interest Rates and Fees</u>:    The interest rate under the Term Facility will be 14% per
                               annum, payable monthly.

<u>Final Maturity</u>:             The Term Facility will mature on November 30, 2015.

<u>Guarantees</u>:                 All obligations of the Borrower under the Term Facility will
                               be unconditionally guaranteed (the "***Guarantees***") by
                               Reorganized PMC Holding each of the Reorganized

---

[1] Upon emergence, in addition to Reorganized PMCI, the Reorganized Subsidiary Debtors shall be: Perkins & Marie
Callender's Realty LLC; Perkins Finance LLC; Wilshire Restaurant Group LLC; PMCI Promotions LLC; Marie
Callender Pie Shops, LLC; Marie Callender Wholesalers, LLC; MACAL Investors, LLC; MCID, LLC; Wilshire
Beverage, LLC; and FIV, LLC.

Subsidiary Debtors (other than Reorganized PMCI) and any subsequently acquired or organized, wholly owned domestic subsidiary of the Borrower.

| | |
|---|---|
| Security: | The Term Facility and the Guarantees, will be secured by second-priority liens on all collateral that secures that certain first lien exit facility in an aggregate amount not to exceed $35 million entered into by the Borrower on the Effective Date, the obligations of which are secured by a first priority security interest in substantially all the assets of the Borrower and its subsidiaries party thereto ("***First Lien Exit Facility***"). |
| Intercreditor Agreement: | An intercreditor agreement by and between the agent for the First Lien Exit Facility for the benefit of the First Lien lenders and the agent for the Term Facility, which shall contain customary provisions. |
| Senior Secured Notes: | Means the 14% Senior Secured Notes due May 31, 2013 issued by Perkins & Marie Callender's Inc. pursuant to the Indenture dated as of September 24, 2008 among Perkins & Marie Callender's Inc., Perkins & Marie Callender's Holding, Inc. and The Bank of New York Mellon Trust Company, N.A. as indenture trustee, and The Bank of New York Mellon, as collateral agent as amended, restated or modified from time to time. |
| Mandatory Prepayments: | Substantially similar to the mandatory prepayment provisions in the Senior Secured Notes, but on terms no worse than what are in the definitive documentation for the First Lien Exit Facility; *provided* that mandatory prepayments of the Term Facility shall not be made until the First Lien Exit Facility has been paid in full. |
| Voluntary Prepayments: | May not be prepaid for a period of 1 year from the Effective Date; thereafter, provided that the First Lien Exit Facility has been paid in full, may be prepaid in whole or in part at the option of the Borrower at the prepayment prices (expressed as percentages of the principal amount thereof) set forth below plus accrued and unpaid interest thereon to the applicable prepayment date, if prepaid during the twelve-month period beginning on the anniversary of the Effective Date of the years indicated below: |

| YEAR | PRICE |
|---|---|
| After the first anniversary of the Effective Date but on or prior to the second anniversary of the Effective Date | 107% |

| | After the second anniversary of the Effective Date but on or prior to the third anniversary of the Effective Date | 103.5% |
| | Any time after the third anniversary of the Effective Date but prior to maturity | 100% |

<u>Representations and Warranties:</u>

Substantially similar to the representations and warranties in the Senior Secured Notes, but on terms no worse than what are in the definitive documentation for the First Lien Exit Facility.

<u>Conditions Precedent:</u>

Substantially similar to the conditions precedent in the Senior Secured Notes, but on terms no worse than what are in the definitive documentation for the First Lien Exit Facility.

<u>Affirmative Covenants:</u>

Substantially similar to the affirmative covenants in the Senior Secured Notes, but on terms no worse than what are in the definitive documentation for the First Lien Exit Facility.

<u>Negative Covenants:</u>

Substantially similar to the negative covenants in the Senior Secured Notes, but on terms no worse than what are in the definitive documentation for the First Lien Exit Facility; *provided, however,* there shall be appropriate differences for junior debt, including, without limitation, baskets that are 10% larger.

<u>Financial Covenants:</u>

Substantially similar to the financial covenants in the definitive documentation for the First Lien Exit Facility.

<u>Events of Default:</u>

Substantially similar to the events of default in the Senior Secured Notes, but on terms no worse than what are in the definitive documentation for the First Lien Exit Facility.

<u>Amendments:</u>

Amendments, waivers and consents with respect to the Term Facility and related documentation shall require the approval of the Borrower and Lenders holding a majority in outstanding principal amount of the loans under the Term Facility; except that (a) the consent of each Lender directly adversely affected thereby shall be required with respect to (i) reductions in the amount or extensions of the scheduled date of maturity of any loan or reduce the amount or extend the scheduled payment date for, any payments (other than mandatory prepayments), (ii) reductions in the rate of interest or any fee or extensions of any due date thereof.

<u>Assignments and Participations:</u>

Each Lender will be permitted to make assignments and sell participations on customary terms.

Expenses and Indemnification:   Substantially similar to terms in the Senior Secured Notes as it relates to the indenture trustee for the Senior Secured Notes, but on terms no worse than what are in the definitive documentation for the First Lien Exit Facility.

Governing Law and Forum:   New York.